## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMANDA CHANDLER and ROBERT DURHAM, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case Number:  20-cv-265 |
| | ) | |
| AMAZON.COM LLC, EBAY INC., TARGET AABC CORPORATION, WALMART INC., WAYFAIR INC., and ZINUS INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

NOW COME Plaintiffs Amanda Chandler and Robert Durham, on behalf of themselves and all others similarly situated, and for their Class Action Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure, allege as follows:

## NATURE OF ACTION

1.      Several of the most popular models of Defendant Zinus, Inc.'s ("Zinus") mattresses containing dangerous glass fibers (the "Affected Mattresses") suffer from potentially catastrophic design defects and inadequate warning labels that can result in large amounts of glass fibers releasing from the mattresses into the surrounding environment. One vulnerable point for glass fibers to exit from the Affected Mattresses is when the removable outer cover of the mattress is unzipped. Once the outer cover is removed, Zinus's defective design (the "Defects") exposes the inner cover which contains a large percentage of glass fibers. Large amounts of glass fibers then can be released into the environment causing serious injuries and property damage.

2.      The Affected Mattresses are sold throughout the United States in retail stores owned by Defendants Amazon.com LLC ("Amazon"), eBay Inc. ("eBay"), Target AABC Corporation ("Target"), Walmart, Inc. ("Walmart"), and Wayfair, Inc. ("Wayfair"). On February 14, 2020, a television news story entitled "Hidden Hazards" aired on KMOV4 in St. Louis, Missouri (the "Report") documenting "the danger lurking in your mattress."[1] This featured news story outlined the tragic events Plaintiffs Amanda Chandler and Robert Durham ("Plaintiffs") experienced when their child's Affected Mattress released extremely large amounts of dangerous glass fibers which then caused serious and potentially life-threatening injuries to their family of five and "destroy[ed] thousands of dollars of stuff and [their] whole life." *Id.* The story also reports, like Plaintiffs, "[a] family in the Phoenix area had to move out of their home, throwing almost everything out. Videos on YouTube show others complaining as well." *Id.*

3.      Plaintiffs therefore bring this action on behalf of the following classes: (1) a proposed nationwide class of consumers who purchased the Affected Mattresses; (2) a proposed nationwide class of adults injured by glass fibers from the Affected Mattresses; (3) a proposed nationwide class of minors injured by glass fibers from the Affected Mattresses; (4) a proposed nationwide class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (5) a proposed nationwide class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses.

## PARTIES

4.      Plaintiff Amanda Chandler ("Amanda") is an adult citizen and resident of Collinsville, Illinois. Plaintiff Robert Durham ("Robert") is an adult citizen and resident of

---

[1] Lauren Trager, *News 4 Investigates: The danger lurking in your mattress,* https://www.kmov.com/news/news-investigates-the-danger-lurking-in-your-mattress/article_2bb77cc2-4eb7-11ea-b4c6-0319ba20d45f.html (last visited on March 7, 2020. ("The Report").

Collinsville, Illinois. In the summer of 2019, Plaintiffs jointly purchased a Zinus memory foam mattress from Walmart for their child.

5.      Defendant Amazon.com LLC is a Delaware limited liability company with its principal place of business in Seattle, Washington. Amazon is in the business of selling the mattresses subject to this Complaint. Amazon does business nationwide.

6.      Defendant eBay Inc. is a Delaware corporation with its principal place of business in San Jose, California. eBay is in the business of selling the mattresses subject to this Complaint. eBay does business nationwide.

7.      Defendant Target AABC Corporation is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. Target is in the business of selling the mattresses subject to this Complaint. Target does business nationwide.

8.      Defendant Walmart Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Walmart is in the business of selling the mattresses subject to this Complaint. Target does business nationwide.

9.      Defendant Wayfair Inc. is a Delaware corporation with its principal place of business in Boston, Massachusetts. Wayfair is in the business of selling the mattresses subject to this Complaint. Wayfair does business nationwide.

