## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

AMANDA CHANDLER, ROBERT
DURHAM, ALLEN BRANCH, BRANDI
KRETZER, and WESLEY KRETZER, *on
behalf of themselves and all others
similarly situated*,

         Plaintiffs,

    v.

ZINUS INC.

         Defendant.

CASE NO.:  13:20-CV-265-RJD

---

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

NOW COME Plaintiffs Amanda Chandler, Robert Durham, Allen Branch, Brandi Kretzer, and Wesley Kretzer (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through counsel, and for their Class Action Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure, allege as follows:

## NATURE OF ACTION

### A. Background

1.    This is a consumer class action on behalf of all individuals in the United States who purchased and/or used mattresses containing fiberglass manufactured and/or distributed by Defendant Zinus Inc. ("Zinus"). Zinus is another example of a large company valuing its profits over the safety of its consumers. All too often do these types of companies continue producing knowingly unsafe products that injure consumers until someone holds them accountable, usually through court intervention.

2.      Zinus is a global eCommerce mattress and furniture company located in six countries worldwide. Since 2004, Zinus has designed, manufactured, and sold mattresses-in-a-box, also known as a bed-in-a-box ("Box Mattress"). A Box Mattress is a foam mattress compressed into a box for shipment purposes and is generally less expensive than purchasing a mattress not compressed.

3.      Box Mattresses, like traditional not-in-a-box mattresses, generally contain a fire-retardant sock or sleeve ("FR Sleeve"). These FR Sleeves can be made from different fibers including, Ammonium salt treated cellulosic fiber, fiberglass fiber, modacrylic fiber, and silica-embedded rayon fiber. Zinus uses fiberglass, also known as glass fibers, in some if not all its Box Mattresses' FR Sleeves. The FR Sleeve used in a foam mattress must meet the Open Flame Resistance Standards in 16 C.F.R. § 1633.

4.      Zinus' mattresses containing fiberglass (the "Affected Mattresses") suffer from catastrophic design defects and inadequate warning labels ("the Defects") that can result in large amounts of glass fibers releasing from the mattresses into the surrounding environment causing serious injuries and/or extensive property damage.

5.      The Defects also may include the FR Sleeve not meeting the Open Flame Resistance Standards over the life of the mattress and/or the time required by § 1633. The FR Sleeve made of glass fibers begins as a long continuous filament fiber. If the fibers do not break over the life of the mattress, the FR Sleeve complies with § 1633. However, the Defects cause the glass fibers to break overtime, in some cases within weeks, which means the Open Flame Resistance offered by the unbroken glass fiber is not present after the glass breaks. This results in the Affected Mattresses becoming noncompliant with § 1633.

6.     **On average, FR Sleeves not containing glass cost about five dollars more than the FR Sleeves containing glass fibers.** Upon information and belief, Zinus chooses not to pay this extra cost to save money while knowing its current Affected Mattresses and/or glass-containing FR Sleeves are defective.

7.     Some, if not all, of the Affected Mattresses contain an outer mattress cover ("Outer Cover"). The Outer Cover's defective design and/or the FR Sleeve's defective design allows glass fibers contained within it to penetrate through the Outer Cover which allows the glass fibers to then release into the surrounding environment causing serious injuries and/or extensive property damage.

8.     Some, if not all, of the Affected Mattresses contain a removable Outer Cover equipped with a zipper. Once the Outer Cover is unzipped and removed, the FR Sleeve comprised of large amounts of glass fibers is exposed which allows the glass fibers to then release into the surrounding environment potentially causing serious injuries and/or property.

**B. News Reports Concerning the Affected Mattresses**

9.     The Affected Mattresses are sold in retail stores throughout the United States. News outlets from across the United States have reported on how the Affected Mattresses have released dangerous glass fibers into the environment injuring adults, children, and causing thousands of dollars of property damage.

10.    In 2017, CBS 5 News in Arizona ("CBS 5") reported on an Affected Mattress releasing significant amounts of glass fibers into a home causing extensive property damage, health problems for children living in the home, and forcing the family living in the home to vacate

it because of the glass fiber contamination.[1] Homeowner Nikki McKee reported to CBS 5 that a Spa Sensations memory foam mattress with a removable Outer Cover made by Zinus released glass fibers into her home causing her children to experience skin irritation and respiratory issues.[2]

11.     In February 2020, News 4 in San Antonio, Texas ("News 4") reported on how Brittney Rodriguez followed the "cleaning instructions for her mattress cover" which then caused her Affected Mattress, a Spa Sensations mattress made by Zinus, to release extremely large amounts of glass fibers into her home causing extensive property damage and health issues for her and her children.[3]

12.     On February 14, 2020, a television news story entitled "Hidden Hazards" aired on KMOV4 in St. Louis, Missouri documenting "the danger lurking in your mattress."[4] This featured news story outlined the tragic events Plaintiffs Amanda Chandler and Robert Durham experienced when their child's Affected Mattress released extremely large amounts of dangerous glass fibers which then caused serious injuries to their family of five and "destroy[ed] thousands of dollars of stuff and [their] whole life." *Id.*   Due to the serious risks associated with the glass fiber contamination, if forced this family of five from their home for months.

13.     To date, individuals from New York, Pennsylvania, the District of Columbia, Maryland, Florida, Michigan, Illinois, Missouri, Texas, Wyoming, California, and Oregon have contacted the undersigned and shared strikingly similar stories of purchasing an Affected Mattress,

---

[1] *Family forced to leave home over fiberglass mattress cover*, azfamily powered by 3TV and CBS5AZ (June 15, 2017), https://www.youtube.com/watch?v=jO3Pq6qFj_s (last visited May 4, 2020).
[2] *Id.*
[3] Darian Trotter, *'I just don't know what to do.' Why it'll cost $4300 to clean her home*, NEWS4SA (February 18, 2020), https://news4sanantonio.com/news/local/i-just-dont-know-what-to-do-why-itll-cost-4300-to-clean-her-home-02-19-2020 (last visited on May 15, 2020).
[4] Lauren Trager, *News 4 Investigates: The danger lurking in your mattress*, KMOV News 4 (February 14, 2020), https://www.kmov.com/news/news-investigates-the-danger-lurking-in-your-mattress/article_2bb77cc2-4eb7-11ea-b4c6-0319ba20d45f.html (last visited on May 15, 2020).

the Affected Mattress releasing significant amounts of glass fibers, and the glass fibers causing serious injuries to their families and/or extensive property damage.

**C. Amazon Reviews Reporting Affected Mattresses Releasing Fiberglass**

14.     Zinus sells its Green Tea 12-Inch Memory Foam Mattress ("Green Tea Mattress") on Amazon.com.[5] This model is an Affected Mattress that releases glass fibers which can cause injuries, property damage, and/or cause the mattress to lose its Open Flame Standard. To date, this model has over 43,000 ratings on Amazon which range from one star to five-star ratings.[6] As of June 3, 2020, the top featured Amazon review for this Affected Mattress is from December 25, 2018 and entitled "DO NOT UNZIP MATTRESS COVER!!!!" and Amazon reports "8,900 people found this [review] helpful."[7] The "Verified Purchase[r]" who authored the review includes in the review that he "**called Zinus and they told me 'yes we are aware and that's why it says not to remove the cover.' Then why did you put a zipper on it!?!?!?**"[8] The review also states that "[w]e hired Servpro to help filter out all of the fiber glass particles in the air."[9]

15.     Dozens of other verified Amazon purchasers gave Zinus' Green Tea Mattress a one-star rating ("Review") because the mattress released large amounts of glass fibers causing serious injuries and/or extensive property damage.[10]

16.     A verified purchaser authored a Review on November 26, 2017 and it states, in part, "**Today I took the outer, zippered cover off to wash (as it says you can).** A few minutes later, my forearms were itching and burned when I rubbed them. So I googled and turns out, the

---

[5] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress*, https://www.amazon.com/Zinus-Memory-Green-Mattress-Queen/dp/B00Q7EPSHI (last visited May 17, 2020).
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* (emphasis added).
[10] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress*.