10.     Defendant Zinus is a corporation with its principal place of business in Tracy, California. Zinus is in the business of designing, testing, manufacturing, selling and supporting the mattresses subject to this Complaint. Zinus does business nationwide.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or value

of $5,000,000, exclusive of interests and costs. Members of the proposed Classes are citizens of States different from Defendants; and Defendants are not citizens of the State of Illinois. This Court also has jurisdiction to decide claims brought under 15 U.S.C. § 2301 (the Magnuson-Moss Act) by virtue of 28 U.S.C. § 1332(a)-(d), 28 U.S.C. § 1331, and has supplemental jurisdiction over the remaining claims.

12.     This Court has personal jurisdiction over Amazon, eBay, Target, Walmart, and Wayfair ("Defendant Retailers") because these Defendants are registered to conduct business in Illinois and have sufficient minimum contacts in Illinois, or otherwise intentionally avail themselves of the markets within Illinois through promotion, sale, marketing, and distribution of their products, to render the exercise of jurisdiction by this Court proper.

13.     This Court has personal jurisdiction over Defendant Zinus because Zinus is registered to conduct business in Illinois and has sufficient minimum contacts in Illinois, or otherwise intentionally avails itself of the markets within Illinois through the promotion, sale, marketing and distribution of its mattresses, to render the exercise of jurisdiction by this Court proper.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

I.     **Zinus Mattresses Containing Glass Fibers**

15.     This lawsuit concerns Zinus mattresses containing glass fibers sold by Amazon, eBay, Target, Walmart, and Wayfair.

16.     On information and belief, the glass fibers contained within the Affected Mattresses are for fire retardant purposes and are larger in diameter than the type of fiberglass used in household insulation.

17.     Pursuant to 16 CFR 1632.31, Zinus must ensure all of its "mattress pads which contain a chemical fire retardant shall be labeled with precautionary instructions to protect pads from agents or treatments which are known to cause deterioration of their flame resistance. Such labels shall be permanent, prominent, conspicuous, and legible." 16 C.F.R. § 1632.31.

18.     Some of the Affected Mattresses contain a removable outer cover which may be removed by a zipper[2]. Each day in America, millions of individuals use zippers to open pants, jackets, coats, shoes, backpacks, luggage, mattress covers, etc. Given how widely people in our society use zippers, attaching one to an object invites opening that object.

19.     Once the removable outer covered is opened and removed from the mattress, a small tear in the inner cover may release thousands of glass fibers into the environment.

20.     Once in the environment, these glass fibers easily disperse through the air, and can travel throughout a home via HVAC systems, vents, doorways, windows, etc. The glass fibers attach to essentially anything they touch. This includes human skin, animals, clothes, towels, bedding, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic.

21.     Exposure to glass fibers may cause eye, skin, and upper respiratory tract irritation. Glass fibers that reach the lower part of a person's lungs increases the chances of adverse health effects. Glass fibers that become embedded in human skin may require surgical intervention for removal.

---

[2] ThoughtCo., The History of the Zipper, https://www.thoughtco.com/history-of-the-zipper-4066245 ("Today the zipper is everywhere and is used in clothing, luggage, leather goods and countless other objects." (last visited on March 7, 2020).

22.     The cost of cleaning a home exposed to glass fibers may cost thousands to possibly tens of thousands of dollars.[3] Experts may recommend occupants of a home exposed to glass fibers to vacate the home until it is professionally cleaned.[4]

## II.     Plaintiffs' Experience with a Zinus Mattress

23.     In the summer of 2019, Amanda purchased in store from Walmart a Zinus memory foam mattress ("Purchased Mattress"). The Purchased Mattress contained a removable outer cover equipped with a zipper. A mattress tag which read in part "62% Glass Fibers" was attached to the outer cover ("Outer Mattress Tag").

24.      The Outer Mattress Tag failed to warn the user not to remove the removable outer cover.

25.     The Outer Mattress Tag failed to warn the user that removing the removable outer cover may expose the user to glass fibers.

26.     The Outer Mattress Tag failed to warn the user that exposure to glass fibers may lead to serious injuries and/or property damage.