INNER cover is made of fiberglass. There are tiny shards of this stuff everywhere. I'm so upset . . .."[11]

17.    A verified purchaser authored a Review on December 22, 2017 and it states, in part:

"I decided To take the cover off to possibly wash it.. BAD IDEA!!!!! The layer underneath the cover (which can't be washed and should NOT be taken off) is FIBERGLASS!!! Says right on the tag!!??? In a bed??? **Sorry but I do not think that can be healthy to be breathing in every night! I will not sleep on the bed, amazon was great with my refund.**"[12]

18.    A verified purchaser authored a Review on September 12, 2018 and it states, in part:

I've only had the mattress for a year now and I started to notice that my clothes and sheets were making me really itchy. I wasn't sure what the problem was for a couple of months and thought it had something to do with my detergent options. But after plenty of research and investigation, **I noticed the tiny shiny shards of fiber glass on my sheets.** Then I Inspected the mattresses outer covering and it had fiberglass all over it! Now I have to decontaminate all of my clothing and furniture in my home!"[13]

19.    A verified purchaser authored a Review on October 22, 2018 and it states:

This mattress has fiberglass and I had a really bad experience with it. I removed the cover to wash it and now its everywhere, in every single cloth in the house and it itches like crazy. **I have to throw out the bed, bedsheet, pillows and all of my cloths. It is a really bad experience.**[14]

20.    A verified purchaser authored a Review on February 14, 2019 and it states, in part:

Caution: This product is made of glass fibers! I did not know that until I saw the glass fibers in my bedroom! This should have been advertised, but I could not find it anywhere. **I would not have purchased it if I knew I would be sleeping on fiberglass.**[15]

---

[11] *Id.* (emphasis added).; *See* Exhibit 1.
[12] *Id.* (emphasis added).; *See Id.*
[13] *Id.* (emphasis added).; *See Id.*
[14] *Id.* (emphasis added).; *See Id.*
[15] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit 1.

21.     A verified purchaser authored a Review on February 21, 2019 and it states, in part, "I see multiple reports that the mattress is sheathed in fiberglass under the protective cover **(which comes with a zipper- implying it's removable when clearly it's not if there's fiberglass underneath).**"[16]

22.     A verified purchaser authored a Review on March 18, 2019 and it states:

DO NOT TAKE THE COVER OFF THIS MATTRESS. There is fiberglass in this mattress. I made the mistake of taking the cover off to wash it and the fiberglass got in all our clothes and linens and won't come out. **It is costing me hundreds of dollars to replace clothes and linens. A nightmare!!!**[17]

23.     A verified purchaser authored a Review on April 27, 2019 and it states:

PLEASE STAY AWAY FROM THIS MATTRESS! There is FIBERGLASS UNDERNEATH THE COVER WHICH IS CENTAMETERS FROM YOUR FACE ! **There is FIBER GLASS ON MY CLOTHES,ON MY SKIN & ON MY BABY'S CRIB! You don't even have to open the cover after a while it start protruding through!**WHAT A MESS . I Don't EVEN KNOW WHERE TO START [sad face emoji]."[18]

24.     A verified purchaser authored a Review on May 19, 2019 and it states, in part:

Bought this 2 years ago, my husbands asthma started acting up. We thought it was because of the condo we moved into the same time we bought the mattress . . . **Had I known there was fiberglass in the mattress beforehand, I wouldn't have purchased this. I know it's there to make the mattress flame retardant but I'd rather my bed burst into flames than have fiberglass lining it.**[19]

25.     A verified purchaser authored a Review on May 30, 2019 and it states, in part:

I've been a Prime member for a long time and have never received a product that I felt a real need to write a negative review for UNTIL I received this Zinus mattress. Long story short: **this mattress shreds fiberglass THROUGH THE COVER (you don't have to remove the cover for this to happen). It's a health risk and should be recalled and banned from being sold in the US!**[20]

---

[16] *Id.* (emphasis added).; *See Id.*
[17] *Id.* (emphasis added).; *See Id.*
[18] *Id.* (emphasis added).; *See Id.*
[19] *Id.* (emphasis added).; *See Id.*
[20] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit 1.

26.     A verified purchaser authored a Review on June 6, 2019 and it states, in part:

I had to wash the cover when my dog decided to throw up on my bed and I couldn't spot clean it. The cover looked horible [sic] after handwashing it (rips and pills everywhere, and **after I put it back on I started finding shiny fibers on every surface in my room (billions, not just a few here and there)**.[21]

27.     A verified purchaser authored a Review on August 20, 2019 and it states, in part, "after reading the TAG sewed on the mattress I realized it was 61% GLASS FIBERS! **Seriously sleeping on fiber glass!! NOT Me!** Their description made the bed sound "Healthy"..Sent them back and they don't want to give me a full refund for New Mattresses shipped back as they requested."[22]

28.     A verified purchaser authored a Review entitled "A pin hole is enough to destroy your life" on August 21, 2019 and it states, in part:

That's when I noticed my sheets were sparkling. Whelp – lucky me. The second mattress had a very small hole in the cover. Maybe it was there when I bought it, maybe I nicked it taking it out of the package, I dunno. Doesn't really matter. **Because of that tiny hole the mattress has somehow managed to eject a TON of glass fibers. This is why I feel compelled to review. Yes the cover says don't remove but I did not remove anything.**[23]

29.     A verified purchaser authored a Review on September 19, 2019 and it states, in part, "**The very thin cover ended up ripping apart exposing the fiber glass. This is very dangerous and creates permanent damage in your lungs and gets everywhere.**"[24]

30.     A verified purchaser authored a Review on December 4, 2019 and it states, in part:

This WOULD be the perfect mattress! Except for the fact that it has FIBERGLASS as the fire resistant under-cover. I am extremely disappointed that this is even a thing that's allowed. **It is extremely dangerous for your health, and after some time of being used, the fiberglass will slowly make it's way out of the top cover getting all over your sheets, house, and you![25]**

---

[21] *Id.* (emphasis added).; *See Id.*
[22] *Id.* (emphasis added).; *See Id.*
[23] *Id.* (emphasis added).; *See Id.*
[24] *Id.* (emphasis added).; *See Id.*
[25] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit 1.