27.     The Outer Mattress Tag failed to warn the user that the removable outer cover was not washable.

28.     The Outer Mattress Tag failed to warn the user not to stand, sit, lay, or jump on the Purchased Mattress after removing the removable outer cover.

29.      On January 27, 2020 Amanda removed the removable outer cover of the Purchased Mattress to launder it in her newly purchased washing machine. She washed the cover and clothes together with Tide detergent.

---

[3] The Report.
[4] *Id.*

30.     While Amanda washed the removable cover, her and Robert's two young sons had fun jumping on the Purchased Mattress which was in one of her young son's bedrooms.

31.     Once Amanda finished washing the cover, she draped it over her couch for it to air dry underneath a ceiling fan.

32.     After the removable cover finished drying, Amanda zipped the cover back onto the Purchased Mattress.

33.     Around 3 A.M. on January 28, 2020, Robert awoke to go to work and immediately noticed his skin was very irritated and extremely itchy. After arriving at work, Robert was in such pain and discomfort that he requested off. To date, Robert has not been back to work.

34.     At some point on January 28, 2020, Robert discovered his whole body was covered with little, hard-to-see shards of glass.

35.     At some point on January 28, 2020, Amanda and Robert's two boys began to scream and cry hysterically because their whole bodies itched. Amanda and Robert quickly noticed their children and Amanda's bodies were also covered with little, hard-to-see shards of glass.

36.     Amanda and Robert began noticing their home was blanketed with the same little shards of glass. Tiny shards of glass were embedded in all parts of their home, both inside and out, including their clothes, bedding, towels, appliances, carpet, tile, walls, tools, electronics, and inside their cars.

37.     After some research, Amanda and Robert discovered the Purchased Mattress was the source of the shards of glass, also known as glass fibers. Upon their discovery, Amanda immediately moved the Purchased Mattress from inside their home to the outdoors.

III.     **Injuries**

38.     The glass fibers from the Purchased Mattress caused extreme pain and suffering to Plaintiffs' family by cutting the skin of each family member causing dermatitis. Robert had several shards of glass fibers surgically removed from the back of his neck. At this time the severity of Plaintiffs' and their children's injuries are unknown because it is likely each family member inhaled significant amounts of glass fibers.

IV.     **Property Damage**

39.     The glass fibers from the Purchased Mattress caused significant and potentially irreversible damage to Plaintiffs' home and personal property. Since early February 2020, Plaintiffs and their family have resided at a hotel because they are unable to return to their home due to glass fiber contamination.

V.     **Zinus Knew of the Defects for at Least Eight Months but Failed to Adequately Warn or Notify Consumers.**

40.     Over eight months ago, a consumer posted a direct message entitled, "Can I wash my Zinus mattress cover?" to Zinus's website.[5] Zinus responded by stating the following: "Our mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[6]

41.     The above "warning" fails to mention terms like fiberglass, glass fibers, or contains glass. The above "warning" fails to mention the potential consequences which may occur if the removable outer cover is removed. The above "warning" fails to explain that "removing [the cover]

---

[5] Zinus, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-wash-my-Zinus-mattress-cover- (last visited March 8, 2020).
[6] *Id.*

could inhibit the fire safety barrier" which then may cause thousands of glass fibers to release from the mattress potentially resulting in serious injuries and property damage.

## DAMAGES

42.     The Defects and Zinus's conduct to misrepresent and conceal them caused damage to Plaintiffs and the Class in at least three ways, as alleged in detail below. First, members of the Class would not have purchased the Affected Mattresses at all, or would have paid less for them, had the Defects been disclosed to them. Each of these injuries has already occurred. None of the injuries requires any Class members' mattress to release glass fibers. Second, members of the class personally injured by the glass fibers contained within the Affected Mattresses. And third, members of the class who suffered property damage from the glass fibers contained within the Affected Mattresses.

## CLASS ACTION ALLEGATIONS

43.     The Classes' claims all derive directly from a single course of conduct by Zinus and the Defendant Retailers. Zinus and the Defendant Retailers have engaged in uniform conduct toward the class members. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes. Additionally, the state law claims (fraud, unjust enrichment, breach of implied warranty, strict liability, negligence, and gross negligence) share the same legal standards and elements of proof across states, thus facilitating the certification of a National Class.