31.     A verified purchaser authored a Review on December 29, 2019 and it states, in part, "**This mattress is encased in fiberglass fabric underneath the outermost cover. The outer cover is flimsy and does not do a good job of keeping the harmful fiberglass filaments contained, even when fully intact.**"[26]

32.     A verified purchaser authored a Review on February 3, 2020 and it states, in part: "Please be aware and pay heed to all one star reviews posted here. **The fiber glass is real thing which you will never be aware of until and unless you beam a flashlight on mattress** surface area which are subjected to STRESS."[27]

33.     A verified purchaser authored a Review on March 16, 2020 and it states, in part:

About three weeks ago I started being bothered by **intense itching on my shoulders and trunk, with welts appearing wherever I scratched. It took me a couple of weeks to figure out that what I felt were sharp, tiny, fiberglass-like filaments that took almost two months to work their way through the cover, mattress pad and sheets**.[28]

34.     A verified purchaser authored a Review on April 18, 2020 and it states, in part:

**Mattress is comfortable for the price but no where does the packaging or product listing include a warning that if you remove the mattress covering, you will contaminate you're [sic] Room and possibly entire house with fiberglass**. . . Zinus may say not to take mattress cover off but it literally has a zipper as if your [sic] able to take off and clean like a normal person would assume yet to only find out this is exactly not what your [sic] sup[posed to do. **HEY ZINUS, TAKE THE ZIPPER OFF!**[29]

35.     Given Plaintiffs' experiences with the Affected Mattresses, the above Reviews, and the number of individuals from across the United States who have contacted the undersigned to express similar tragic experiences, Plaintiffs therefore bring this action on behalf of the following

---

[26] *Id.* (emphasis added).; *See Id.*
[27] *Id.* (emphasis added).; *See Id.*
[28] *Id.* (emphasis added).; *See Id.*
[29] *Id.* (emphasis added).; *See Id.*

classes: (1) a proposed nationwide class of consumers who purchased the Affected Mattresses;  (2) a proposed nationwide class of adults injured by glass fibers from the Affected Mattresses; (3) a proposed nationwide class of minors injured by glass fibers from the Affected Mattresses; (4) a proposed nationwide class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (5) a proposed nationwide class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses.

Alternatively, in the event the Court does not certify any of above five classes, Plaintiffs bring this action on behalf of the following Illinois classes: (1) a proposed Illinois class of consumers who purchased the Affected Mattresses; (2) a proposed Illinois class of adults injured by glass fibers from the Affected Mattresses; (3) a proposed Illinois class of minors injured by glass fibers from the Affected Mattresses; (4) a proposed Illinois class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (5) a proposed Illinois class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses.

## **PARTIES**

36.     Plaintiffs Amanda Chandler ("Chandler") and Robert Durham ("Durham") are adult citizens and residents of Collinsville, Illinois. In the summer of 2019, Plaintiffs jointly purchased a Zinus memory foam mattress for their child.

37.     Plaintiff Allen Branch ("Branch) is an adult citizen and resident of Centralia, Illinois.

38.     Plaintiffs Brandi and Wesley Kretzer are adult citizens and residents of Centralia, Illinois.

39.     Zinus is a California corporation with its principal place of business in Tracy, California. Zinus is in the business of designing, testing, manufacturing, selling, and supporting the mattresses subject to this Complaint. Zinus does business nationwide.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs. Members of the proposed Classes are citizens of States different from Defendant; and Defendant is not a citizen of the States of Illinois. This Court also has jurisdiction to decide claims brought under 16 C.F.R. § 1633 (the Federal Flammability Standard for Mattresses and Mattress Pads) by virtue of 28 U.S.C. § 1332(a)-(d), 28 U.S.C. § 1331, and has supplemental jurisdiction over the remaining claims.

41.     This Court has personal jurisdiction over Zinus because Zinus is registered to conduct business in Illinois and has sufficient minimum contacts in Illinois, or otherwise intentionally avails itself of the markets within Illinois through the promotion, sale, marketing and distribution of its mattresses, to render the exercise of jurisdiction by this Court proper.

42.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Zinus Mattresses Containing Glass Fibers

43.     This lawsuit concerns all Zinus mattresses containing glass fibers.

44.     The glass fibers contained within the Affected Mattresses are used for fire retardant purposes and must comply with 16 C.F.R. § 1633.

45.     Some, if not all, of the Affected Mattresses contain a removable Outer Cover which may be removed by a zipper.[30] Each day in the United States, millions of individuals use zippers to open pants, jackets, coats, shoes, backpacks, luggage, mattress covers, etc. Given how widely people in our society use zippers, attaching one to an object invites opening that object.

46.     Some of the Affected Mattresses **do not** warn the user to not remove the Outer Cover.

47.     Some of the Affected Mattresses warn the user to not remove the Outer Cover but the Outer Cover is still equipped with a zipper.

48.     Some of the Affected Mattresses warn the user not to remove the Outer Cover but the Outer Cover is still equipped with a zipper without a handle and/or the handle is stitched down making it harder to unzip. Upon information and belief, Zinus made the minor alterations to the Outer Cover because it knew removing the Outer Cover could expose the defective FR Sleeve.

49.     Once the Outer Cover is opened and removed from the mattress, the FR Sleeve containing a large percentage of glass fibers is exposed which may result in thousands of glass fibers releasing into the environment.

50.     Glass fibers may also release from the Affected Mattresses **without the user removing the Outer Cover**. The glass fibers from the FR Sleeve can penetrate through the inadequate Outer Cover then release into the environment.

51.     Once in the environment, these glass fibers easily disperse through the air, and can travel throughout a home via HVAC systems, vents, doorways, windows, etc. The glass fibers attach to essentially anything they touch. This includes human skin, animals, HVAC systems,

---

[30] ThoughtCo., *The History of the Zipper*, https://www.thoughtco.com/history-of-the-zipper-4066245 ("Today the zipper is everywhere and is used in clothing, luggage, leather goods and countless other objects." (last visited on March 7, 2020).

clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic.

52.     Exposure to glass fibers may cause eye, skin, and upper respiratory tract irritation. Glass fibers that reach the lower part of a person's lungs increases the chances of adverse health effects. Other possible health effects include:

- A rash can appear when the fibers become embedded in the outer layer of the skin. No long-term health effects should occur from touching fiberglass.
- Eyes may become red and irritated after exposure to fiberglass.
- Soreness in the nose and throat can result when fibers are inhaled. Asthma and bronchitis can be aggravated by exposure to fiberglass.
- Temporary stomach irritation may occur if fibers are swallowed.[31]

53.     The cost of cleaning a home exposed to glass fibers may cost thousands to possibly tens of thousands of dollars.[32] Experts recommend occupants of a home exposed to glass fibers to vacate the home until it is professionally cleaned.[33]

54.     Once the continuous glass fiber filaments in the FR Sleeve break the Affected Mattresses do not meet the Open Flame Standards of § 1633.

**B. Experience of Some of the Named Plaintiffs**

*Chandler and Durham*

55.     Chandler and Durham jointly purchased their Affected Mattress instore at a Walmart in Illinois. The Affected Mattress contained a removable Outer Cover equipped with a zipper. A mattress tag which read in part "62% Glass Fibers" was attached to the outer cover ("Outer Mattress Tag").

---

[31] Illinois Department of Public Health, *Environmental Health Fact Sheet*,
http://www.idph.state.il.us/envhealth/factsheets/fiberglass.htm (Last visited May 18, 2020).
[32] The Report.
[33] *Id.*

56.     The Outer Mattress Tag failed to warn the user of the following: not to remove the removable outer cover; that removing the removable outer cover may expose the user to glass fibers; that exposure to glass fibers may lead to serious injuries and/or property damage; that the removable Outer Cover was not washable; and, not to stand, sit, lay, or jump on the Affected Mattress after removing the removable Outer Cover.

57.     On January 27, 2020 Chandler unzipped the Outer Cover of the Affected Mattress, removed it, then laundered it in her newly purchased washing machine. While Chandler washed the Outer Cover, her two young sons jumped on the Affected Mattress which was in one of her son's bedrooms.