44.     Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to

Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## I.     The Nationwide Consumer Class

45.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All persons who purchased an Affected Mattress in the United States, which was manufactured by Zinus and contained glass fibers.

## II.    The Nationwide Adult Personal Injury Class

46.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All adults in the United States injured by glass fibers from an Affected Mattress, which was manufactured by Zinus and contained glass fibers.

## III.   The Nationwide Minor Personal Injury Class

47.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All minors in the United States injured by glass fibers from an Affected Mattress, which was manufactured by Zinus and contained glass fibers.

## IV.    The Nationwide Personal Property Damage Class

48.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

All persons in the United States who suffered personal property damage from glass fibers from an Affected Mattress, which was manufactured by Zinus and contained glass fibers.

## V.    The Nationwide Real Estate Property Damage Class

49.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

All persons in the United States who suffered real estate property damage from glass fibers from an Affected Mattress, which was manufactured by Zinus and contained glass fibers.

50.    The Nationwide Class and their members are sometimes referred to herein as the "Class" or "Classes."

51.    Excluded from the Classes are Zinus; any affiliate, parent, or subsidiary of Zinus; any entity in which Zinus has a controlling interest; any officer, director, or employee of Zinus; any successor or assign of Zinus; Amazon; any affiliate, parent, or subsidiary of Amazon;  any entity in which Amazon has a controlling interest; any officer, director, or employee of Amazon; any successor or assign of Amazon; eBay; any affiliate, parent, or subsidiary of eBay;  any entity in which eBay has a controlling interest; any officer, director, or employee of eBay;  any successor or assign of eBay; Target; any affiliate, parent, or subsidiary of Target;  any entity in which Target has a controlling interest; any officer, director, or employee of Target;  any successor or assign of Target; Walmart; any affiliate, parent, or subsidiary of Walmart;  any entity in which Walmart has a controlling interest; any officer, director, or employee of Walmart; any successor or assign of Walmart; Wayfair; any affiliate, parent, or subsidiary of Wayfair; any entity in which Wayfair has a controlling interest; any officer, director, or employee of Wayfair; any successor or assign of Wayfair; counsel for the Plaintiffs or anyone employed by counsel for Plaintiffs in this action and

their immediate families; any Judge to whom this case is assigned and his or her immediate family and staff.

52.     This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

53.     **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Upon information and belief, there are thousands of Affected Mattresses nationwide and thousands of Affected Mattresses in each of the States.   Individual joinder of all Class members is impracticable.

54.     Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their custody or control. Plaintiffs anticipate providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

55.     **Existence of common questions.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2).   These common questions include:

a.      Whether the zipper on the outer cover constitutes a defect in Affected Mattresses.

b.      Whether the zipper on the outer cover constitutes a safety-related defect in Affected Mattresses.

c.      Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a defect in the mattress system.

d.      Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a safety-related defect in the mattress system.

e.      Whether the Affected Mattresses' attached tags are inadequate to sufficiently warn the user of associated dangers.

f.      Whether the Defects constitutes material facts that consumers might consider in making their purchasing decisions.

g.      Whether Defendants fraudulently concealed these Defects.

h.      Whether Defendants fraudulently concealed other defects.

i.      Whether Defendants misrepresented that the Affected Mattresses were safe.

j.      Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose the Defects.

k.      Whether the Defendants violated consumer protection statutes, and if so, what remedies are available.

l.      Whether the Affected Mattresses were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability.

m.      The scope of any implied warranties applicable to the Affected Mattresses.

n.      Whether Defendants violated the implied warranties applicable to the Affected Mattresses.

o.      Whether Defendants be declared responsible for notifying all Class members of the Defects.

p.      Whether Defendants are liable under various theories of state liability.

q.      Whether Defendants are liable to the Class for damages and/or penalties as a result of their knowledge, conduct, action, or inaction; and.

r.    Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or preliminary and/ or permanent injunction.