58     Once Chandler finished washing the removable cover, she draped it over her couch for it to air dry underneath a ceiling fan. After the Outer Cover finished drying, Chandler zipped it back onto the Affected Mattress

59.     On January 28, 2020, Durham awoke to go to work and immediately noticed his skin was very irritated and extremely itchy. After arriving at work, Durham was in such pain and discomfort that he requested off. Durham remained off work until April 20, 2020.

60.     At some point on January 28, 2020, Durham discovered his whole body was covered with little, hard-to-see shards of glass. Later in the day, Chandler and Durham's children began to scream and cry hysterically because their whole bodies itched. Chandler noticed their children and Chandler's bodies were also covered with little, hard-to-see shards of glass.

61.     Chandler and Durham then began noticing their home was blanketed with the same hard-to-see, little shards of glass. Tiny shards of glass were embedded in all parts of their home, both inside and out, including in their clothes, bedding, towels, appliances, carpet, tile, walls, tools, electronics, and inside their cars.

62.     After some research, Chandler and Durham discovered the Affected Mattress was the source of the shards of glass, also known as glass fibers. Upon this discovery, Chandler immediately moved the Purchased Mattress from inside her home to the outdoors.

*Branch*

63.     Branch purchased his Affected Mattress online from Walmart.com in May 2019. A month after his purchase, glass fibers began releasing from his Affected Mattress without Branch removing the Affected Mattress's Outer Cover.

*The Kretzers*

64.     The Kretzers purchased their Affected Mattress online from Amazon.com in September 2019. Months after their purchase, glass fibers began releasing from their Affected Mattress without the Kretzers removing the Affected Mattress's Outer Cover.

## C. Experience of Some Proposed Class Members

*The Millers*

65.     Marianna and Jeremy Miller, adult citizens and residents of Wyoming, purchased their Affected Mattress instore from Walmart in the Summer of 2018. The Outer Mattress Tag failed to warn the user of the following: not to remove the removable outer cover; that removing the removable outer cover may expose the user to glass fibers; that exposure to glass fibers may lead to serious injuries and/or property damage; that the removable Outer Cover was not washable; and, not to stand, sit, lay, or jump on the Affected Mattress after removing the removable Outer Cover.

*Ronald Szeve*

66.     Ronald Szeve, an adult citizen and resident of Michigan, purchased two Affected Mattresses online from Amazon.com in March of 2017. In 2018, the glass fibers from the FR

Sleeve broke from the continuous filament fiber then began protruding and releasing from both mattress's Outer Covers. The glass fibers contaminated his home causing injuries to himself and young son and caused significant property damage to his house and personal property. A medical physician confirmed both Szeve and his son had been exposed to glass fibers.

67.    Szeve emailed a Zinus Customer Service Lead and Specialist to complain about the above incident.[34] On May 2, 2018, a Zinus Customer Service Specialist responded to Szeve's complaint by stating, in part, "Please be aware that the glass fiber fire barrier is FDA approved and is non toxic. **We do realize it can take time to remove all the fibers.**"[35]

68.    Ultimately, a Zinus Customer Service Specialist elevated Szeve's complaint to Attorney Darien K. Wallace, an attorney representing Zinus.[36] On May 14, 2018, Attorney Wallace sent Szeve the following email:

> Dear Mr. Szeve,
>
> I have discussed your complaint with Zinus, and Zinus is unwilling to pay you any more than $500 for fiberglass allegedly working its way through the outer mattress cover and spreading throughout your house.  It is physically impossible for large amounts of fiberglass to pass through the fabric of the outer cover.
>
> However, Zinus is willing to refund you $369 for the two mattresses you purchased (instead of sending you replacement mattresses).  So Zinus will send you a check for a total of $869 ($369 plus $500) if you will sign and date the attached release and email a scanned version of the three pages back to me.[37]

After receiving Attorney Wallace's above email, Szeve declined to sign Zinus' Release of Liability then replied by stating, in part:

> I dont think youre taking into consideration the absolute horror this has been to manage. In total..the hours that myself and others have spent on trying to clean this up could be measured in 24hour periods now. DAYS! Nor are you taking into consideration the sacrifices (THROWING OUT OUR PERSONALY

---

[34] *See* Exhibit 2.
[35] *See Id.* (emphasis added).
[36] *See Id.*
[37] *See Id.*

BELONGINGS THAT TOTAL IN THE THOUSANDS!) Ive had to endure. **_IVE_**
**_HAD TO REMOVE MY SON FROM MY HOME FOR OVER A MONTH!!!!_**
Do you have any idea the guilt I carry around because of such?! To know that I
bought those beds in confidence of it being a good product, then to have this
happen?! Its not your company who has to explain to a child that they're not allowed
in their own home! Its not your company that has to explain he's lost all of his
belongings because of your product. Im the one who has to explain that, and carry
the guilt of having to do those things!!![38]

**D. Injuries**

69.     The glass fibers from the Affected Mattresses caused Plaintiffs and their families
to experience extreme pain and suffering. Some of Plaintiffs' and their families' injuries include
dermatitis, rashes, soreness to nose, throat, and eyes, embedded fibers, and stomach irritation.
Currently, the severity of Plaintiffs' their families' injuries are unknown because it is likely each
individual inhaled significant amounts of glass fibers.

**E. Property Damage**

70.     The glass fibers from the Affected Mattresses caused significant and potentially
irreversible damage to the Plaintiffs' homes and personal property. These glass fibers
contaminated Plaintiffs' HVAC systems, clothes, towels, bedding, couches, carpet, tile flooring,
drywall, electronics, bedding, miscellaneous furniture, and cars.

**F. Zinus Knew of the Defects Since At Least 2017 but Failed to Adequately Warn or Notify
Consumers.**

71.     Amazon reviews concerning Zinus' Green Tea Mattresses releasing dangerous
glass fibers date back to 2017.[39]

72. In the Summer of 2019, a consumer posted a direct message entitled, "Can I wash my
Zinus mattress cover?" to Zinus's website.[40] Zinus responded by stating the following: "Our

---

[38] *See Id.*
[39] *See* Exhibit 1.
[40] Zinus, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-
wash-my-Zinus-mattress-cover- (last visited March 8, 2020).

mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[41]

73.     The above statement fails to mention terms like fiberglass, glass fibers, or contains glass. The above statement fails to mention the potential consequences which may occur if the removable outer cover is removed. The above statement fails to explain that "removing [the cover] could inhibit the fire safety barrier" which then may cause thousands of glass fibers to release from the mattress potentially resulting in serious injuries and/or property damage. The above statement fails to mention why Zinus continued to equip the Affected Mattresses with Outer Covers with zippers when users were not to remove said covers.

## **DAMAGES**

74.     The Defects and Zinus' conduct to misrepresent and conceal them caused damage to Plaintiffs and the Class in at least three ways, as alleged in detail below. First, members of the Class would not have purchased the Affected Mattresses at all, or would have paid less for them, had the Defects been disclosed to them. Each of these injuries has already occurred. None of the injuries requires any Class members' mattresses to release glass fibers. Second, members of the class personally injured by the glass fibers contained within the Affected Mattresses. And third, members of the class who suffered property and/or real estate damage from the glass fibers contained within the Affected Mattresses. Members who suffered property and/or real estate damage from glass fibers contained within the Affected Mattresses seek the costs of remediation.