56.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class,claims of the Class, Fed. R. Civ.P. 23(a)(3), because, among other things, Plaintiffs purchased Affected Mattresses that contain the same Defects found in all other Affected Mattresses.

57.    **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent and are capable and willing to participate in this litigation. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel. As such, they meet the requirements of Fed. R. Civ. P. 23(a)(4).

58.    **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

59.    **Predominance and Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The common questions listed in paragraph 54, above, are the central legal and factual issues in the litigation. The injuries suffered by each Class member, while meaningful on an individual

basis, are not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Defects, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

60.     In the alternative, the Class may be certified because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants; and/or

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

### CLAIMS FOR RELIEF

**I.     Claims Against All Defendants**

### COUNT ONE
### Violation of Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301, *et seq.*)

61.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

62.    The Class Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Class.

63.    The Affected Mattresses are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

64.    Plaintiffs and the Class members are the buyers of the Affected Mattresses. They are therefore "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

65.    Defendants are each a "supplier" and/or "warrantor" within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(4)-(5). Defendants are engaged in the business of making consumer products directly or indirectly available to consumers and are obligated under an implied warranty to the Plaintiffs and Class members.

66.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a supplier or warrantor to comply with a written or implied warranty.

67.    Defendants owe the Plaintiffs and other Class members an implied warranty of merchantability in connection with the purchase of their mattresses. As part of the implied warranty of merchantability, Defendants warrant that the Affected Mattresses are fit for their ordinary purpose as mattresses in safe condition and substantially free from defects.

68.    As described in more detail above Defendants breached those implied warranties and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Affected Mattresses share the Defects. These design defects make the Affected Mattresses unsafe by potentially exposing the user to dangerous class fibers.

69.     Any efforts by Defendants to limit the implied warranties in a manner that would exclude coverage of the Affected Mattresses is unconscionable, and any such effort to disclaim or otherwise limit liability for the Affected Mattresses is null and void.

70.     Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants, on one hand, and Plaintiffs and the other Class members, on the other.

71.     Plaintiffs and each the other Class members have had sufficient direct dealings with either Defendants or their agents to establish privity of contract.

72.     Plaintiffs and each of the Class members are intended third-party beneficiaries of contracts between Zinus and the Defendants Retailers.

73.     Plaintiffs and the Class members were not required to give notice to Defendants or to afford Defendants an opportunity to cure their breaches of the implied warranties. Defendants had actual knowledge, or should have known, or were reckless in not knowing, of the Defects, but Defendants nonetheless failed to correct the Defects prior to the filing of Plaintiffs' Class Action Complaint, thus making formal pre-suit notice unnecessary and futile. Even if notice were deemed to be required, Plaintiffs may proceed prior to affording Defendants a reasonable opportunity to cure their breaches because class plaintiffs would not be obligated to provide notice and opportunity to cure until the Court determines their representative capacity pursuant to Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 2310(e).

74.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.

75.     Plaintiffs and the Class members seek all damages permitted by law, in an amount to be proven at trial.

76.     Plaintiffs and the Class members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Defendants had actual knowledge, or should have known, or were reckless in not knowing, steps taken by Defendants were inadequate to render the Affected Mattresses safe and merchantable. Plaintiffs thus request payment of all fees and costs necessary to repair the Defects. Plaintiffs and other Class members further request re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Defects.

77.     The right of the Plaintiffs and other Class members to recover these expenses as an equitable manner, to put them in the place that they would have been but for Defendants' conduct, presents a common question of law. Equity and fairness require the establishment by Court decree and administration under Court supervision of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

78.     Further, based on the Defendants' continuing failures to fix the known dangerous Defects, Plaintiffs and the other Class members seek as equitable relief under 15 U.S.C. § 2310(d)(1): (a) a declaration that Defendants have not remedied the Defects; and (b) injunctive relief in the form of judicial supervision of a process requiring Defendants to fully repair the Defects or to refund to Class members the purchase prices of their Affected Mattresses.