---

[41] *Id.*

## CLASS ACTION ALLEGATIONS

75.     The Classes' claims all derive directly from a single course of conduct by Zinus. Zinus has engaged in uniform conduct toward the class members. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes. Additionally, the state law claims share the same legal standards and elements of proof across states, thus facilitating the certification of a National Class.

76.     Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

**A. The Nationwide Consumer Class**

77.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All persons who purchased an Affected Mattress in the United States, which was manufactured and/or sold by Zinus and contained glass fibers.

**B. The Nationwide Adult Personal Injury Class**

78.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All adults in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**C. The Nationwide Minor Personal Injury Class**

79.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All minors in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**D. The Nationwide Personal Property Damage Class**

80.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All persons in the United States who suffered personal property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**E. The Nationwide Real Estate Property Damage Class**

81.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All persons in the United States who suffered real estate property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**F. Illinois State Class**

82.     In the alternative, if the Court does not certify the Nationwide Classes, Plaintiffs allege statewide class action claims on behalf of the following Illinois State Classes:

> **Illinois Consumer Class** – All persons who purchased an Affected Mattress in Illinois, which was manufactured and/or sold by Zinus.

**Illinois Adult Personal Injury Class** – All adults in Illinois injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**Illinois Minor Personal Injury Class** – All minors in Illinois injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**Illinois Personal Property Damage Class** – All persons in Illinois who suffered personal property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**Illinois Real Estate Property Damage Class** – All persons in Illinois who suffered real estate property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

83.     The Nationwide Classes, the Illinois Classes, and their members are sometimes referred to herein as the "Class" or "Classes."

84.     Excluded from the Classes are Zinus; any affiliate, parent, or subsidiary of Zinus; any entity in which Zinus has a controlling interest; any officer, director, or employee of Zinus; any successor or assign of Zinus; counsel for the Plaintiffs or anyone employed by counsel for Plaintiffs in this action and their immediate families; any Judge to whom this case is assigned and his or her immediate family and staff.

85.     This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

86.     **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Based on the number of complaints the undersigned received from individuals across the United States and the 47,000 plus Amazon Reviews concerning Zinus' Green Mattress, which is only one model of the Affected Mattresses, there are thousands of Affected Mattresses nationwide. Individual joinder of all Class members is impracticable.

87.     Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Defendant or third parties in the usual course of business and within their custody or control. Plaintiffs anticipate providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or  pursuant to court order under Fed. R. Civ. P. 23(d).

88.     **Existence of common questions.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2). These common questions include:

a.     Whether the Affected Mattresses comply with 16 C.F.R. § 1633 over the life of the mattress.

b.     Whether the Affected Mattresses comply with 16 C.F.R. § 1633 if the continuous glass fibers break.

c.     If the Affected Mattresses do not comply with 16 C.F.R. § 1633 if the continuous glass fibers break, is that negligence *per se*.

d.     Whether the Outer Cover on the Affected Mattresses constitutes a defect.

e.     Whether the Outer Cover on the Affected Mattresses constitutes a safety-related defect.

f.     Whether the zipper on the Outer Cover of the Affected Mattresses constitutes a defect.

g.     Whether the zipper on the outer cover of the Affected Mattresses constitutes a safety-related defect

h.    Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a defect in the mattress system.

i.    Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a safety-related defect in the mattress system.

j.    Whether the Affected Mattresses' attached tags are inadequate to sufficiently warn the user of associated dangers.

k.    Whether the Defects constitutes material facts that consumers might consider in making their purchasing decisions.

l.    Whether Zinus fraudulently concealed these Defects.

m.    Whether Zinus fraudulently concealed other defects.

n.    Whether Zinus misrepresented that the Affected Mattresses were safe.

o.    Whether Zinus engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose the Defects.

p.    Whether Zinus violated consumer protection statutes, and if so, what remedies are available.

q.    Whether Zinus be declared responsible for notifying all Class members of the Defects.

r.    Whether Zinus is liable under various theories of state liability.

s.    Whether Zinus is liable to the Class for damages and/or penalties as a result of their knowledge, conduct, action, or inaction; and.

t.    Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or preliminary and/ or permanent injunction.

89. **Typicality.** Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs' Affected Mattress contained the same Defects found in all other Affected Mattresses.

90. **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent and are capable and willing to participate in this litigation. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel. As such, they meet the requirements of Fed. R. Civ. P. 23(a)(4).

91. **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

92. **Predominance and Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The common questions listed in paragraph 54 are the central legal and factual issues in the litigation. The injuries suffered by each Class member, while meaningful on an individual basis, are not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Defects, individualized

litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

93.    In the alternative, the Class may be certified because:

a.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant; and/or

b.    The prosecution of separate actions by individual Class members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

**<u>CLAIMS FOR RELIEF APPLICABLE TO BOTH THE NATIONWIDE AND ILLINOIS CLASSES</u>**

**COUNT ONE – STRICT LIABILITY**

94.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Illinois Class, and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

95.    Zinus engaged in the design, manufacturing, marketing, and sales of the Affected Mattresses and knew or should have known, the Affected Mattresses could release glass fibers

resulting in contamination of the surrounding environment, thereby causing injuries and property damage to Plaintiffs.

96.    Zinus knew or should have known of the adverse impacts exposure to its glass fibers would have on people and property.

97.    Zinus knew or should have known of the persistence and high mobility of glass fibers once released into an environment, and the foreseeable risk that their glass fiber-containing mattresses could discharge glass fibers into an environment.

98.    By causing glass fiber contamination and the resulting impact to Plaintiffs' health, real property, and personal property, Zinus engaged in abnormally dangerous activity for which they are strictly liable.

99.    As a result of Zinus' abnormally dangerous activity, Plaintiffs have incurred, and will continue to incur, investigation, cleanup, remediation, and removal costs and damages related to glass fiber contamination.

## COUNT TWO – STRICT LIABILITY (FAILURE TO WARN)

100.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Illinois Class, and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

101.    Zinus engaged in the design, manufacturing, marketing, and sales of the Affected Mattresses and knew or should have known, the Affected Mattresses could release glass fibers resulting in contamination of the surrounding environment, thereby causing injuries and property damage to Plaintiffs.

102.    Zinus knew or should have known of the adverse impacts exposure to its glass fibers would have on people and property.

103.    Zinus knew or should have known of the persistence and high mobility of glass fibers once released into an environment, and the foreseeable risk that its glass fiber-containing mattresses could discharged or released said fibers into an environment.

104.    Zinus failed to provide warnings or instructions sufficient to notify the users and/or public and/or Plaintiffs of the dangers inherent in Zinus' glass fiber-containing mattresses.

105.    Zinus failed to provide proper and adequate notice or instruction regarding the dangers of their Affected Mattresses to human health and property rendering Zinus' glass fiber-containing mattresses unreasonably dangerous for the purposes intended and promoted by Zinus.

106.    Zinus' duty to warn is and was a non-delegable duty.

107.    Zinus also intentionally, recklessly, and without regard for human life and property covered up, suppressed, withheld, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to its glass fiber-containing mattresses as such relate to the persistence and high mobility of glass fibers in an environment.

108.    This failure to warn or adequately instruct regarding the dangers associated with use of Zinus' Affected Mattresses directly and proximately caused harm and damages to Plaintiffs.

109.    By causing glass fiber contamination and the resulting impact to Plaintiffs' health and property, Zinus is strictly liable.