**COUNT TWO**
**Fraudulent Concealment/Fraudulent Omission**

79.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

80.     Plaintiffs bring this claim on behalf of the Nationwide Class against Defendants under the common law of fraudulent concealment and/or fraudulent omission, as there are no

material conflicts among various states' causes of action for fraudulent concealment or fraudulent omission as they apply to this case.

81.     Defendants knew, or should have known, of the Defects since at least the summer of 2019.

82.     For example, in the summer of 2019 through the present, Defendants concealed, suppressed, and failed to disclose material facts related to the Defects in public statements and communications which were designed and intended by Defendants to reach Plaintiffs and the Class members. As described in Paragraphs 39 and 40, Zinus made public statements about their mattresses' outer covers, but omitting any mention of the existence of the Defects, or their nature, extent, or severity.

83.     At the time that Defendants concealed and suppressed these material facts, Defendants knew of these material facts and/or upon reasonable inquiry, Defendants would have come to know of these material facts.

84.     Defendants made these material omissions with the intention of reaching Plaintiffs and the Class members and influencing Plaintiffs' and the Class members' actions and with the intent that Plaintiffs and Class members rely on Defendants' deception.

85.     These omissions involved facts that were material because: (1) they are facts that would be relied on by a reasonable person purchasing or retaining a mattress; (2) they concern the type of information on which consumers would be expected to rely and would likely consider to be important in making a decision to purchase a mattress; and (3) they are of the type that a seller and/or manufacturer knows would be likely to induce a reasonable consumer to act, respond, or substantially change his or her behavior.

86.     These facts are also material because they directly impact the value of the Affected Mattresses that were purchased by Plaintiffs and the Class members. Whether a manufacturer's products are safe and reliable, whether those products contain defects, and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiffs and Class members trusted Defendants not to sell them mattresses that were defective or that violated federal law governing safety.

87.     Defendants concealed and suppressed these material facts to falsely assure purchasers and consumers that their Affected Mattresses were safe, as represented by Defendants and reasonably expected by consumers.

88.     Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' images and cost Defendants money. They did so at the expense of Plaintiffs and the Class members.

89.     Plaintiffs and the Class were unaware of these omitted material facts. Had they been aware of the Defects in the Affected Mattresses, and the Defendants' disregard for safety, they would not have purchased, would not have paid as much, or would not have retained their Affected Mattresses for as long a period of time. Plaintiffs did not receive the benefit of their bargain as a result of Defendants' fraudulent concealment.

90.     Plaintiffs and the Class members relied on and were deceived by Defendants' material omissions in purchasing or retaining their Affected Mattresses.

91.     Defendants had a duty to disclose the Defects because:

a.      Defendants had exclusive and/or far superior knowledge and access to the facts related to the Defects, and these facts were not: (1) known to Plaintiffs and the Class members; (2) reasonably discoverable by Plaintiffs and the Class members through

ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiffs and the Class members;

b.   Plaintiffs and Class members trusted and placed confidence in Defendants to inform them of technical and safety issues related to the Affected Mattresses, including issues related to glass fibers;

c.   Defendants were in a position of influence and superiority over Plaintiffs and the Class members because Defendants designed, manufactured, and/or sold the Affected Mattresses, and Defendants possessed technical expertise and information that Plaintiffs and the Class members lacked; and,

d.   Defendants made incomplete representations about the safety and reliability of the Affected Mattresses, while purposefully withholding material facts from Plaintiffs and the Class members that contradicted these representations.

92.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Class members sustained damages. Accordingly, Defendants are liable to the Class for their damages in an amount to be proven at trial.

93.   Defendants' acts were done wantonly, willfully, maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Class's rights and well-being, and with the aim of enriching Defendants. Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT THREE
### Unjust Enrichment

94.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

95.     The Class Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Class.

96.     Plaintiffs and the Class members bring this claim to recover the amounts by which Defendants were unjustly enriched by virtue of their tortious or fraudulent conduct, and in the alternative to the Magnuson-Moss Warranty Act claim.

97.     Plaintiffs bring this claim on behalf of the Nationwide Class against Defendants under the common law of unjust enrichment, as there are no material conflicts among various states' causes of action for unjust enrichment as they apply to this case.