110.    The failure to warn and deceptive conduct of Zinus, as to the public, and retailers of the Affected Mattresses, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Zinus for failure to warn.

**COUNT THREE – STRICT LIABILITY (DESIGN DEFECT)**

111.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Illinois Class, and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

112.    Zinus, herein, at all times relevant, was in the business of the design, manufacture, sale, and distribution of glass fiber-containing mattresses, and/or the foregoing use of which created a risk of exposure of glass fibers to the public as part of the foreseeable use of the Affected Mattresses.

113.    Zinus designed, manufactured, marketed, and sold defective products that were unreasonably dangerous for their intended use. Zinus either knew of the dangers contained in the Affected Mattresses and chose to ignore such dangers or should have known such dangerous existed.

114.    When Zinus placed its glass fiber-containing mattresses into the stream of commerce, the mattresses were defective, unreasonably dangerous, and not fit, suitable, or safe for the intended, foreseeable, and ordinary uses.

115.    After Zinus designed, manufactured, sold, and distributed the Affected Mattresses, they reached consumers and users without substantial change to the condition and nature of the products. Zinus made the Affected Mattresses pursuant to their own formulas, research, design specifications, and testing.

116.    Zinus, with knowledge of the risks associated with glass fibers, failed to use reasonable care in the design of the Affected Mattresses.

117.    The Defects in the Affected Mattresses existed at the time they left Zinus' control and were known to Zinus.

118.    Reasonable safer alternatives exist and were available to Zinus at all relevant times. Thus, the risks of the Affected Mattresses outweighed the benefits.

119.    By causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Zinus is strictly liable.

120.    The Defects in the Affected Mattresses proximately caused and have directly resulted in the damages of which Plaintiffs complain.

## COUNT FOUR – NEGLIGENCE *PER SE*

121.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Illinois Class, and under the common law of negligence *per se*, as there are no material conflicts among various states' causes of action for negligence *per se* as they apply to this case.

122.    Zinus had a duty to comply with 16 C.F.R. § 1633 which is a safety-related regulation. The purpose of 1633 is to establish "flammability requirements that all mattress sets must meet before sale or introduction into commerce.[42]

123.    Zinus had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its glass fiber-containing mattresses to avoid harm to those who would be foreseeably injured by glass fiber contamination.

124.    Under § 1633, Zinus had duty to cease production and distribution in commerce of the Affected Mattresses if:

---

[42] 16 C.F.R. § 1633.1

Any test performed for quality assurance yields results which indicate that any mattress set of a production lot does not meet the criteria of § 1633(b), **or if the manufacturer obtains tests results or other evidence that a component or material or construction/assembly process used could negatively affect the test performance of the mattress set as set forth in § 1633(b)**, the manufacturer **shall cease production and distribution in commerce** of such mattress sets until corrective action is taken.[43]

125.    In violation of § 1633.6, Zinus continued producing and distributing in commerce the Affected Mattresses after receiving significant evidence that the continuous glass fiber filaments contained within some of its Affected Mattresses' FR Sleeves were breaking, which could negatively affect those Affected Mattresses' test performance as set forth in § 1633(b).

126.    Zinus' above acts caused its Affected Mattresses to lose their fire-retardant qualities which § 1633 aimed to prevent, while also allowing dangerous glass fibers to release from its Affected Mattresses causing harm to individuals § 1633 aimed to protect.

## COUNT FIVE – NEGLIGENCE

127.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Illinois Class, and under the common law of negligence, as there are no material conflicts among various states' causes of action for negligence as they apply to this case.

128.    Zinus had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its glass fiber-containing mattresses to avoid harm to those who would be foreseeably injured by glass fiber contamination.

---

[43] 16 C.F.R. § 1633.6 (emphasis added).

129.     Zinus knew or should have known that there was a serious risk that the Affected Mattresses could release or discharge glass fibers into an environment that would lead to contamination likely causing injures and/or property damage.

130.     By failing to exercise due care in the design, manufacturing, marketing, testing, promotion of its glass fiber-containing mattresses, Zinus breached its duty to avoid harm to Plaintiffs.

131.     Zinus failed to share, publish, or otherwise expose their internal testing and knowledge of the adverse effects of glass fiber exposure to humans and property. Zinus also intentionally, recklessly, and without regard for human safety and property, suppressed, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to its glass fiber-containing mattresses and the high mobility glass fibers pose once released into an environment. Zinus not only negligently failed to inform the public and Plaintiffs of same, but, at various times, failed to warn retailers of the Affected Mattresses. The failure to warn and deceptive conduct of Zinus, as to the public, Plaintiffs, and retailers, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Zinus for failure to warn.

132.     By negligently causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Zinus is liable to Plaintiffs.

133.     As a result of Zinus' negligence, Plaintiffs have incurred, and will continue to incur, investigation, cleanup, remediation, abatement, and removal costs and damages related to glass fiber contamination.

134.     Zinus' acts were willful, wanton, or reckless and conducted with a reckless indifference to Plaintiffs' rights.

135     As a direct and proximate result of Zinus' actions and omissions, Plaintiffs have suffered and continue to suffer damages.

## COUNT SIX– PRIVATE NUISANCE

136.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Un

137.    Through Zinus' acts and omissions, Zinus' glass fiber-containing mattresses have directly and proximately caused environmental contamination that has physically invaded Plaintiffs' homes, and unreasonably interfered with, and, continues to interfere with, Plaintiffs' use and enjoyment of their homes and property.

138.    The private nuisance created by Zinus is continuing.

139.    Zinus has failed, and continues to fail, to abate the private nuisance.

140.    By causing and creating the nuisance of glass fiber contamination and the resulting impact to Plaintiffs' property, Zinus is liable to Plaintiffs.

141.    As a result of the private nuisance, Plaintiffs have suffered and continue to suffer, significant harm and damages, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment, and removal of glass fibers that have contaminated Plaintiffs' homes and property.

## CLAIMS FOR RELIEF APPLICABLE TO THE ILLINOIS CLASSES

## COUNT SEVEN – FRAUDULENT CONCEALMENT (UNDER ILLINOIS LAW)

142.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Illinois Class.

143.    Plaintiffs bring this claim under Illinois law of fraudulent concealment and/or fraudulent omission.

144.    Zinus knew, or should have known, of the Defects since at least 2017.

145.    For example, in 2017, some individuals who purchased Zinus' Green Tea mattress on Zinus' Amazon site began authoring negative reviews about the mattresses releasing large amounts glass fibers causing injuries and/or property damage. Additionally, in the summer of 2019 through the present, Zinus concealed, suppressed, and failed to disclose material facts related to the Defects in public statements and communications which were designed and intended by Zinus to reach Plaintiffs and the Class members. Zinus made public statements about their mattresses' outer covers but omitted any mention of the existence of the Defects, or their nature, extent, or severity.

146.    At the time that Zinus concealed and suppressed these material facts, Zinus knew of these material facts and/or upon reasonable inquiry, Zinus would have come to know of these material facts.

147.    Zinus made these material omissions with the intention of reaching Plaintiffs and the Class members and influencing Plaintiffs' and the Class members' actions and with the intent that Plaintiffs and Class members rely on Zinus' deception.

148.    These omissions involved facts that were material because: (1) they are facts that would be relied on by a reasonable person purchasing or retaining an Affected Mattress; (2) they concern the type of information on which consumers would be expected to rely and would likely consider to be important in making a decision to purchase an Affected Mattress; and (3) they are of the type that a seller and/or manufacturer knows would be likely to induce a reasonable consumer to act, respond, or substantially change his or her behavior.