98.     Plaintiffs and the Class members conferred benefits on Defendants. Defendants received a benefit through their unjust conduct by selling the Affected Mattresses, which share the Defects. Plaintiffs and the Class members overpaid for the Affected Mattresses, and the Affected Mattresses' values have diminished.

99.     It is inequitable for Defendants to retain these benefits.

100.    Plaintiffs and the Nationwide Class members do not have an adequate remedy at law.

101.    As a result of Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

**II.     Claims Against Zinus**

## COUNT FOUR
### Products Liability-Design Defect

102.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

103.    The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class.

104.    Upon information and belief, the Affected Mattresses are designed, manufactured, and sold by Zinus. At the time the Affected Mattresses were sold, Zinus was in the business of designing, manufacturing, and/or otherwise placing the Affected Mattresses in the stream of commerce.

105.    At the time the Affected Mattresses were designed, manufactured, and sold by Zinus, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the Affected Mattresses were a direct and proximate cause of the injuries to Plaintiffs.

106.    The Affected Mattresses reached Plaintiffs in the condition expected and intended by Zinus.

107.    Plaintiffs used the Affected Mattresses for their intended and foreseeable purpose.

108.    The Defects regarding the Affected Mattresses include but are not limited to the equipped zipper on the outer cover which invites users to open it which potentially exposes them to highly dangerous glass fibers.

109.    Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the utility of the Affected Mattresses.

110.    Plaintiffs' ability to open the outer cover of their Purchased Mattress caused Plaintiffs' injuries. Specifically, Zinus could have designed the Affected Mattresses without a zipper on the outer cover so as not to invite the user to open it.

111.    Each alternative design for the above identified defects was available in the market and was technologically and economically feasible at the time Zinus manufactured the Affected Mattresses and would not have impaired the utility of the Affected Mattresses.

112.    Further, at the time the Affected Mattresses were sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the Affected Mattresses were a producing cause of Plaintiffs' injuries.

113.    At the time of the incident made the basis of this lawsuit, the Affected Mattresses were in the same or substantially similar condition as they were at the time they left Zinus's control and were placed into the stream of commerce. Any alterations to the Affected Mattresses were made by a dealer and/or agent of Zinus.

114.    To the extent Zinus attempts to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk or accident and/or injuries that occurred in this accident and/or Zinus withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

### COUNT FIVE
### Products Liability-Marketing Defect/Failure to Warn

115.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

116.    The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class.

117.     Zinus failed to give adequate and proper warnings and instructions regarding the dangers of the Affected Mattresses which rendered the product defective and unreasonably dangerous and was a producing cause of Plaintiffs' injuries and damages. Specifically, Zinus failed to warn potential and actual users of the dangers and risk of the defects. Further, Defendant failed to provide adequate instructions to users regarding proper use of the Affected Mattresses. Zinus's failure to warn was a proximate cause of Plaintiff's injuries and damages.

## COUNT SIX
### Strict Liability

118.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

119.     The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class.

120.     The Affected Mattresses that injured Plaintiffs were originally designed, manufactured, and sold by Zinus. At the time the Affected Mattresses were sold, Zinus was in the business of designing, manufacturing, testing, assembling, monitoring, selling, and/or otherwise placing the Affected Mattresses, including the Affected Mattress at issue and its defective condition, which was the proximate cause of Plaintiffs' injuries.

121.     The Affected Mattresses reached Plaintiff in the condition expected and intended by Zinus.

122.     Plaintiff used the Affected Mattresses for their intended and foreseeable purpose.

123.     Due to the design and manufacture of the Affected Mattresses, the Affected Mattresses were unreasonably dangerous. The failure to appropriately design and manufacture the Affected Mattresses was the direct and proximate cause of Plaintiffs' injuries. Accordingly, Defendant should be held strictly liable.

124.    Zinus placed the Affected Mattresses into the stream of commerce and expected or could reasonably foresee the use of said Affected Mattresses by individuals, such as Plaintiffs, in the condition in which the Affected Mattresses were designed, manufactured and sold.