149.     These facts are also material because they directly impact the value of the Affected Mattresses that were purchased by Plaintiffs and the Class members. Whether a manufacturer's products are safe and reliable, whether those products contain defects, and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiffs and Class members trusted Zinus not to sell them mattresses that were defective or that violated federal law governing safety.

150.     Zinus concealed and suppressed these material facts to falsely assure purchasers and consumers that their Affected Mattresses were safe, as represented by Zinus and reasonably expected by consumers.

151.     Zinus actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' images and cost Zinus money. They did so at the expense of Plaintiffs and the Class members.

152.     Plaintiffs and the Class were unaware of these omitted material facts. Had they been aware of the Defects in the Affected Mattresses, and Zinus' disregard for safety, they would not have purchased, would not have paid as much, or would not have retained their Affected Mattresses for as long a period of time. Plaintiffs did not receive the benefit of their bargain because of Zinus' fraudulent concealment.

153.     Plaintiffs and the Class members relied on and were deceived by Zinus' material omissions in purchasing or retaining their Affected Mattresses.

154.     Zinus had a duty to disclose the Defects because:

a.     Zinus had exclusive and/or far superior knowledge and access to the facts related to the Defects, and these facts were not: (1) known to Plaintiffs and the Class members; (2) reasonably discoverable by Plaintiffs and the Class members through

ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiffs and the Class members;

b. Plaintiffs and Class members trusted and placed confidence in Zinus to inform them of technical and safety issues related to the Affected Mattresses, including issues related to glass fibers releasing from the Affected Mattresses;

c. Zinus was in a position of influence and superiority over Plaintiffs and the Class members because Zinus designed, manufactured, and/or sold the Affected Mattresses, and Zinus possessed technical expertise and information that Plaintiffs and the Class members lacked; and,

d. Zinus made incomplete representations about the safety and reliability of the Affected Mattresses, while purposefully withholding material facts from Plaintiffs and the Class members that contradicted these representations.

155. Because of the concealment and/or suppression of the facts, Plaintiffs and the Class members sustained damages. Accordingly, Zinus is liable to the Class for their damages in an amount to be proven at trial.

156. Zinus' acts were done wantonly, willfully, maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Class's rights and well-being, and with the aim of enriching Zinus. Zinus' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT EIGHT – UNJUST ENRICHMENT (UNDER ILLINOIS LAW)**

157.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Illinois Class.

158.    Plaintiffs and the Class members bring this claim to recover the amounts by which Zinus was unjustly enriched by virtue of their tortious or fraudulent conduct.

159.    Plaintiffs bring this claim on behalf of the Illinois Classes against Zinus under Illinois law of unjust enrichment.

160.    Plaintiffs and the Class members conferred benefits on Zinus. Zinus received a benefit through their unjust conduct by selling the Affected Mattresses, which share the Defects. Plaintiffs and the Class members overpaid for the Affected Mattresses.

161.    It is inequitable for Zinus to retain these benefits.

162.    Plaintiffs and the Illinois Class Members do not have an adequate remedy at law.

163.    As a result of Zinus' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

## COUNT NINE – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER ILLINOIS LAW (810 ILCS 5/2-314 and 810 ILCS 5/2A-212)

164.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

165.    The Class Plaintiffs bring this Count against Zinus on behalf of members of the Illinois Class.

166.    Zinus is and was at all relevant times a "merchant" with respect to the Affected Mattresses.

167.    Zinus impliedly warranted that the Affected Mattresses were in merchantable condition when Plaintiffs and the Illinois Class members purchased their Affected Mattresses. As

part of the implied warranty of merchantability, Zinus warranted that the Affected Mattresses were fit for their ordinary purposes as mattresses, in safe condition, and substantially free from defects.

168.    The Affected Mattresses, when sold, and at all times thereafter, were not merchantable and were unfit for the ordinary purposes for which mattresses are used. All Affected Mattresses suffer from Defects.

169.    The design defects make the Affected Mattresses unsafe by, without limitation, allowing glass fibers to release from the Affected Mattresses potentially causing serious injuries and/or property damage.

170.    These dangerous defects existed at the time the mattresses left Zinus' manufacturing facilities and at the time they were sold to the Plaintiffs and the Illinois Class members.

171.    The defective Affected Mattresses caused injury and/or property damage to Plaintiffs and the Illinois Class members.

172.    Plaintiffs and the Illinois Class members have had sufficient direct dealings with either Zinus or its agents to establish privity of contract.

173.    Plaintiffs and the Illinois Class members were not required to provide direct notice of their allegations of breach of implied warranty to Zinus because Zinus had actual knowledge of the design defects and their breaches of the implied warranties. Moreover, Plaintiffs and the Illinois Class members were not required to give prior notice to Zinus because Zinus was reasonably notified by the filing of the Class Action Complaint.

174.    As a direct and proximate result of Zinus' breach of the warranties of merchantability, Plaintiffs and other Illinois Class members have been damaged in an amount to be proven at trial.

175.     Plaintiffs and the Illinois Class members also seek available equitable and/or injunctive relief.

176.     Based on Zinus' continuing failures to fix the known dangerous Defects, Plaintiffs and the Illinois Class members seek: a declaration that Zinus has not remedied the Defects.

**COUNT TEN – VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICIES ACT (815 ILCS 505/1, et seq. and 720 ILCS 295/1A)**

177.     Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Illinois Class.

178.     Plaintiffs and the Illinois Class are consumers who purchased Affected Mattresses, not for resale in the ordinary course of their trade or business, but for their use or for use by a member of their households.

179.     Zinus is a "person" as that term is defined in 815 ILCS 505/1(c).

180.     During its businesses, trades, and commerce, Zinus knowingly and intentionally took misleading, false, or deceptive acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Zinus misrepresented, willfully failed to disclose, and actively concealed the dangerous Defects in the Affected Mattresses as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Zinus also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material facts with intent that consumers rely upon such misrepresentations, concealment, suppression, or omission, in connection with the sale of Affected Mattresses. Zinus is liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the ICFA.

181.     Zinus knew of Affected Mattresses' Defects since at least early 2017.

182.    Zinus concealed and suppressed material facts regarding the Affected Mattresses and made affirmative misrepresentations regarding the Affected Mattresses. As set out above, the concealed and suppressed material facts include all aspects of the nature of, and threat posed by, Defects, which were well known to Zinus since at least early 2017. The affirmative misrepresentations include, but are not limited to:

a.    Zinus' representation that "All of our mattresses have been tested and meet the requirements of the Cigarette Smoldering Test (16 CFR Part 1632) and the Open Flame Test (1633-Federal flammability)."[44]

b.    Zinus' representations that it is "impossible" for glass fibers to release from the Affected Mattresses without removing the Outer Cover.[45]

c.    Zinus' misrepresentation that "[o]ur mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[46]

d.    Zinus' misrepresentation that "[w]e know there are so many chemicals in fire retardants, so we've created a chemical-free fire barrier in every mattress. So you can sleep without nightmares of fires or weird fire-stopping chemicals."[47]

183.    Further, for example, as early as 2017 and through the present, Zinus concealed, suppressed, and failed to disclose material facts related to the Defects in public statements and

---

[44]Amazon, *How do I know a Zinus mattress is safe? Is your foam CertiPUR-US® certified*, https://support.zinus.com/hc/en-us/articles/360000223172-How-do-I-know-a-Zinus-mattress-is-safe-Is-your-foam-CertiPUR-US-certified- (last visited June 3, 2020).