125.    The Affected Mattresses were designed, manufactured and assembled so that the defective condition was undiscoverable at the time of use of the Affected Mattresses.

126.    The defective condition of the subject Affected Mattresses was not observable by Plaintiffs who relied upon Zinus to design, test, manufacture, sell and deliver the subject Affected Mattresses in a condition fit for use for the purposes intended.

127.    As a direct and proximate result of the failure of Zinus to properly design, test, manufacture, sell and deliver the Affected Mattresses, Plaintiffs has suffered severe personal injuries.

### COUNT SEVEN
### Negligence

128.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

129.    The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class.

130.    Defendant committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiff's injuries.

131.    Defendant's acts or omissions constituting negligence include:

a.      Failing to properly design the Affected Mattresses;

b.      Failing to properly manufacture the Affected Mattresses;

c.      Failing to adequately test the Affected Mattresses;

d.      Failing to adequately market the Affected Mattresses;

e.      Failing to adequately instruct users in using the Affected Mattresses.

f.      Failing to recall the Affected Mattresses or, alternatively, to warn consumers of a known danger/defect in the Affected Mattresses;

g.      Failing to disclose post-sale information known about dangers or defects in the Affected Mattresses;

h.      Concealing known dangers associated with the Affected Mattresses; and,

i.      Failing to meet or exceed internal corporate guidelines.

## COUNT EIGHT
### Gross Negligence

132.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

133.    The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class.

134.    Plaintiffs make a claim for punitive damages. Plaintiff seeks punitive damages for the gross negligence and/or malicious conduct of Zinus which was a proximate cause of the failure of Affected Mattresses and of Plaintiffs' injuries and damages.

135.    Specifically, Zinus's conduct, when viewed objectively from Zinus's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

136.    Furthermore, Zinus had actual, subjective awareness of the risk(s) but proceeded with a conscious indifference to the rights, safety or welfare of others.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes as defined herein, respectfully request that this Court enter a judgment against Defendants and in favor of Plaintiffs and the Classes, and grant the following relief:

A.    Determine that this action may be maintained and certified as a class action on a nationwide, statewide, and/or multistate basis under Rule 23(b)(1), 23(b)(2) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under 23(c)(4); and that it designate and appoint Plaintiffs as Class Representatives, and appoint Class Counsel under Rule 23(g).

B.    A declaration that the Affected Mattresses are defective as described herein.

C.    A declaration that these defects are safety-related.

D.    A declaration that the Defendants be financially responsible for notifying all Class members of the Defects present in the Affected Mattresses.

E.    An order requiring Defendants to desist from further deceptive distribution and sales practices with respect to the Affected Mattresses.

F.    Award Plaintiffs and Class members their actual, compensatory, and/or statutory damages, according to proof;

G.    Award Plaintiffs and the Class members punitive and exemplary damages in an amount sufficient to punish Defendants for their misconduct and deter the repetition of such conduct by Defendants or others;

H.    Award Plaintiffs and Class members restitution and/or disgorgement of Defendants' ill-gotten gains for the conduct described in this Complaint;

I.      Award Plaintiffs and Class members their reasonable attorneys' fees, costs, and expenses;

J.      Award Plaintiffs and Class members pre-judgment and post-judgment interest;

K.      Leave to amend this Amended Complaint to conform to the evidence produced at trial; and,

L.      Award Plaintiffs and Class members such other relief as the case may require; or as determined to be just, equitable, and proper by this Court.

Dated: March 11, 2020                              Respectfully submitted,

_/s/ Christopher Cueto_____
Christopher Cueto, IL #6192248
James E. Radcliffe, IL #6330315
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Email: ccueto@cuetolaw.com

William S. Daniel, IL #0576891
Daniel Law Offices
345 Missouri Avenue
East St. Louis, Illinois 62201
wsd@daniellawoffices.com

Lloyd M. Cueto, IL #6292629
Law Office of Lloyd M. Cueto, P.C.
7110 West Main Street
Belleville, IL 62223
cuetolm@cuetolaw.com

**_Attorneys for Plaintiffs_**