[45] *See* Exhibit 2.

[46] Amazon, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-wash-my-Zinus-mattress-cover- (last visited June 3, 2020).

[47] Amazon, *Do Zinus mattresses contain fire retardants?*, https://support.zinus.com/hc/en-us/articles/360000235651-Do-Zinus-mattresses-contain-fire-retardants- (last visited June 3, 2020).

communications that were designed and intended by Zinus to reach Plaintiffs and the Class members. Zinus made, and continues to make, public statements touting the safety and quality of the Affected Mattresses but omitting any mention of the existence of the Defects, or their nature, extent, or severity.

184.   Zinus made these material omissions and misrepresentations with the intention of reaching Plaintiffs and the Illinois Class members, influencing Plaintiffs' and the Illinois Class members' actions, and with the intent that Plaintiffs and Illinois Class members rely on Zinus' deception.

185.   These affirmative misrepresentations were false at the time that Zinus made them.

186.   At the time Zinus made these material misrepresentations Zinus knew their representations were false; and/or Zinus knew that they did not have a reasonable basis for their representations; and/or Zinus acted recklessly without knowledge of their truth. At the time Zinus concealed and suppressed these material facts, Zinus knew of these material facts and/or upon reasonable inquiry, Zinus would have come to know of these material facts.

187.   These misrepresentations and omissions involved facts that were material because: (1) they are facts that would be relied on by a reasonable person purchasing a mattress; (2) they concern the type of information on which consumers would be expected to rely and would likely consider to be important in making a decision to purchase a mattress; and (3) they are of the type that a seller knows would be likely to induce a reasonable consumer to act, respond, or substantially change his or her behavior. Whether a manufacturer's products are safe and reliable, whether those products contain defects, and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiffs and the Illinois Class members trusted Zinus not to sell mattresses that were defective or that violated federal law governing safety.

188.     Zinus made these misrepresentations, and concealed and suppressed these material facts, to falsely assure purchasers and consumers that their mattresses could perform safely, as reasonably expected by consumers.

189.     Zinus actively concealed and/or suppressed and misrepresented these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' images and cost Zinus money. They did so at the expense of Plaintiffs and the Illinois Class members.

190.     Plaintiffs and the Illinois Class members were unaware of these material omissions and unaware of the falsity of Zinus' material misrepresentations. Plaintiffs and the Illinois Class members were deceived by Zinus' misrepresentations and omissions. Had they been aware of the Defects in the Affected Mattresses, and Zinus' disregard for safety, Plaintiffs and the Illinois Class members would not have purchased, would not have paid as much, or would not have retained their mattresses. Plaintiffs did not receive the benefit of their bargain because of Zinus' fraudulent concealment.

191.     Plaintiffs relied on and were deceived by Zinus' representations in purchasing or retaining their Affected Mattresses.

192.     Zinus had a duty to disclose the Defects because: a. Zinus had exclusive and/or far superior knowledge and access to the facts related to the Defects, and these facts were not: (1) known to Plaintiffs and the Illinois Class members; (2) reasonably discoverable by Plaintiffs and the Illinois Class members through ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiffs and the Illinois Class members; b. Plaintiffs and Illinois Class members trusted and placed confidence in Zinus to inform them of safety issues related to the Affected Mattresses; c. Zinus was in a position of influence and superiority over Plaintiffs and the

Illinois Class members because Zinus designed and manufactured the Affected Mattress, and Zinus possessed technical expertise and information that Plaintiffs and the Illinois Class members lacked; and d. Zinus made incomplete representations about the safety and reliability of the Affected Mattresses, while purposefully withholding material facts from Plaintiffs and the Illinois Class members that contradicted these representations.

193.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained ascertainable damages including overpaying for the Affected Mattresses.

194.    Plaintiffs and the Illinois Class members risk irreparable injury as a result of the Zinus' acts and omissions in violation of the ICFA, and these violations present a continuing risk to Plaintiffs and the Illinois Class members as well as to the general public. Zinus' unlawful acts and practices complained of herein affect the public interest.

195.    Plaintiffs have complied with the notice requirement of 815 Ill. COMP. STAT. 505/10a(d) by mailing a copy of this Class Action Complaint to the Illinois Attorney General.

196.    Accordingly, Zinus is liable to Plaintiffs and the Illinois Class for their damages in an amount to be proven at trial.

197.    Zinus' acts were done wantonly, willfully, maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Illinois Class's rights and well-being, and with the aim of enriching Zinus. Zinus' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk injury, and affecting public safety, warrants punitive damages in an amount sufficient to deter such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes as defined herein, respectfully request that this Court enter a judgment against Zinus and in favor of Plaintiffs and the Classes, and grant the following relief:

A.    Determine that this action may be maintained and certified as a class action on a nationwide or, alternatively, a statewide basis under Rule 23(b)(1), 23(b)(2) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under 23(c)(4); and that it designate and appoint Plaintiffs as Class Representatives, and appoint Class Counsel under Rule 23(g);

B.    Enter judgment finding Zinus liable for all costs and damages incurred by Plaintiffs, including but not limited to prior, interim and future capital as well as operation and maintenance costs related to glass fiber contamination; including the reasonable costs of investigations and remediation, and losses resulting from glass fiber contamination;

C.    A declaration that the Affected Mattresses are defective as described herein.

D.    Enter judgment finding Zinus liable for punitive damages;

E.    Enter judgment finding Zinus liable for consequential damages;

F.    Enter judgment requiring, via injunction, Zinus stop manufacturing and or selling the Affected Mattresses in the United States.

G.    Award Plaintiffs costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law

H.    A declaration that these defects are safety-related.

I.    A declaration that Zinus be financially responsible for notifying all Class members of the Defects present in the Affected Mattresses.

J.      An order requiring Zinus to desist from further deceptive distribution and sales practices with respect to the Affected Mattresses.

K.      Award Plaintiffs and Class members restitution and/or disgorgement of Zinus' ill-gotten gains for the conduct described in this Complaint;

L.      Award Plaintiffs and Class members pre-judgment and post-judgment interest;

M.      Leave to amend this Amended Complaint to conform to the evidence produced at trial; and,

N.      Award Plaintiffs and Class members such other relief as the case may require; or as determined to be just, equitable, and proper by this Court.

Dated: June 8, 2020                      Respectfully submitted,

*/s/ Christopher Cueto*_____
Christopher Cueto, IL #6192248
James E. Radcliffe, IL #6330315
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Email: ccueto@cuetolaw.com

Lloyd M. Cueto, IL #6292629
Law Office of Lloyd M. Cueto, P.C.
7110 West Main Street
Belleville, IL 62223
cuetolm@cuetolaw.com

Gregory A. Cade
Kevin B. McKie
Gary Anderson
ENVIRONMENTAL
LITIGATION GROUP, P.C.
2160 Highland Ave. S.
Birmingham, AL 35205
T: (205) 328-9200
F: (205) 328-9456
GregC@elglaw.com
kmckie@elglaw.com
Gary@elglaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

  Pursuant to Rule 7.1 of the Local Rules of the Southern District of Illinois, I certify that on June 24, 2020 a true and correct copy of the foregoing has been properly served upon counsel of record as required by the Federal Rules of Civil Procedure via the ECF system.

*/s/ Christopher Cueto*_____