# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMANDA CHANDLER, *on her own behalf and on behalf of her minor children*, D.D., B.D., and J.F.; [1]ROBERT DURHAM, *on his own behalf and on behalf of his minor children*, D.D., B.D., and J.F.; ALLEN BRANCH; BRANDI KRETZER; WESLEY KRETZER; HARLEY SEGGERMAN, *on her own behalf and on behalf of her minor children,* R.A. and J.A.; DAVID AGUILAR; ERLINDA AGUILAR, *on her own behalf and on behalf of her minor children,* A.A., R.A.H., D.A. and Y.C.; KRISTEL BAFFA, *on behalf of herself and her minor children*, A.B. and E.B.; RYAN BELLOTTI, CHELSEA BIRNELL; TALIA BLAYLOCK; A.J. CINCOTTA-EICHENFIELD; AARON COLE; UQUALLIA COLEMAN; PAMELA COLYOTT; MELISSA CONCEPCION, *on behalf of herself and her minor children,* A.C., M.C., MA.C*., and* N.C.*;* NICOLE COOKINHAM; PETER COOKINHAM; CODY COON, *on behalf of himself and his minor child* B.M.; ALINA CUBOW *and* JOE CUBOW, *on behalf of themselves and on behalf of their minor child.* A.C.; STEVEN CURTIS AND KAYLA CURTIS, *individually and on behalf of their minor children* C.C. and L.C.; SHAUNTICIA DAVIS and MATTHEW DAVIS, *on behalf of themselves and on behalf of their minor children,* R.D., MA.D, ME.D.; DAVID DURON and UNIQUE MACIEL; JENNIFER EVANS; TUCKER EVANS and GABRIELLE KUSTER; EDWARD FRETHEIM;  DERRICK FUDGE, NATALIA SEREBRIANNIKOVA, YANA NDINGAN, *on behalf of herself and on behalf of her minor children,* E.N. *and* R.N.; JUAN GAONA, JR.; JEFFERY GOBEL; SELENA GOLDEN, *on behalf of herself and on behalf of her minor children,* T.G. and S.G., *and as Next Friend of* M.G. *with* ALAN SISTAD *on behalf of himself and on behalf of their minor children,* J.S., S.S., M.S., and Ma.S; JOSEPH GOLDSMITH; | CASE NO.:  13:20-CV-265-DWD |

---

[1] In Compliance with Local Rule 15.1, all non-bold, underlined words signify new material added to the Second Amended Class Action Complaint.

JENNIFER GOLDSMITH; CASEY
GOLDSMITH; ALEXIS GONZALES; CHAD
GOODSON and GINNY GOODSON, *on behalf
of themselves and on behalf of their minor child,*
B.G.; PATRICK GREEN; VANESSA
GUTIERREZ, *on behalf of herself and on behalf
of her minor children,* AL.D and AN.D.; RYAN
HASARA; TERRY HAYDEN; LEZA HEPLER
and TIMOTHY HEPLER *on behalf of themselves
and on behalf of their minor child,* K.H.;
KAMREN HEPLER; MARIE HICKS;
JONATHAN HOANG; CHRISTINA *and*
JOHNATHAN HOOVER; AIMEE HUDSON
*and* JIMMY HUDSON, *on behalf of themselves
and on behalf of their minor children* J.H., G.M,
E.H. *and* A.S.; STORM DAVIES;
CHRISTOPHER JOHNSON and KRISTY
JOHNSON; JACOB JONES; MICHAEL JONES
and PAIGE JONES, *on behalf of themselves and
their minor child* L.J.; LESTER JORDAN, *on
behalf of himself and on behalf of his deceased
wife,* ANGELA ODELL; BAKYTZHAN
KALLEMOV *and* GULNAR KALLEMOVA *on
behalf of themselves and on behalf of their minor
children,* L.K. *and* E. K.; MARK
LAMBARENA, *on behalf of himself and on
behalf of his minor child,* M.L.; MAIKO LUNN
*and* SHAYAN ASKARI; ROBERT MADDOX
*and* AMIE MADDOX; TINAMARIE
MALDONADO; JASON MCCARRON, JR. *and*
CHEYENNE MITCHELL, *on behalf of
themselves and on behalf of their minor child*
J.M.; HALEIGH MCCLAIN *and* TREVOR
MCCLAIN, *on behalf of themselves and on behalf
of their minor child* K.M.; JACOB MCDOWELL
*and* SAMANTHA ZIEGLER, *on behalf of
themselves and on behalf of their minor child*
H.M; QUENTIN MIYAMOTO *and* TAWNY
MIYAMOTO; JEREMY MILLER; MARIANNA
MILLER; LEONARD MILLER; THERESA
MILLER; ASHLEY MILLS; ERICA D.
MOORE; DAVID MORSE; DOUGLAS
NOBLITT; JOHN ORRILL; MATTHEW
PORTER *and* AIDAN COYLE; WILSON
RIENDEAU; RYAN FITZROY ROBERTS;
EDWARD ROCKENSTYER and JENNIFER

CASE NO.:  13:20-CV-265-DWD

WALSH, *on behalf of themselves and on behalf of their minor children*, J.SA. and J.SI; BRITTANY RODRIGUEZ, *on behalf of herself and on behalf of her minor children*, CH.R, CA.R, CAR.R, and CAM.R.; NOAH ASTOLFO; MARIA ASTOLFO; MARIAH ROIZ and RYAN BOYETT, *on behalf of themselves and on behalf of their minor children*, E.B., L.B., E.F., and J.B.; TIARA SAMPSON; ROMEO NERO, *on behalf of himself and on behalf of his minor children* A.N. and E.N; FRANCIS SANTANA; JENNIFER SCHMALTZ; ELKER SENSIBAUGH and JORDAN SENSIBAUGH, *on behalf of themselves and on behalf of their minor children* I.S. and L.S.; RICKIE SHELTON;; TIMOTHY K. SPIES; BRIAN STAMMLER and BRITTANY SALCIEO, *individually and on behalf of their minor children,* M.T.S and A.R.S.; ROBERT STEVENS; ANN MARTINEC; LOUISE BARKLEY; ASIA AUSBURN; RYAN AUSBURN; SUSAN MONEY; STEVEN MCCALLIE; LOGAN SUMMERHAYS; RONALD SZEVE, *on behalf of himself and on behalf of his minor child, R.S.;* SARAH TORELLA; ABUZAR TURAB and VANESA QUIROZ-TURAB, *on behalf of themselves and their minor children,* N.T. and I.T.; JESUS MUNOZ *and* DINORA VERDUGO LEDEZMA, *on behalf of herself and her minor children G.V., L.L., and S.L.;* DANIEL VIDMAR; BRANDON WAGNER; GARRETT WILLIAMS and LINDSEY WILLIAMS, *on behalf of themselves and on behalf of their minor children,* E.W., M.W. and K.W.; JUN XIANG; *collectively on behalf of themselves and all other similarly situated;*

                    Plaintiffs;

        v.

ZINUS INC.;

                    Defendant.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

NOW COME Plaintiffs AMANDA CHANDLER, *on her own behalf and on behalf of her minor children*, D.D., B.D., and J.F.; ROBERT DURHAM, *on his own behalf and on behalf of his minor children*, D.D., B.D., and J.F.; ALLEN BRANCH; BRANDI KRETZER; WESLEY KRETZER.; HARLEY SEGGERMAN, *on her own behalf and on behalf of her minor children*, R.A. and J.A.; DAVID AGUILAR; ERLINDA AGUILAR, *on her own behalf and on behalf of her minor children*, A.A., R.A.H., D.A. and Y.C.; KRISTEL BAFFA, *on behalf of herself and her minor children*, A.B. and E.B.; RYAN BELLOTTI, CHELSEA BIRNELL; TALIA BLAYLOCK; A.J. CINCOTTA-EICHENFIELD; AARON COLE; UQUALLIA COLEMAN; PAMELA COLYOTT; MELISSA CONCEPCION, *on behalf of herself and her minor children*, A.C., M.C., MA.C*., and* N.C*.;* NICOLE COOKINHAM; PETER COOKINHAM; CODY COON, *on behalf of himself and his minor child* B.M.;ALINA CUBOW *and* JOE CUBOW, *on behalf of themselves and on behalf of their minor child.* A.C.; STEVEN CURTIS AND KAYLA CURTIS, *individually and on behalf of their minor children* C.C. and L.C.; SHAUNTICIA DAVIS and MATTHEW DAVIS, *on behalf of themselves and on behalf of their minor children,* R.D., MA.D, ME.D.; DAVID DURON *and* UNIQUE MACIEL; JENNIFER EVANS; TUCKER EVANS and GABRIELLE KUSTER; EDWARD FRETHEIM; DERRICK FUDGE, NATALIA SEREBRIANNIKOVA, YANA NDINGAN, *on behalf of herself and on behalf of her minor children,* E.N. *and* R.N.; JUAN GAONA, JR.; JEFFERY GOBEL; SELENA GOLDEN, *on behalf of herself and on behalf of her minor children,* T.G. and S.G., *and as Next Friend of* M.G.  *with* ALAN SISTAD *on behalf of himself and on behalf of their minor children,* J.S., S.S., M.S., and Ma.S; JOSEPH GOLDSMITH; JENNIFER GOLDSMITH; CASEY GOLDSMITH; ALEXIS GONZALES; CHAD GOODSON and GINNY GOODSON, *on behalf of themselves and on behalf*

*of their minor child*, B.G.; PATRICK GREEN; VANESSA GUTIERREZ, *on behalf of herself and on behalf of her minor children*, AL.D and AN.D.; RYAN HASARA; TERRY HAYDEN; LEZA HEPLER and TIMOTHY HEPLER *on behalf of themselves and on behalf of their minor child*, K.H.; KAMREN HEPLER; MARIE HICKS; JONATHAN HOANG; CHRISTINA HOOVER *and* JOHNATHAN HOOVER; AIMEE HUDSON *and* JIMMY HUDSON, *on behalf of themselves and on behalf of their minor children* J.H., G.M, E.H. *and* A.S.; STORM DAVIES; CHRISTOPHER JOHNSON and KRISTY JOHNSON; JACOB JONES; MICHAEL JONES and PAIGE JONES, *on behalf of themselves and their minor child* L.J.; LESTER JORDAN, *on behalf of himself and on behalf of his deceased wife*, ANGELA ODELL; BAKYTZHAN KALLEMOV and GULNAR KALLEMOVA *on behalf of themselves and on behalf of their minor children*, L.K. and E. K.; MARK LAMBARENA, *on behalf of himself and on behalf of his minor child*, M.L.; MAIKO LUNN *and* SHAYAN ASKARI; AMIE MADDOX *and* ROBERT MADDOX; TINAMARIE MALDONADO; JASON MCCARRON, JR. AND CHEYENNE MITCHELL, *on behalf of themselves and on behalf of their minor child* J.M.; HALEIGH MCCLAIN *and* TREVOR MCCLAIN, *on behalf of themselves and on behalf of their minor child* K.M.; JACOB MCDOWELL *and* SAMANTHA ZIEGLER, *on behalf of themselves and on behalf of their minor child* H.M; QUENTIN MIYAMOTO *and* TAWNY MIYAMOTO; JEREMY MILLER; MARIANNA MILLER; LEONARD MILLER; THERESA MILLER; ASHLEY MILLS; ERICA D. MOORE; DAVID MORSE; DOUGLAS NOBLITT; JOHN ORRILL; MATTHEW PORTER *and* AIDAN COYLE; WILSON RIENDEAU; RYAN FITZROY ROBERTS; EDWARD ROCKENSTYER and JENNIFER WALSH, *on behalf of themselves and on behalf of their minor children*, J.SA. and J.SI; BRITTANY RODRIGUEZ, *on behalf of herself and on behalf of her minor children*, CH.R, CA.R, CAR.R, and CAM.R.; NOAH ASTOLFO; MARIA ASTOLFO;

MARIAH ROIZ and RYAN BOYETT, *on behalf of themselves and on behalf of their minor children*, E.B., L.B., E.F., and J.B.; TIARA SAMPSON; ROMEO NERO *on behalf of himself and on behalf of his minor children* A.N. and E.N; FRANCIS SANTANA; JENNIFER SCHMALTZ; ELKER SENSIBAUGH and JORDAN SENSIBAUGH, *on behalf of themselves and on behalf of their minor children* I.S. and L.S.; RICKIE SHELTON; TIMOTHY K. SPIES; BRIAN STAMMLER and BRITTANY SALCIEO, *individually and on behalf of their minor children,* M.T.S and A.R.S.; ROBERT STEVENS; ANN MARTINEC; LOUISE BARKLEY; ASIA AUSBURN; RYAN AUSBURN; SUSAN MONEY; STEVEN MCCALLIE; LOGAN SUMMERHAYS; RONALD SZEVE, *individually and on behalf of his minor child,* R.S.; SARAH TORELLA; ABUZAR TURAB and VANESA QUIROZ-TURAB, *individually and on behalf of their minor children,* N.T. and I.T.; JESUS MUNOZ *and* DINORA VERDUGO LEDEZMA, *on behalf of herself and her minor children* G.V., L.L., and S.L.; DANIEL VIDMAR; BRANDON WAGNER; GARRETT WILLIAMS and LINDSEY WILLIAMS, *on behalf of themselves and on behalf of their minor children,* E.W., M.W. and K.W.; JUN XIANG; *collectively on behalf of themselves and all other similarly situated,* by and through counsel, and for their Second Amended Class Action Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure, allege as follows:

## NATURE OF ACTION

### A. Background

1.      This is a consumer class action on behalf of all individuals in the United States who purchased and/or used mattresses containing fiberglass manufactured and/or distributed by Defendant Zinus Inc ("Zinus") ("the Affected Mattresses"). Alternatively, this is a consumer class action on behalf of all individuals from the following States and District:

Arizona, Arkansas, California, Colorado, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Washington , and Wyoming.  Zinus is another example of a large company valuing its profits over the safety of consumers. All too often do these types of companies continue producing knowingly unsafe products that injure consumers until someone holds them accountable, usually through court intervention.

2.      Zinus is a global eCommerce mattress and furniture manufacturer that specializes in manufacturing "bed-in-a-box mattresses" ("Box Mattress") it then sells on online marketplaces – such as Amazon – and through "big box" retailers – such as Walmart and Target – rather than through traditional furniture or mattress stores. A Box Mattress is generally a foam mattress compressed into a box for shipment purposes and is usually less expensive than purchasing a traditional mattress.

3.      Box Mattresses, like traditional not-in-a-box mattresses, contain a fire-retardant sock or sleeve ("FR Sleeve") that must meet the Open Flame Resistance Standards in 16 C.F.R. § 1633.  FR Sleeves can be made from different fibers including, Ammonium salt treated cellulosic fiber, fiberglass fiber, modacrylic fiber, and silica-embedded rayon fiber. Zinus uses fiberglass, also known as glass fibers, in all its Box Mattresses' FR Sleeves as an inexpensive flame retardant. However, glass fibers from the FR Sleeve routinely break then seep through the inexpensive, porous outer cover of the mattress and release into the surrounding environment causing skin and eye irritation, breathing issues, and/or property damage ("The Defects").

4.     All the Affected Mattresses contain a removable outer cover ("Outer Cover") equipped with a zipper and inadequate warning labels. Once the Outer Cover is unzipped and removed, the defective FR Sleeve is exposed which allows the glass fibers to then release into the surrounding environment potentially causing serious injuries and/or property damage.

5.     The Defects also include the FR Sleeve not meeting the Open Flame Resistance Standards over the life of the mattress and/or the time required by § 1633. The FR Sleeve made of glass fibers begins as a long continuous filament fiber. If the fibers do not break over the life of the mattress, the FR Sleeve complies with § 1633. However, the FR Sleeves' defective design cause the glass fibers to break overtime, in some cases within weeks, which means the Open Flame Resistance offered by the unbroken glass fiber is not present after the glass breaks. This results in the Affected Mattresses becoming noncompliant with § 1633.

6.     When the continuous fibers of the FR Sleeve break the Affected Mattresses pose a two serious safety issues: (1) the FR Sleeves lose their fire-retardant capabilities required by 16 C.F.R. § 1633 because the fibers are no longer continuous; and (2) the broken fibers easily disperse from the FR Sleeves into the surrounding environment causing personal injuries and/or property damage.

7.     **On average, FR Sleeves not containing glass cost about five dollars more than the FR Sleeves containing glass fibers.** Upon information and belief, Zinus chooses not to pay this extra cost to save money while knowing its current Affected Mattresses and/or glass-containing FR Sleeves are defective.

8.     Zinus provides on its website a ten-year "Worry Free" Limited Warranty (the "Warranty") for the Affected Mattresses which expressly provides "Zinus warrants your mattress against defects in workmanship and materials."[2] The Warranty also expressly provides "[e]xcept for the specific limitations contained herein, your mattress will be replaced or you will receive a prorated refund, at our option, should your mattress be found defective because of faulty workmanship or structural defects."[3] Additionally, Zinus also provides an express warranty on a mattress tag attached to the Affected Mattresses that affirms the mattresses meet the requirements of § 1633.

**B. News Reports Concerning the Affected Mattresses Releasing Fiberglass**

9.     The Affected Mattresses are sold in retail stores throughout the United States. News outlets from across the United States have reported on how the Affected Mattresses have released dangerous glass fibers into the environment injuring adults, children, and causing thousands of dollars of property damage.

10.     In 2017, CBS 5 News in Arizona ("CBS 5") reported on an Affected Mattress releasing significant amounts of glass fibers into a home causing extensive property damage, health problems for children living in the home, and forcing the family living in the home to vacate it because of the glass fiber contamination.[4] Homeowner Nikki McKee reported to CBS 5 that a Spa Sensations memory foam mattress with a removable Outer Cover made by Zinus released glass fibers into her home causing her children to experience skin irritation and respiratory issues.[5]

---

[2] Zinus Warranty Policy, https://support.zinus.com/hc/en-us/articles/115003807631-Zinus-Warranty-Policy (last visited on November 9, 2020).
[3] *Id.*
[4] *Family forced to leave home over fiberglass mattress cover*, azfamily powered by 3TV and CBS5AZ (June 15, 2017), https://www.youtube.com/watch?v=jO3Pq6qFj_s (last visited September 23, 2020).
[5] *Id.*

11.     In February 2020, News 4 in San Antonio, Texas ("News 4") reported on how Plaintiff Brittney Rodriguez followed the "cleaning instructions for her mattress cover" which then caused her Affected Mattress, a Spa Sensations mattress made by Zinus, to release extremely large amounts of glass fibers into her home causing extensive property damage and health issues for her and her children.[6]

12.     On February 14, 2020, a television news story entitled "Hidden Hazards" aired on KMOV4 in St. Louis, Missouri documenting "the danger lurking in your mattress."[7] This featured news story outlined the tragic events Plaintiffs Amanda Chandler and Robert Durham experienced when their child's Affected Mattress released extremely large amounts of dangerous glass fibers which then caused serious injuries to their family of five and "destroy[ed] thousands of dollars of stuff and [their] whole life." *Id.*  Due to the serious risks associated with the glass fiber contamination, if forced this family of five from their home for months.

## C. Consumer Complaints to the Consumer Product Safety Commission

13.     Several consumers submitted complaints with the Consumer Product Safety Commission ("CPSC") regarding Affected Mattresses allegedly leaking glass fibers.

14.     On June 17, 2015, a consumer submitted a complaint with the CPSC concerning a Zinus Spa Sensations mattress.[8]

---

[6] Darian Trotter, *'I just don't know what to do.' Why it'll cost $4300 to clean her home*, NEWS4SA (February 18, 2020),  https://news4sanantonio.com/news/local/i-just-dont-know-what-to-do-why-itll-cost-4300-to-clean-her-home-02-19-2020 (last visited on May 15, 2020).

[7] Lauren Trager, *News 4 Investigates: The danger lurking in your mattress,* KMOV News 4 (February 14, 2020), https://www.kmov.com/news/news-investigates-the-danger-lurking-in-your-mattress/article_2bb77cc2-4eb7-11ea-b4c6-0319ba20d45f.html (last visited on May 15, 2020).

[8] Consumer Product Safety Commission, *Incident Report Details*, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1491420 (last visited October 28, 2020).

15.     The report summary indicates that "A 53 YOM, a 52 YOF & their 9 year old daughter experienced itching on their body & also suffered respiratory issues. The mesh that covered the mattress cover was coming apart. She found that fire retardant layer around the foam was causing the itching on their body."[9]

16.     Like Plaintiff Brittney Rodriguez's Affected Mattress, Zinus allegedly equipped this consumer's Affected Mattress with a tag which instructed the user to clean the Outer Cover by placing it in a washing machine then dry it on a gentle air cycle.[10]

17.     Like Plaintiff Brittney Rodriguez's Affected Mattress, Zinus allegedly equipped this consumer's Affected Mattress with a tag which instructed the user to clean the FR Sleeve by using a damp cloth and soap.[11]

18.     On December 10, 2016, a consumer submitted a complaint with the CPSC concerning a Zinus Spa Sensations mattress.[12]

19.     The report summary indicates that a consumer reported that two Affected Mattresses shed glass fibers from the FR Sleeve contaminating their home and causing health issues for their minor children.

20.     On December 16, 2016, a consumer submitted a complaint with the CPSC concerning a Zinus Spa Sensations mattress.[13]

21.     The report summary indicates that a consumer reported her and her husband had been itching for over a year due "to the glass fiber inner shell on their memory foam mattress that they discovered was torn and penetrated through their brand new sheets."[14]

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Consumer Product Safety Commission, *Incident Report Details*, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1491420 (last visited October 28, 2020).
[14] *Id.*

**D. Amazon Reviews Reporting Affected Mattresses Releasing Fiberglass**

22.     Zinus sells its Green Tea 12-Inch Memory Foam Mattress ("Green Tea Mattress") on Amazon.com.[15] This model is an Affected Mattress that releases glass fibers which can cause injuries, property damage, and/or cause the mattress to lose its Open Flame Standard. To date, this model has over 60,000 ratings on Amazon which range from one star to five-star ratings.[16] As of September 23, 2020, the top featured Amazon review for this Affected Mattress is from December 25, 2018 and entitled "DO NOT UNZIP MATTRESS COVER!!!!" and Amazon reports "8,900 people found this [review] helpful."[17] The "Verified Purchase[r]" who authored the review includes in the review that he "**called Zinus and they told me 'yes we are aware and that's why it says not to remove the cover.' Then why did you put a zipper on it!?!?!?'"**[18] The review also states that "[w]e hired Servpro to help filter out all of the fiber glass particles in the air."[19]

23.     Dozens of other verified Amazon purchasers gave Zinus' Green Tea Mattress a one-star rating ("Review") because the mattress released large amounts of glass fibers causing serious injuries and/or extensive property damage.[20]

24.     A verified purchaser authored a Review on November 26, 2017 and it states, in part, "**Today I took the outer, zippered cover off to wash (as it says you can).** A few minutes later, my forearms were itching and burned when I rubbed them. So I googled and

---

[15] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress*, https://www.amazon.com/Zinus-Memory-Green-Mattress-Queen/dp/B00Q7EPSHI (last visited May 17, 2020).
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* (emphasis added).
[20] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress*.

turns out, the INNER cover is made of fiberglass. There are tiny shards of this stuff everywhere. I'm so upset . . ..”[21]

25.    A verified purchaser authored a Review on December 22, 2017 and it states, in part:

“I decided To take the cover off to possibly wash it.. BAD IDEA!!!!! The layer underneath the cover (which can't be washed and should NOT be taken off) is FIBERGLASS!!! Says right on the tag!!??? In a bed??? **Sorry but I do not think that can be healthy to be breathing in every night! I will not sleep on the bed, amazon was great with my refund.**”[22]

26.    A verified purchaser authored a Review on September 12, 2018 and it states, in part:

I've only had the mattress for a year now and I started to notice that my clothes and sheets were making me really itchy. I wasn't sure what the problem was for a couple of months and thought it had something to do with my detergent options. But after plenty of research and investigation, **I noticed the tiny shiny shards of fiber glass on my sheets.** Then I Inspected the mattresses outer covering and it had fiberglass all over it! Now I have to decontaminate all of my clothing and furniture in my home!”[23]

27.    A verified purchaser authored a Review on October 22, 2018 and it states:

This mattress has fiberglass and I had a really bad experience with it. I removed the cover to wash it and now its everywhere, in every single cloth in the house and it itches like crazy. **I have to throw out the bed, bedsheet, pillows and all of my cloths. It is a really bad experience.**[24]

28.    A verified purchaser authored a Review on February 14, 2019 and it states, in part:

Caution: This product is made of glass fibers! I did not know that until I saw the glass fibers in my bedroom! This should have been advertised, but I could not find it anywhere. **I would not have purchased it if I knew I would be sleeping on fiberglass.**[25]

---

[21] *Id.* (emphasis added).; *See* Exhibit A.
[22] *Id.* (emphasis added).; *See Id.*
[23] *Id.* (emphasis added).; *See Id.*
[24] *Id.* (emphasis added).; *See Id.*
[25] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit A.

29.     A verified purchaser authored a Review on February 21, 2019 and it states, in part,

"I see multiple reports that the mattress is sheathed in fiberglass under the protective cover

**(which comes with a zipper- implying it's removable when clearly it's not if there's**

**fiberglass underneath).**"[26]

30.     A verified purchaser authored a Review on March 18, 2019 and it states:

> DO NOT TAKE THE COVER OFF THIS MATTRESS. There is fiberglass
> in this mattress. I made the mistake of taking the cover off to wash it and
> the fiberglass got in all our clothes and linens and won't come out. **It is**
> **costing me hundreds of dollars to replace clothes and linens. A**
> **nightmare!!!**[27]

31.     A verified purchaser authored a Review on April 27, 2019 and it states:

> PLEASE STAY AWAY FROM THIS MATTRESS! There is
> FIBERGLASS UNDERNEATH THE COVER WHICH IS
> CENTAMETERS FROM YOUR FACE ! **There is FIBER GLASS ON**
> **MY CLOTHES,ON MY SKIN & ON MY BABY'S CRIB! You don't**
> **even have to open the cover after a while it start protruding**
> **through!**WHAT A MESS . I Don't EVEN KNOW WHERE TO START
> [sad face emoji]."[28]

32.     A verified purchaser authored a Review on May 19, 2019 and it states, in part:

> Bought this 2 years ago, my husbands asthma started acting up. We thought
> it was because of the condo we moved into the same time we bought the
> mattress . . . **Had I known there was fiberglass in the mattress**
> **beforehand, I wouldn't have purchased this. I know it's there to make**
> **the mattress flame retardant but I'd rather my bed burst into flames**
> **than have fiberglass lining it.**[29]

33.     A verified purchaser authored a Review on May 30, 2019 and it states, in part:

> I've been a Prime member for a long time and have never received a product
> that I felt a real need to write a negative review for UNTIL I received this
> Zinus mattress. Long story short: **this mattress shreds fiberglass**
> **THROUGH THE COVER (you don't have to remove the cover for this**

---

[26] *Id.* (emphasis added).; *See Id.*
[27] *Id.* (emphasis added).; *See Id.*
[28] *Id.* (emphasis added).; *See Id.*
[29] *Id.* (emphasis added).; *See Id.*

**to happen). It's a health risk and should be recalled and banned from being sold in the US!**[30]

34.     A verified purchaser authored a Review on June 6, 2019 and it states, in part:

> I had to wash the cover when my dog decided to throw up on my bed and I couldn't spot clean it. The cover looked horible [sic] after handwashing it (rips and pills everywhere, and **after I put it back on I started finding shiny fibers on every surface in my room (billions, not just a few here and there)**.[31]

35.     A verified purchaser authored a Review on August 20, 2019 and it states, in part,

"after reading the TAG sewed on the mattress I realized it was 61% GLASS FIBERS!

**Seriously sleeping on fiber glass!! NOT Me!** Their description made the bed sound

"Healthy"..Sent them back and they don't want to give me a full refund for New Mattresses

shipped back as they requested."[32]

36.     A verified purchaser authored a Review entitled "A pin hole is enough to destroy

your life" on August 21, 2019 and it states, in part:

> That's when I noticed my sheets were sparkling. Whelp – lucky me. The second mattress had a very small hole in the cover. Maybe it was there when I bought it, maybe I nicked it taking it out of the package, I dunno. Doesn't really matter. **Because of that tiny hole the mattress has somehow managed to eject a TON of glass fibers. This is why I feel compelled to review. Yes the cover says don't remove but I did not remove anything.**[33]

37.     A verified purchaser authored a Review on September 19, 2019 and it states, in

part, "**The very thin cover ended up ripping apart exposing the fiber glass. This is very**

**dangerous and creates permanent damage in your lungs and gets everywhere.**"[34]

38.     A verified purchaser authored a Review on December 4, 2019 and it states, in part:

---

[30] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit A.
[31] *Id.* (emphasis added).; *See Id.*
[32] *Id.* (emphasis added).; *See Id.*
[33] *Id.* (emphasis added).; *See Id.*
[34] *Id.* (emphasis added).; *See Id.*

This WOULD be the perfect mattress! Except for the fact that it has FIBERGLASS as the fire resistant under-cover. I am extremely disappointed that this is even a thing that's allowed. **It is extremely dangerous for your health, and after some time of being used, the fiberglass will slowly make it's way out of the top cover getting all over your sheets, house, and you!**[35]

39. A verified purchaser authored a Review on December 29, 2019 and it states, in part, "**This mattress is encased in fiberglass fabric underneath the outermost cover. The outer cover is flimsy and does not do a good job of keeping the harmful fiberglass filaments contained, even when fully intact.**"[36]

40. A verified purchaser authored a Review on February 3, 2020 and it states, in part: "Please be aware and pay heed to all one star reviews posted here. **The fiber glass is real thing which you will never be aware of until and unless you beam a flashlight on mattress** surface area which are subjected to STRESS."[37]

41. A verified purchaser authored a Review on March 16, 2020 and it states, in part:

About three weeks ago I started being bothered by **intense itching on my shoulders and trunk, with welts appearing wherever I scratched. It took me a couple of weeks to figure out that what I felt were sharp, tiny, fiberglass-like filaments that took almost two months to work their way through the cover, mattress pad and sheets**.[38]

42. A verified purchaser authored a Review on April 18, 2020 and it states, in part:

**Mattress is comfortable for the price but no where does the packaging or product listing include a warning that if you remove the mattress covering, you will contaminate you're [sic] Room and possibly entire house with fiberglass**. . . Zinus may say not to take mattress cover off but it literally has a zipper as if your [sic] able to take off and clean like a normal person would assume yet to only find out this is exactly not what your [sic] sup[posed to do. **HEY ZINUS, TAKE THE ZIPPER OFF!**[39]

---

[35] Amazon, *Zinus Green Tea 12-Inch Memory Foam Mattress* (emphasis added); *See* Exhibit A.
[36] *Id.* (emphasis added).; *See Id.*
[37] *Id.* (emphasis added).; *See Id.*
[38] *Id.* (emphasis added).; *See Id.*
[39] *Id.* (emphasis added).; *See Id.*

43.    Given Plaintiffs' experiences with the Affected Mattresses which spread across twenty (23) States and the District of Columbia, combined with the CPSC complaints and Amazon reviews, Plaintiffs therefore bring this action on behalf of the following classes: (1) a proposed nationwide class of consumers who purchased the Affected Mattresses;  (2) a proposed nationwide class of adults injured by glass fibers from the Affected Mattresses; (3) a proposed nationwide class of minors injured by glass fibers from the Affected Mattresses; (4) a proposed nationwide class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (5) a proposed nationwide class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses.

44.    Alternatively, in the event the Court does not certify any of above five classes for nationwide treatment, Plaintiffs bring this action on behalf of the following statewide classes from Arizona, Arkansas, California, Colorado, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Washington, and Wyoming. (1) a proposed statewide class of consumers who purchased the Affected Mattresses; (2) a proposed statewide class of adults injured by glass fibers from the Affected Mattresses; (3) a proposed statewide class of minors injured by glass fibers from the Affected Mattresses; (4) a proposed statewide class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (5) proposed statewide class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses.

## PARTIES

45.     Plaintiffs Amanda Chandler ("Chandler"), Robert Durham ("Durham") are adult citizens; <u>D.D., B.D., and J.F. are minors,</u> and all are residents of Collinsville, Illinois.

46.     Plaintiff Allen Branch ("Branch) is an adult citizen and resident of Centralia, Illinois.

47.     Plaintiffs Brandi and Wesley Kretzer ("Kretzers") are adult citizens and residents of Centralia, Illinois.

48.     <u>Harley Seggerman is an adult citizen; R.A. and J.A. are minors; all are residents of Humble, Texas.</u>

49.     <u>Plaintiff David Aguilar is an adult and resident of Federal Way, Washington.</u>

50.     <u>Plaintiffs Erlinda Aguilar and Eddie Campoy are adult citizens; A.A., R.A.H., D.A. and Y.C. are minors, and all are residents of Guadaloupe, Arizona.</u>

51.     <u>Plaintiff Kristel Baffa ("Baffa") is an adult citizen; A.B. and E.B are minors, and all are residents of O'Fallon, Illinois.</u>

52.     <u>Plaintiff Ryan Bellotti is an adult citizen and resident of Globe, Arizona.</u>

53.     <u>Plaintiff Chelsea Birnell ("Birnell") is an adult citizen and resident of Lafayette, Indiana.</u>

54.     <u>Plaintiff Talia Blaylock ("Blaylock") is an adult citizen and resident of Fairview Heights, Illinois.</u>

55.     <u>Plaintiff A.J. Cincotta-Eichenfield ("Cincotta-Eichenfield") is an adult citizen and resident of New York, New York.</u>

56.     <u>Plaintiff Aaron Cole ("Cole") is an adult citizen and resident of Tampa, Florida.</u>

57. Plaintiff Uquallia Coleman ("Coleman") is an adult citizen and resident of Omaha, Nebraska.

58. Plaintiff Pamela Colyott ("Colyott") is an adult citizen and resident of Moscow Mill, Missouri.

59. Plaintiff Melissa Concepcion ("Concepcion") is an adult citizen; A.C., M.C., MA.C., and N.C. are minors, and all are residents of Sauk Center, Minnesota.

60. Plaintiffs Nicole and Peter Cookinham ("Cookinhams") are adult citizens and residents of Lowell, Massachusetts.

61. Plaintiff Cody Coon ("Coon") is an adult citizen, B.M. is a minor, and both are residents of Tilton, Illinois.

62. Plaintiffs Alina and Tim Cubow ("Cubows") are adult citizens; A.C. is a minor, and all are residents of Ravenel, South Carolina.

63. Plaintiffs Steven and Kayla Curtis ("Curtis Family") are adult citizens; C.C. and L.C. are minors, and all are residents of Evansville, Indiana.

64. Plaintiffs Matthew Davis and Shaunticia Davis ("Davis") are adult citizens; R.D., Me.D., Ma.D. are minors, and all are residents of Davenport, Iowa.

65. Plaintiffs David Duron and Unique Maciel are adult citizens and residents of Kern, California.

66. Plaintiff Jennifer Evans is an adult citizen and resident of Lititz, Pennsylvania.

67. Plaintiff Tucker Evans and Gabrielle Kuster are adult citizens and residents of Lititz, Pennsylvania.

68. Plaintiff Edward Fretheim is an adult citizen and resident of Garland, Texas.

69.     Plaintiffs Derrick Fudge, Natalia Serebriannikova, and Yana Ndingan are adult citizens; E.N. and R.N. are minors; all are residents of Arlington, Texas.

70.     Plaintiff Juan Gaona, Jr. is an adult citizen and resident of Porterville, California.

71.     Plaintiff Jeffery Gobel is an adult citizen and resident of Dwale, Kentucky.

72.     Plaintiffs Salina Golden and Alan Sistad are adult citizens; T.G., S.G., M.G., J.S., S.S., M.S., and Ma.S are minors; and all are residents of Barnesville, Minnesota.

73.     Plaintiff Alexis Gonzales is an adult citizen and resident of Watsonville, California.

74.     Plaintiffs Joseph Goldsmith, Jennifer Goldsmith and Casey Goldsmith are adult citizens and residents of Veneta, Oregon.

75.     Plaintiffs Chad Goodson and Ginny Goodson are adult citizens; B.G. is a minor, and all are residents of Oklahoma City, Oklahoma.

76.     Plaintiff Patrick Green is an adult citizen and resident of Washington, DC.

77.     Plaintiff Vanessa Gutierrez ("Gutierrez") is an adult citizen; AL.D and AN.D. are minors, and all are resident of Sacramento, California.

78.     Plaintiff Ryan Hasara is an adult citizen and resident of Saddleback Valley, Utah.

79.     Plaintiff Terry Hayden is an adult citizen and resident of Mount Carmel, Illinois.

80.     Plaintiffs Timothy Hepler, Leza Hepler, Kamren Hepler are adult citizens; K.H. is a minor; all are residents of Selinsgrove, Pennsylvania.

81.     Plaintiff Marie Hicks ("Hicks") is an adult citizen and resident of Boulder, Colorado.

82.     Plaintiff Jonathan Anh Hoang ("Hoang") is an adult citizen and resident of San Francisco, California.

83.     Plaintiffs Christina Hoover and Johnathan Hoover are adult citizens and residents of Columbia, Missouri.

84.     Plaintiffs Aimee Hudson, Jimmy Hudson and Storm Davies are adult citizens; J.H., G.M., E.H., and A.S. are minors; all are residents of Mer Rouge, Louisiana.

85.     Plaintiffs Christopher Johnson and Kristy Johnson are adult citizens and residents of Mound City, Illinois.

86.     Plaintiff Jacob Jones ("Jones") is an adult citizen and resident of Aptos, California.

87.     Plaintiffs Michael Jones and Paige Jones are adult citizens; L.J. is a minor; all are residents of Huntington Beach, California.

88.     Plaintiff Lester Jordan ("Jordan") is an adult citizen and resident of Cisne, Illinois. Angela Odell was his wife and is deceased.

89.     Plaintiffs Bakytzhan Kallemov and Gulnar Kallemova are adult citizens, L.K. and E.K. are minors; all are residents of Fairfield, California.

90.     Plaintiff Mark Lambarena ("Lambarena") is an adult citizen; M.L. is a minor; both are residents of Porterville, California.

91.     Plaintiffs Maiko Lunn and Shayan Askari are adult citizens and are residents of Ann Arbor, Michigan.

92.     Plaintiffs Amie Maddox and Robert Maddox ("Maddox") are adult citizens and residents of Carrabelle, Florida.

93.     Plaintiff Tinamarie Maldonado is an adult citizen and resident of Rockford, Illinois.

94.     Plaintiffs Jason McCarron, Jr. and Cheyenne Mitchell are adult citizens; J.M. is a minor; all are residents of Middletown, Ohio.

95.     Plaintiffs Trevor McClain and Haleigh McClain ("McClain's") are adult citizens; K.M. is a minor; all are residents of Blountville, Tennessee.

96.     Plaintiffs Jacob McDowell and Samantha Ziegler ("McDowell's") are adult citizens; H.M. is a minor; all are residents of Hillsborough, Missouri.

97.     Plaintiffs Quentin Miyamoto and Tawny Miyamoto ("Miyamot's") are adult citizens and residents of Molokai, Hawaii.

98.     Plaintiffs Jeremy Miller and Marianna Miller ("J.Miller's") are adult citizens and residents of Gillette, Wyoming.

99.     Plaintiffs Leonard Miller and Theresa Miller ("L.Miller's") are adult citizens and residents of Gillette, Wyoming.

100.    Plaintiffs Ashley Mills is an adult citizen and resident of Kingwood, Texas.

101.    Plaintiff Erica D. Moore ("Moore") is an adult citizen and resident of Tallahassee, Florida.

102.    Plaintiff David Morse ("Morse") is an adult citizen and resident of Celoron, New York.

103.    Plaintiff Douglas Noblitt ("Noblitt") is an adult citizen and resident of Los Lunas, New Mexico.

104.    Plaintiff John Orrlitt ("Orlitt") is an adult citizen and resident of Baton Rouge, Louisiana.

105.    Plaintiff Matthew Porter and Aidan Coyle are adult citizens and residents of Seattle, Washington.

106.    Plaintiff Wilson Riendeau ("Riendeau") is an adult citizen and resident of Charlotte, North Carolina.

107.     Plaintiff Ryan Fitzroy Roberts ("Roberts") is an adult citizen and resident of Kansas City, Missouri.

108.     Plaintiffs Edward Rockenstyer and Jennifer Walsh are adult citizens; J.SA. and J.SI. are minors ("Rockenstyer-Walsh Family"); all are residents of Suwanee, Georgia.

109.     Plaintiff Maria Astolfo is an adult citizen and resident of San Antonio, Texas.

110.     Plaintiff Noah Astolfo is an adult citizen and resident of San Antonio, Texas.

111.     Plaintiff Brittney Rodriguez ("Rodriguez") is an adult citizen; Ch.R., Ca.R., Car.R., Cam.R. are minors; all are residents of San Antonio, Texas.

112.     Plaintiffs Mariah Roiz ("Roiz") and Ryan Boyett ("Boyett") are adult citizens; E.B., L.B., E.F. and J.B are minors; all are residents of San Diego, California.

113.     Plaintiff Tiara Sampson ("Sampson") is an adult citizen and resident of Tucson, Arizona.

114.     Romeo Nero ("Nero") is an adult citizen; A.N. and E.N. are minors; all are residents of Selma, Texas.

115.     Plaintiff Francis Santana ("Santana") is an adult citizen and resident of New York, New York.

116.     Plaintiff Jennifer Schmaltz ("Schmaltz") is an adult citizen and resident of Bismark, North Dakota.

117.     Plaintiffs Elker Sensibaugh and Jordan Sensibaugh ("Sensibaugh") are adult citizens; I.S. and L.S. are minors; all are residents of Portland, Oregon.

118.     Rickie Shelton ("Shelton") is an adult citizen and resident of Grand Rapids, Michigan.

119.     Plaintiff Timothy K. Spies ("Spies") is an adult citizen and resident of Salisbury, Maryland.

120.     Plaintiffs Brian Stammler and Brittany Salcieo are adult citizens, M.T.S. and A.R.S. ("Stammler/Salcieo family") are minors, all are residents of Folsom, California.

121.     Plaintiffs Robert Stevens, Ann Martinec, Louise Barkley; Asia Ausburn, Ryan Ausburn, Susan Money, and Steven McCallie ("Stevens/Martinec Family") are adult citizens and residents of Pinellas Park, Florida.

122.     Plaintiff Logan Summerhays ("Summerhays") is an adult citizen and resident of Walnut, California.

123.     Plaintiff Ronald Szeve ("Szeve") is an adult citizen, R.S. is a minor, both are residents of Mancelona, Michigan.

124.     Plaintiff Sarah Torella ("Torella") is an adult citizen and resident of Hillsboro, Oregon.

125.     Plaintiffs Abuzar Turab and Vanesa Quiroz-Yanez Turab are adult citizens; N.T. and I.T. are minors; and all are residents of Forest Park, Georgia.

126.     Plaintiffs Jesus Munoz and Dinora Verdugo Ledezma are adult citizens; G.V., LL, and S.L. are minors; and all are residents of Kent, Washington.

127.     Plaintiff Daniel Vidmar ("Vidmar") is an adult citizen and resident of Los Angeles, California.

128.     Plaintiff Brandon Wagner ("Wagner") is an adult citizen and resident of Alton, Illinois.

129.     Plaintiffs Garrett Williams and Lindsey Williams ("Williams") are adult citizens; E.W., M.W. and K.W. are minors; and all are residents of Bentonville, Arkansas.

130.    Plaintiff Jun Xiang ("Xiang") is an adult citizen and resident of Torrance, California.

131.    Zinus is a California corporation with its principal place of business in Tracy, California. Zinus is in the business of designing, testing, manufacturing, selling, and supporting the mattresses subject to this Complaint. Zinus does business nationwide.

## JURISDICTION AND VENUE

132.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs. Members of the proposed Classes are citizens of States different from Defendant; and Defendant is not a citizen of the State of Illinois. This Court also has jurisdiction to decide claims brought under 15 U.S.C. § 2301 (the Magnuson-Moss Act), 16 C.F.R. § 1633 (the Federal Flammability Standard for Mattresses and Mattress Pads), and 15 U.S.C. § 2064 (Substantial Product Hazards) by virtue of 28 U.S.C. § 1332(a)-(d), 28 U.S.C. § 1331, and has supplemental jurisdiction over the remaining claims.

133.    This Court has personal jurisdiction over Zinus because Zinus is registered to conduct business in Illinois and has sufficient minimum contacts in Illinois, or otherwise intentionally avails itself of the markets within Illinois through the promotion, sale, marketing and distribution of its mattresses, to render the exercise of jurisdiction by this Court proper. This Court also has personal jurisdiction over Zinus because Zinus failed to raise a personal jurisdiction defense in its initial motion to dismiss, thus waiving that defense. *See Griffin v. Medtronic, Inc.*, 17 CV 927, 2017 WL 4417821 (N.D. Ill. Oct. 5, 2017) ("[T]he request [for dismissal based on a lack of personal jurisdiction] is denied

because Medtronic did not make this argument in its motion to dismiss the original complaint. That motion was terminated as moot when Griffin filed the amended complaint . . ..").

134.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue is also proper in this District because Zinus failed to raise a venue defense in its initial responsive pleading, thus waiving that defense. Fed. R. Civ. P. 12(h)(1)(B)(ii).

## FACTUAL ALLEGATIONS

**A. Zinus Mattresses Containing Glass Fibers**

135.     This lawsuit concerns all Zinus mattresses containing FR Sleeves comprised of glass fibers – the Affected Mattresses.

136.     The Affected Mattresses are equipped with an inner cover FR Sleeve that contains significant amounts of glass fibers. (Exhibit B). The FR Sleeves comprised of glass fibers begin as a long continuous filament fiber. Though over time, the long filament fibers break causing the FR Sleeve to shred glass fibers. (Exhibit C). Once the continuous glass fiber filaments in the FR Sleeve break the Affected Mattresses do not meet the Open Flame Standards of § 1633.

137.     The glass fibers then seep through the inexpensive, porous Outer Cover into the surrounding environment. The glass fibers can also escape when users remove the Outer Cover by unzipping it. Many of the Affected Mattresses, including Spa Sensations models, instruct users to remove the Outer Cover to clean it and use soap and water to clean the inner FR Sleeve. (Exhibit H).

138.   Some Affected Mattresses instruct users "DO NOT REMOVE COVER," however, it is unclear whether "COVER" relates to the removable Outer Cover or Inner Cover FR Sleeve. (Exhibit I). Zinus equips the Outer Cover with a zipper inviting the user to remove it.[40] Each day in the United States, millions of individuals use zippers to open pants, jackets, coats, shoes, backpacks, luggage, mattress covers, etc. Given how widely people in our society use zippers, attaching one to an object invites opening that object.

139.   Additionally, the instruction "DO NOT REMOVE COVER" is wholly inadequate as a warning because it fails to inform the user of the risks associated with removing the Outer Cover, which include injuries and/or property damage.

140.   With some Outer Covers, Zinus equips the Outer Cover with a zipper but removed the zipper pull tab and stitched over the location of the slider body at the end of the closed zipper.

141.   These instructions and/or alterations, or lack thereof, expose the user and surrounding environment to dangerous glass fibers. Once in the environment, these glass fibers easily disperse through the air, and can travel throughout a home via HVAC systems, vents, doorways, windows, etc. The glass fibers attach to essentially anything they touch. This includes human skin, animals, HVAC systems, clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic.

142.   Exposure to glass fibers may cause eye, skin, and upper respiratory tract irritation. (Exhibit D). Glass fibers that reach the lower part of a person's lungs increases the chances of adverse health effects. Other possible health effects include:

---

[40] ThoughtCo., *The History of the Zipper*, https://www.thoughtco.com/history-of-the-zipper-4066245 ("Today the zipper is everywhere and is used in clothing, luggage, leather goods and countless other objects." (last visited on March 7, 2020).

- A rash can appear when the fibers become embedded in the outer layer of the skin. No long-term health effects should occur from touching fiberglass.
- Eyes may become red and irritated after exposure to fiberglass.
- Soreness in the nose and throat can result when fibers are inhaled. Asthma and bronchitis can be aggravated by exposure to fiberglass.
- Temporary stomach irritation may occur if fibers are swallowed.[41]

143.    The glass fibers can also cause significant property damage by attaching to essentially anything including HVAC systems, washer and dryers, clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic. Once the glass fibers are embedded into fabric like clothes, towels bedding, couches, it is virtually impossible to remove all the glass fibers which forces the owner to discard the contaminated item. (Exhibit E).

144.    The cost of cleaning a home exposed to glass fibers may cost thousands to possibly tens of thousands of dollars.[42] (Exhibit F). Experts recommend occupants vacate a home exposed to glass fibers until it is professionally cleaned.[43]

**B. Plaintiffs Experience with Affected Mattresses**

*Amanda Chandler and Robert Durham, D.D., B.D., and J.F.*

145.    Chandler and Durham jointly purchased their Affected Mattress instore at a Walmart in Illinois. The Affected Mattress contained a removable Outer Cover equipped with a zipper. A mattress tag which read in part "62% Glass Fibers" was attached to the outer cover ("Outer Mattress Tag").

146.    The Outer Mattress Tag failed to warn the user of the following: not to remove the removable outer cover; that removing the removable outer cover may expose the user to

---

[41] Illinois Department of Public Health, *Environmental Health Fact Sheet*,
http://www.idph.state.il.us/envhealth/factsheets/fiberglass.htm (Last visited May 18, 2020).
[42] The Report.
[43] *Id.*

glass fibers; that exposure to glass fibers may lead to serious injuries and/or property damage; that the removable Outer Cover was not washable; and, not to stand, sit, lay, or jump on the Affected Mattress after removing the removable Outer Cover.

147.     On January 27, 2020 Chandler unzipped the Outer Cover of the Affected Mattress, removed it, then laundered it in her newly purchased washing machine. While Chandler washed the Outer Cover, her two young sons jumped on the Affected Mattress which was in one of her son's bedrooms.

148.     Once Chandler finished washing the removable cover, she draped it over her couch for it to air dry underneath a ceiling fan. After the Outer Cover finished drying, Chandler zipped it back onto the Affected Mattress

149.     On January 28, 2020, Durham awoke to go to work and immediately noticed his skin was very irritated and extremely itchy. After arriving at work, Durham was in such pain and discomfort that he requested off. Durham remained off work until April 20, 2020.

150.     At some point on January 28, 2020, Durham discovered his whole body was covered with little, hard-to-see shards of glass. Later in the day, Chandler and Durham's children began to scream and cry hysterically because their whole bodies itched. Chandler noticed their children and Chandler's bodies were also covered with little, hard-to-see shards of glass.

151.     Chandler and Durham then began noticing their home was blanketed with the same hard-to-see, little shards of glass. Tiny shards of glass were embedded in all parts of their home, both inside and out, including in their clothes, bedding, towels, appliances, carpet, tile, walls, tools, electronics, and inside their cars.

152.    After some research, Chandler and Durham discovered the Affected Mattress was the source of the shards of glass, also known as glass fibers. Upon this discovery, Chandler immediately moved the Purchased Mattress from inside her home to the outdoors.

153.    Chandler, Durham, and their children were forced to move from their home due to the contamination.

154.    Chandler, Durham, and their children were forced to discard many furnishings and personal items due to the contamination.

155.    Chandler and Durham suffered economic damages.  They had to replace the contaminated personal items and furnishing, pay for temporary lodging, and cleaning costs.

*Plaintiff Allen Branch*

156.    Branch, who lives in Illinois, purchased his Affected Mattress online from Walmart.com in or around May 2019.

157.    About a month after his purchase, glass fibers began releasing from his Affected Mattress without Branch removing the Affected Mattress's Outer Cover.

158.    The glass fibers caused damage to Branch's property.

*Plaintiffs Brandi Kretzer and Wesley Kretzer*

159.    The Kretzers purchased their Affected Mattress online from Amazon.com in September 2019.

160.    Months after their purchase, glass fibers began releasing from their Affected Mattress without the Kretzers removing the Affected Mattress's Outer Cover.

161.    The Kretzers suffered physical injuries from the glass fibers.

*Plaintiffs Harley Seggerman, R.A. and J.A.("Seggermans")*

162.     The Seggerman Plaintiffs, who reside in Texas, purchased a Zinus Model #SPASTR800W mattress.

163.     The Seggerman Plaintiffs' Zinus mattress has a removable outer cover with a zipper.

164.     The Seggerman Plaintiffs, removed outer cover of their Zinus mattress with the easily accessible zipper to wash it.

165.     The Seggerman Plaintiffs, did not notice the glass fibers that were released into their washing machine and dryer until they washed clothing after washing the cover.

166.     The Seggerman Plaintiffs, then realized glass fibers had contaminated their home.

167.     Due to glass fiber contamination from the Affected Mattress, The Seggerman Plaintiffs,were forced to discard many personal items including but not limited to clothes and bedding then had to pay to replace those items or do without them.

*Plaintiff David Aguilar*

168.     In or around June 2020, Plaintiff David Aguilar, who is resident of Washington, purchased a Zinus Mattress.

169.     Plaintiff David Aguilar removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.

170.     Glass fibers from the Zinus mattress released causing him to suffer personal injuries and damage to his personal property.

171.     Plaintiff David Aguilar later discovered his Zinus mattress was the source of the glass fibers.

172.     As a result of the contamination, Plaintiff David Aguilar has suffered physical injuries and was forced to discard his personal property and then had to replace those items.

*Plaintiffs Erlinda Aguilar, Eddie Campoy, A.A., R.A.H., D.A. and Y.C. ("Aguilar-Campoy Family")*

173.   In or around September 2019, Plaintiffs Erlinda Aguilar and Eddie Campoy, who reside in Arizona, purchased a Zinus mattress.

174.   The Aguilar-Campoy family's Zinus mattress does not have a removable outer cover with a zipper.

175.   By the time the Aguilar-Campoy family discovered that glass fibers were seeping through the outer cover of their Zinus mattress, their home had become contaminated with the glass fibers.

176.   The Aguilar-Campoy family has suffered physical injuries caused by the glass fiber contamination from their affected mattress.

177.   Due to glass fiber contamination from the Affected Mattress, the Aguilar-Campoy family was forced to discard many personal items including appliances, clothes and bedding then had to pay to replace those items or do without them.

*Plaintiff Kristel Baffa, on behalf of herself and her children, A.B. and E.B.*

178.   On July 23, 2017, Plaintiff Kristel Baffa, who resides in Illinois, purchased a Zinus mattress for her son A.B.

179.   Sometime in early 2020, Baffa removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.

180.   Shortly thereafter, A.B. began telling his mom that there were bugs in his bed. Regrettably, Baffa thought her son made up the story.

181.   A couple weeks later, school personnel contacted Baffa to tell her that A.B. told his teacher his bed "exploded." Upon inspecting his mattress, Baffa discovered thousands of

glass fibers all over A.B.'s bedroom covering bedding, carpet, and most of A.B. and his brother E.B.'s clothes.

182.    Due to glass fiber contamination from the Affected Mattress, Baffa was forced to discard many personal items including her children's clothing, rugs, and bedding then had to replace those items.

*Plaintiff Ryan Bellotti*

183.    On or around October 24, 2019, Plaintiff Ryan Bellotti, who is resident of Arizona, purchased a Zinus Spa Sensations Memory Foam mattress.

184.    Plaintiff Ryan Bellotti removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.

185.    Glass fibers from the Zinus mattress released causing him to suffer personal injuries with symptoms of chest pain, breathing issues, coughing, rashes, skin abrasions, earaches, eye irritation, acid reflux, fatigue and depression.  Because he was unaware of the glass fiber contamination, Plaintiff Ryan Bellotti's symptoms lead him to believe he had Covid 19, but tested negative.

186.    The glass fibers also caused Ryan Bellotti's pets to suffer from symptom of itching, depression, hair loss, lack of appetite, rapid heart rate, breathing issues and panic attacks. These symptoms prompted Ryan Bellotti to take his pets to his veterinarian for exams, tests and medications.

187.    Plaintiff Ryan Bellotti discovered the glass fiber contamination on or around March 20, 2021.  He then realized the symptoms he and his pets had experienced for the past year and a half were caused by his Affected Zinus mattress.

188.     Plaintiff Ryan Bellotti decided to stay in a hotel with his pets while he cleaned his home and inspected his belongings.

189.     Despite repeated attempts to remove the glass fiber contamination, Ryan Bellotti had to discard and pay to replace much of his personal belongings.  Those items include but is not limited to clothing, bedding, towels, carpeting, and furniture

190.     The glass fiber contamination from Ryan Bellotti's Affected Zinus mattress has required he miss work and spend money on lodging, cleaning supplies and equipment.  He has also had out of pocket expenses for his pets' veterinary care.

*Plaintiff Chelsea Birnell*

191.     On or around March 3, 2017, Plaintiff Chelsea Birnell, who is resident of Lafayette, Indiana, purchased a Zinus 8-inch, Ultima Memory Foam Mattress/Pressure Relieving/CertiPUR-US Certified/Bed-in-a-Box, Queen.

192.     Birnell removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.

193.     Glass fibers from the Zinus mattress released causing her to suffer personal injuries and damage to her personal property.

194.     In or around December 2017 Birnell discovered her Zinus mattress was the source of the glass fibers.

195.     As a result of the contamination, Birnell has suffered physical injuries and was forced to discard her personal property and then had to replace those items.

*Plaintiff Talia Blaylock*

196.     On or around August 15, 2019, Plaintiff Talia Blaylock, who is resident of Fairview Heights, Illinois, purchased a Zinus Mattress.

197.   Blaylock removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.

198.   Glass fibers from the Zinus mattress released causing her to suffer personal injuries and damage to her personal property.

199.   She later discovered her Zinus mattress was the source of the glass fibers.

200.   As a result of the contamination, Blaylock has suffered physical injuries and was forced to discard her personal property and then had to replace those items.

*Plaintiff A.J. Cincotta-Eichenfield*

201.   In or around October 2016, Plaintiff A.J. Cincotta-Eichenfield, who is resident of New York, New York purchased a Zinus 12-inch, Green Tea, Memory Foam Mattress.

202.   Cincotta-Eichenfield removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.

203.   Glass fibers from the Zinus mattress released causing him to suffer personal injuries and damage to his personal property.

204.   Cincotta-Eichenfield later discovered his Zinus mattress was the source of the glass fibers.

205.   As a result of the contamination, Cincotta-Eichenfield has suffered physical injuries and was forced to discard his personal property and then had to replace those items.

*Plaintiff Aaron Cole*

206.   On or around November 25, 2019, Plaintiff Aaron Cole, who is resident of Florida, purchased a Zinus UT5321 Mattress.

207.   Cole did not remove the outer mattress cover to wash it.

208.   Glass fibers from the Zinus mattress released causing him to suffer physical injuries.

209.   He later discovered his Zinus mattress was the source of the glass fibers.

210.   As a result of the contamination, Cole has suffered personal injuries and was forced to discard his personal property and then had to replace those items.

*Plaintiff Uquallia Coleman*

211.   Plaintiff Uquallia Coleman, who is resident of Nebraska, received a Zinus Mattress as a gift.

212.   Plaintiff Coleman removed the Outer Cover by using the easily accessible zipper because it was torn.

213.   Glass fibers from the Zinus mattress were released.

214.   He discovered his Zinus mattress was the source of the glass fibers.

215.   As a result of the contamination, Coleman has suffered personal injuries and was forced to discard his personal property and then had to replace those items.

*Plaintiff Pamela Colyott*

216.   On or around November 1, 2019, Plaintiff Pamela Colyott, who is resident of Missouri, purchased a Zinus #30 Green Tea Mattress.

217.   Colyott removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.

218.   Glass fibers from the Zinus mattress released causing her to suffer physical injuries and damage to her personal property.

219.   She later discovered her Zinus mattress was the source of the glass fibers.

220. <u>As a result of the contamination, Colyott has suffered personal injuries and was forced to discard her personal property and then had to replace those items.</u>

*Plaintiff Melissa Concepcion, on behalf of herself and her children, A.C., M.C., MA.C., and N.C., minors*

221. <u>On October 23, 2020, Plaintiff Melissa Concepcion, who resides in Minnesota, purchased a Zinus twin-size, 8-inch, memory foam mattress.</u>

222. <u>Concepcion's husband removed the Affected Mattress's Outer Cover to wash it by unzipping the easily accessible zipper.</u>

223. <u>Shortly thereafter Concepcion's son woke in the middle of the night crying because his face was burning.</u>

224. <u>Concepcion then noticed the glass fibers on her son's clothes and bed sheets and inspected the Zinus mattress.</u>

225. <u>Concepcion discovered the Zinus mattress was the source of the glass fibers.</u>

226. <u>Due to glass fiber contamination from the Affected Mattress, Ms. Concepcion was forced to discard many personal items including her children's clothing, rugs, and bedding then had to replace those items.</u>

*Plaintiffs Nicole and Peter Cookinham*

227. <u>On November 13, 2017, Plaintiffs Nicole and Peter Cookinham, who reside in Massachusetts, purchased a Zinus Green Tea mattress from Amazon.com.</u>

228. <u>Mrs. Cookinham removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper. After washing it and letting it air dry, she placed it back on their Affected Mattress.</u>

229.    Over the next several months, both Mr. and Mrs. Cookinham experienced breathing problems, skin rashes, and an embedded glass fiber that caused an infection for unknown reasons.

230.    In or around July 2020, Mr. and Mrs. Cookinham discovered glass fibers all over their apartment and that the Affected Mattress source of the glass fibers.

231.    As a result of the contamination, Mr. and Mrs. Cookinham were forced to discard their personal property and then had to replace those items.

*Plaintiff Cody Coon, on behalf of himself and his minor child, B.M.*

232.    In or around May 2019, Plaintiff Cody Coon, who resides in Illinois, purchased a Zinus Green Tea 10-inch queen mattress.

233.    Cody Coon has not removed the mattress cover.

234.    Glass fibers from the Zinus mattress released causing Cody Coon and his minor child B.M. to suffer damage to their personal property.

235.    Cody Coon and his minor child B.M. later discovered that the Zinus mattress was the source of the glass fiber contamination.

236.    As a result of the contamination, Cody Coon and his minor child B.M. were forced to discard their personal property and pay to replace them.

*Plaintiffs Alina Cubow and Joseph Cubow, on behalf of themselves and their child, A.C.*

237.    On September 27, 2017, Plaintiffs Alina and Joseph Cubow, who reside in South Carolina, purchased a Zinus Green Tea mattress from Amazon.com.

238.    Several months after purchasing their Affected Mattress their dog tore a hole in the mattress. Mrs. Cubow patched the hole by putting pieces of the mattress back into it. Once patched, the Cubows and their newborn child, A.C., began sleeping on the mattress.

239.    In or around mid-2018, Mr. Cubow purchased a replacement Green Tea mattress from Amazon.com. After receiving their replacement Affected Mattress, the Cubows kept their original Affected Mattress with the hole in a separate room.

240.    Over the next year, the Cubows experienced bouts of itchiness while in their home but did not know the cause.

241.    Sometime in late-2018, the Cubows disposed of their original Affected Mattress when they moved into their new home.

242.    During this time, A.C. experienced terrible skin rashes, dermatitis, and eczema requiring Mrs. Cubow to take A.C. to a dermatologist. The dermatologist recommended Mrs. Cubow wash A.C.'s bedding to help alleviate A.C.'s skin issues.

243.    Mrs. Cubow began washing the Affected Mattress's Outer Cover on a regular basis. To remove the Outer Cover, Mrs. Cubow unzipped it by inserting her finger at the end of the zipper then gently pulled.

244.    For the next two years, the Cubows experienced extreme bouts of skin irritation prompting Mrs. Cubow in August 2020 to research if her Affected Mattress was the cause. Upon discovering their Affected Mattress was leaking glass fibers, the Cubows immediately stopped sleeping on their mattress and were forced to purchase a new one.

245.    Glass fiber contamination also forced the Cubows to discard their bedding furniture, clothing, and replaced their carpet with new flooring.

*Plaintiffs Steven Curtis, Kayla Curtis, C.C. and L.C.*

246.    In or around 2016 plaintiffs Steven Curtis and Kayla Curtis, who are residents of Indiana, purchased a Zinus mattress.

247.  Plaintiffs C.C. and L.C. were jumping and playing on the mattress.  The activity caused the zipper to unzip and glass fibers were disbursed throughout the Curtis Family home.

248.  The glass fibers damaged the Curtis Family's personal property and cause physical injuries.

249.  As a result of the glass fiber contamination, the Curtis Family was forced to discard their personal property and pay to replace it.

*Plaintiffs Shaunticia Davis, Matthew Davis, R.D., Ma.D., and Me.D,*

250.  Shaunticia Davis and Matthew Davis, who are residents of Iowa, purchased a Zinus model number OLC-FMS 1000 mattress.

251.  Shanticia Davis and Matthew Davis removed the outer mattress cover.

252.  Glass fibers from the Zinus mattresses released causing Plaintiffs Shaunticia Davis, Matthew Davis, R.D., Ma.D., Me.D, to suffer personal injuries and damage to their personal property.

253.  The Davis' later discovered that the Zinus mattress was the source of the glass fiber contamination.

254.  As a result of the contamination, the Davis' were forced to discard their personal property and pay to replace it.

*Plaintiffs David Duron and Unique Maciel*

255.  David Duron and Unique Maciel, who are residents of California, were given a Zinus mattress as a gift.

256.  David Duron and Unique Maciel removed the outer mattress cover of their Affected Zinus mattress.

257.    Glass fibers from the Zinus mattresses released causing Plaintiffs David Duron and Unique Maciel, to suffer personal injuries and damage to their personal property.

258.    David Duron and Unique Maciel later discovered that the Zinus mattress was the source of the glass fiber contamination.

259.    As a result of the contamination, the David Duron and Unique Maciel were forced to discard their personal property and pay to replace it.

*Plaintiffs Jennifer Evans, Tucker Evans, and Gabrielle Kuster*

260.    Plaintiff Jennifer Evans purchased a Zinus Ultima mattress on August 28, 2018 for her son, Plaintiff Tucker Evans; both reside in Pennsylvania. From September 2018 until August 2020, Mr. Evans and his girlfriend, Plaintiff Gabrielle Kuster, slept on the Affected Mattress.

261.    Throughout 2019 until August 2020, Evans and Kuster experienced health issues including chest pain, respiratory issues, sinus infections, and skin irritation.

262.    In early August 2020, Kuster removed the Affected Mattress's Outer Cover by easily unzipping it. While removing the Outer Cover, Kuster discovered the Outer Cover had deteriorated causing glass fibers to seep through it. After removing the Outer Cover, she washed it.

263.    While she washed the Outer Cover, Kuster and Evans realized the Affected Mattress was shedding glass fibers and contaminating their entire bedroom. Upon further inspection, Evans realized the FR Sleeve had broken apart.

264.    As a result of the contamination, Evans and Kuster were forced to discard their personal property including the Affected Mattress, all their bedding, and most of their clothes and pay to replace them.

*Plaintiff Edward Fretheim*

265.   On or around December 17, 2017, Plaintiff Edward Fretheim, who is a resident of Texas, purchased a Zinus 12-inch, Green Tea Mattress.

266.   Fretheim removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

267.   Glass fibers from the Zinus mattresses released causing Fretheim to suffer personal injuries and damage to his personal property.

268.   Fretheim later discovered that the Zinus mattress was the source of the glass fiber contamination.

269.   As a result of the contamination, Fretheim was forced to discard his personal property and pay for replacements.

*Plaintiffs Derrick Fudge, Natalia Serebriannikova, Yana Ndingan, E.N. and R.N. ("Fudge Family")*

270.   On or around November 18, 2016 the Fudge Family Plaintiffs, who are residents of Texas, purchased a Zinus Queen-size mattress and two Zinus King-size mattresses.

271.   The Fudge Family Plaintiffs removed the outer covers of all three Affected Zinus Mattresses by unzipping the easily accessible zippers.

272.   Glass fibers were released from the Zinus mattresses and caused the Fudge Family Plaintiffs to suffer personal injuries.

273.   The glass fibers also damaged much of the Fudge Family Plaintiffs' personal property.

274.   As a result of the glass fiber contamination, the Fudge Family Plaintiffs were forced to discard their personal property and pay to replace it.

*Plaintiff Juan Gaona, Jr.*

275.   On or around May 20, 2019, Plaintiff Juan Gaona, Jr., who is a resident of California, purchased a Zinus Spa Sensations Mattress.

276.   Gaona, Jr. removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

277.   Glass fibers from the Zinus mattresses released causing Gaona, Jr. to suffer personal injuries and damage to his personal property.

278.   Gaona, Jr. later discovered that the Zinus mattress was the source of the glass fiber contamination.

279.   As a result of the contamination, Gaona, Jr. was forced to discard his personal property and pay to replace them.

*Plaintiff Jeffery Gobel*

280.   In or around February 2020, Plaintiff Jeffery Gobel, who is a resident of Kentucky, purchased a Zinus bed-in-a-box mattress.

281.   Jeffery Gobel's outer mattress cover was damaged by his dogs.

282.   Glass fibers from the Zinus mattresses released causing Jeffery Gobel to suffer personal injuries and damage to his personal property.

283.   Jeffery Gobel later discovered that the Zinus mattress was the source of the glass fiber contamination.

284.   As a result of the contamination, Jeffery Gobel was forced to discard his personal property and pay to replace them.

*Plaintiffs Selena Golden and Alan Sistad, T.G., S.G., M.G., J.S., S.S., M.S., and Ma.S., minors ("The Golden-Sistad Family")*

285.  In or around December 2019, the Golden-Sistad Family Plaintiffs, who are residents of Minnesota, purchased a Zinus mattress.

286.  The Golden-Sistad Family removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

287.  Glass fibers from the Zinus mattresses released causing the Golden-Sistad Family to suffer personal injuries and damage to their personal property.

288.  The Golden-Sistad Family later discovered that the Zinus mattress was the source of the glass fiber contamination.

289.  As a result of the contamination, the Golden-Sistad Family. were forced to discard their personal property and pay for replacements.

*Plaintiffs Joseph Goldsmith, Jennifer Goldsmith, and Casey Goldsmith*

290.  Plaintiffs Joseph Goldsmith, Jennifer Goldsmith, and Casey Goldsmith ("Goldsmith Family"), who are residents of Oregon, purchased a queen-size Zinus Mattress on or around January 31, 2017.

291.  The Goldsmith Family did not remove the mattress cover.

292.  Glass fibers from the Affected Zinus mattresses released causing the Goldsmith Family to suffer personal injuries and damage to their personal property.

293.  On or around December 28, 2020, the Goldsmith Family discovered that the Zinus mattress was the source of the glass fiber contamination.

294.  As a result of the contamination, the Goldsmith Family was forced to discard their personal property and pay to replace those items.

*Plaintiffs Chad Goodson, Ginny Goodson and B.G., a minor ("The Goodsons")*

295.   On or around December 18, 2017, Plaintiffs Chad and Ginny Goodson, who are residents of Oklahoma, purchased a full-size Zinus Green Tea 12-inch memory foam mattress.

296.   The Goodsons removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

297.   Glass fibers from the Zinus mattresses released causing the Goodsons to suffer personal injuries and damage to their personal property.

298.   The Goodsons later discovered that the Zinus mattress was the source of the glass fiber contamination.

299.   As a result of the contamination, the Goodsons. were forced to discard their personal property and pay for replacements.

*Plaintiff Alexis Gonzales and Jonathan Anh Hoang*

300.   On or around September 11, 2017, Plaintiff Alexis Gonzales and Jonathan Anh Hoang, who are residents of California, purchased a Zinus Sleep Master Ultima Comfort Memory Foam 8-inch full-size Mattress.

301.   Plaintiffs Alexis Gonzales and Jonathan Anh Hoang removed the Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

302.   Glass fibers from the Zinus mattress released causing Alexis Gonzales and Jonathan Anh Hoang to suffer personal injuries and damage to their personal property.

303.   Alexis Gonzales and Jonathan Anh Hoang later discovered that the Zinus mattress was the source of the glass fiber contamination.

304.   As a result of the contamination, Gonzales and Ahn Hoang were forced to discard their personal property and pay for replacements.

*Plaintiff Patrick Green*

305.    On May 9, 2017, Plaintiff Patrick Green, who resides in the District of Columbia, purchased a Zinus Sleep Master Ultima mattress and a Zinus Smartbase bedframe from Amazon.com.

306.    Several months after purchasing his Affected Mattress and until June 2020, Green began experiencing nose and ear congestion, watery eyes, fatigue, headaches, and sleep deprivation.

307.    On May 25, 2020, Green discovered glass fibers throughout his bedroom.  Upon further inspection, he discovered a large amount of glass fibers on the ground underneath his Affected Mattress and bedframe.

308.    The Affected Mattress's Outer Cover was torn, and the mattress was releasing large amounts of glass fibers.

309.    As a result of glass fiber contamination, Green was forced to discard personal property including his clothes and bedding and had to pay for replacements.

*Plaintiffs Vanessa Gutierrez, Al.D. and An.D.*

310.    On or around August 1, 2018 Plaintiff Vanessa Gutierrez who is a resident of California, purchased a Zinus mattress.

311.    Without removing the outer cover, her Affected Mattress shed glass fibers which caused Gutierrez and her children Al.D. and An.D. to suffer personal injuries and damage to their personal property.

312.    Gutierrez and her children Al.D. and An.D later discovered that the Zinus mattress was the source of the glass fiber contamination.

313.    As a result of the contamination, Gutierrez and her children Al.D. and An.D were forced to discard their personal property and pay for replacements.

*Plaintiff Ryan Hasara*

314.    On or around March 1, 2018, Plaintiff Ryan Hasara who is a resident of Utah, purchased a 12-inch queen-size, memory foam, Zinus Green Tea Mattress.

315.    Hasara removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

316.    Glass fibers from the Zinus mattress released into Hasara's home.

317.    Hasara later discovered that the Zinus mattress was the source of the glass fiber contamination.

318.    As a result of the contamination, Hasara was forced to discard his personal property and pay to replace it.

*Plaintiff Terry Hayden*

319.    In 2019, Plaintiff Terry Hayden who is a resident of Illinois, purchased a Zinus M*SMT800SF Mattress.

320.    Hayden's Zinus M*SMT800SF Mattress did not have a removeable outer cover with a zipper.

321.    Glass fibers from the Zinus M*SMT800SF Mattress released causing Plaintiff Hayden to suffer personal injuries.

322.    Hayden later discovered that the Zinus mattress was the source of the glass fiber contamination.

*Plaintiffs Leza Hepler, Timothy Hepler, K.H., and Kamren Hepler*

323.  Plaintiffs Leza and Timothy Hepler purchased two Zinus Green Tea mattresses, one on December 25, 2018 for their son Kamren and the second on February 9, 2020 for their minor child K.H. The Hepler family lives in Pennsylvania

324.  In January 2020, Leza removed Kamren's Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper. After washing it, she did not put the cover back on the mattress. Rather, she put a fitted sheet and top sheet over the mattress.

325.  A few weeks later, Leza washed Kamren's sheets and noticed glass fiber threads embedded in the sheets but did not know the source of the fibers.

326.  On May 16, 2020 Leza washed Kamren's sheets again and discovered glass fibers all over the sheets. She discovered the FR Sleeve encasing the mattress was falling apart and shedding glass fibers and blanketing Kamren's bedroom with them.

327.  The glass fibers contaminated much of the Hepler's personal property including, bedframes, dressers, sheets, bedding, jackets, pants, shirts, boxers, sweaters, socks, pillows, slippers, and shoes.

328.  As a result of the contamination, the Hepler's were forced to discard a large portion of their personal property and pay for replacements.

*Plaintiff Marie Hicks*

329.  Plaintiff Marie Hicks, a resident of Colorado, purchased a Zinus mattress in 2017.

330.  In or around May 2020, Marie removed her Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper

331.  Glass fibers from the Zinus mattress released and contaminated her home and personal property.

332.    As a result of the contamination, Marie was forced to discard her personal property and pay for replacements.

*Plaintiffs Christina Hoover and Johnathan Hoover ("Hoovers")*

333.    Plaintiffs Christina and Johnathan Hoover purchased a Zinus Slumber 18-inch, spring coil, queen-size mattress on or around May 11, 2019.

334.    Without removing the outer cover of their Affected Zinus Mattress, the glass fibers escaped and contaminated the Hoovers' home.

335.    The Hoovers experienced physical symptoms of dermatitis and other ailments due to the glass fiber exposure from their Affected Zinus Mattress.

*Plaintiffs Aimee Hudson, Jimmy Hudson, Storm Davies J.H., G.M., E.H., and A.S.*("The Hudson Family")

336.    On or around July 18, 2019, Plaintiffs Aimee and Jimmy Hudson bought a king-size, 12-inch, Ultima Comfort Zinus mattress.

337.    The Hudson Family all developed painful rashes that itched.  They had breathing issues, coughs, eye irritation, ringing ears, and hearing loss.

338.    They did not discover the glass fibers released from their Affected Mattresses until they removed an Outer Cover in December 2020 to wash it by unzipping an easily accessible zipper.

339.    Glass fibers from the Zinus mattresses released and contaminated their home and personal property.

340.    As a result of the contamination, the Hudson Family plaintiffs were forced to spend days cleaning their home to remove the glass fibers.  Mr. Hudson missed a day of work to address the contamination.  They also had to discard their personal property and pay for replacements.

341.   Lack of sleep and the extreme stress of cleaning, discarding and replacing their personal belongings caused Ms. Hudson to suffer chest pains and seek medical attention.

*Plaintiffs Christopher and Kristy Johnson*

342.   On or around February 27, 2018, Plaintiffs Christopher and Kristy Johnson purchased a Zinus green tea mattress from Amazon.

343.   Christopher and Kristy Johnson removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

344.   Christopher and Kristy Johnson found no warning tags on their Affected Mattress.

*Plaintiff Jacob Jones*

345.   In late 2015, Plaintiff Jacob Jones purchased a Zinus mattress from Walmart.

346.   In early 2020, Jacob Jones removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

347.   Glass fibers from the Zinus mattress released and contaminated his home and personal property.

348.   As a result of the contamination, Jacob Jones was forced to discard his personal property and pay for replacements.

*Plaintiffs Michael Jones, Paige Jones, and L.J.*

349.   In late 2017, Plaintiffs Michael Jones and Paige Jones received a Zinus mattress as a gift.

350.   The Plaintiffs Michael Jones and Paige Jones removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

351.   Glass fibers from the Zinus mattress released and contaminated their home and personal property.

352.    As a result of the contamination, Michael Jones, Paige Jones and L.J. were forced to discard their personal property and pay for replacements.

*Plaintiff Lester Jordan and Angela Odell, deceased*

353.    On or around December 15, 2019, Plaintiff Lester Jordan who is a resident of Illinois, purchased a Zinus HBM1000T - Model DGM1000WGF Mattress.

354.    Plaintiffs Lester Jordan and Angela Odell's Zinus HBM1000T - Model DGM1000WGF mattress did not have a removeable outer cover with a zipper.

355.    Glass fibers from the Zinus HBM1000T - Model DGM1000WGF mattress released causing Plaintiffs Lester Jordan and Angela Odell to suffer personal injuries.

356.    Plaintiffs Lester Jordan and Angela Odell later discovered that the Zinus mattress was the source of the glass fiber contamination.

357.    As a result of the contamination, Plaintiffs Lester Jordan and Angela Odell were forced to discard their personal property and pay for replacements.

*Plaintiffs Bakytzhan Kallemov, Gulnar Kallemova, L.K. and E.K. ("Kallemova Family")*

358.    In or around June 2015, Plaintiffs Bakytzhan and Gulnar Kallemova bought a queen-size Zinus Spa Sensations mattress.  They later purchase two additional full-size Zinus mattresses

359.    The Kallemova Family all developed painful rashes that itched.  Mrs. Kallemova experienced an episode of vertigo.  They did not discover the glass fibers released from their Affected Mattresses until they removed an Outer Cover in December 2020 to wash it by unzipping an easily accessible zipper.

360.    Glass fibers from the Zinus mattresses released and contaminated their home and personal property.

361.     As a result of the contamination, the Kallemova Family plaintiffs were forced to spend 10 days cleaning their home to remove the glass fibers.  Mrs. Kallemova missed more than a day of work to address the contamination.  They also had to discard their personal property and pay for replacements and unusually high utility bills.

*Plaintiff Mark Lambarena and M.L*

362.     In or around 2019, Plaintiff Mark Lambarena who is a resident of California, purchased a Zinus Bed-In-A-Box mattress.

363.     Plaintiffs Mark Lambarena and M.L.'s Zinus mattress has a removeable outer cover with a zipper.

364.     Plaintiff Mark Lambarena did not remove the outer cover.

365.     Without removing the outer cover, their Affected Mattress shed glass fibers which caused plaintiff Mark Lambarena and his child M.L. to suffer personal injuries and damage to their personal property.

366.     Plaintiffs Mark Lambarena and M.L. discovered that the Zinus mattress was the source of the glass fiber contamination.

367.     As a result of the glass fiber contamination Plaintiffs Mark Lamberena and M.L. were forced to discard their personal belongings and pay for replacements.

*Plaintiffs Maiko Lunn and Shayan Askari*

368.     In or around April 2019, Plaintiffs Maiko Lunn and Shayan Askari, who are residents of Michigan, purchased a Zinus 10-inch cooling memory foam mattress from the Zinus website.

369.     Plaintiffs Maiko Lunn and Shayan Askari did not remove their Affected Mattress's Outer Cover.

370.   Glass fibers from the Zinus mattress released through the mattress cover causing Maiko Lunn and Shayan Askari to suffer personal injuries and damage to their personal property.

371.   As a result of the contamination, Plaintiffs Maiko Lunn and Shayan Askari have experienced skin, eye, and respiratory issues, were forced to discard their personal property and had to pay for replacements.

*Plaintiffs Amie Maddox and Robert Maddox*

372.   In or around 2017, Plaintiffs Amie and Robert Maddox, who are residents of Florida, purchased a Zinus mattress from Walmart.

373.   Plaintiffs Amie and Robert Maddox removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

374.   Glass fibers from the Zinus mattress released causing them to suffer personal injuries and damage to their personal property.

375.   On or around August 24, 2020, Plaintiffs Amie and Robert Maddox discovered their Zinus mattress was the source of the glass fibers.

376.   As a result of the contamination, Plaintiffs Amie and Robert Maddox have experienced skin, eye, and respiratory issues, were forced to discard their personal property and had to pay for replacements.

*Plaintiff Tinamarie Maldonado*

377.   Plaintiff Tinamarie Maldonado, who is a resident of Illinois, purchased a Zinus mattress for her adult son to use while he stayed with her.

378.   Plaintiffs Tinamarie Maldonado removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

379.     Glass fibers from the Zinus mattress released causing them to suffer personal injuries and damage to their personal property.

380.     Later Plaintiff Tinamarie Maldonado discovered their Zinus mattress was the source of the glass fibers.

381.     As a result of the contamination, Plaintiff Tinamarie Maldonado experienced skin, eye, and respiratory issues, was forced to discard their personal property and had to pay for replacements.

*Plaintiffs Jason McCarron, Jr., Cheyenne Mitchell and J.M.*

382.     On or around March 3, 2019, Plaintiffs Jason McCarron, Jr. and Cheyenne Mitchell, who are residents of Ohio, purchased a Zinus 12-inch Green Tea Memory Foam Mattress from Amazon.

383.     Jason and Cheyenne removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

384.     Glass fibers from the Zinus mattress released causing Jason, Cheyenne and J.M. to suffer personal injuries and damage to their personal property.

385.     As a result of the contamination, Jason, Cheyenne and J.M. were forced to discard their personal property and pay for replacements.

*Plaintiffs Haleigh McClain, Trevor McClain, and K.M.*

386.     On September 18, 2019, Plaintiff's Haleigh and Trevor McClain, who are residents of Tennessee, purchased a Zinus Spa Sensations mattress from Walmart.

387.     Haleigh and Trevor removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

388. Glass fibers from the Zinus mattress released causing Haleigh, Trevor and K.M to suffer personal injuries and damage to their personal property.

389. As a result of the contamination, Haleigh, Trevor and K.M. were forced to discard their personal property and pay for replacements.

*Plaintiffs Jacob McDowell, Samantha Ziegler and H.M. a minor*

390. In or around June 2018, Plaintiffs Jacob McDowell and Samantha Ziegler who are residents of Missouri, purchased a Zinus Mattress from Walmart.

391. Jacob and Samantha removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

392. Glass fibers from the Zinus mattress released causing Jacob, Samantha and H.M. to suffer personal injuries and damage to their personal property.

393. As a result of the contamination, Jacob, Samantha and H.M. were forced to discard their personal property and pay for replacements.

*Plaintiffs Quentin Miyamoto and Tawny Miyamoto*

394. In or around January 2019, Plaintiffs Quentin Miyamoto and Tawny Miyamoto, who are residents of Hawaii, purchased a Zinus Spa/str/800W Mattress from Amazon.

395. On or around January 8, 2021 Quentin Miyamoto and Tawny Miyamoto removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

396. They immediately saw glass fibers from the Zinus mattress released causing Quentin Miyamoto and Tawny Miyamoto to suffer personal injuries and damage to their personal property.

397. As a result of the contamination, Quentin Miyamoto and Tawny Miyamoto were forced to discard their personal property and pay for replacements.

*Jeremy Miller, Marianna Miller, Leonard Miller, and Theresa Miller*

398.   In or around 2018 Plaintiffs Jeremy Miller and Marianna Miller, who are residents of Wyoming, purchased a Zinus Green Tea mattress.

399.   Jeremy and Marianna Miller were living in a home with their children and pets that was owned by Jeremy's parents, Leonard and Theresa Miller.

400.   Jeremy and Marianna Miller removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

401.   Glass fibers from the Zinus mattress released causing them, their children and their pets to suffer personal injuries and damage to their personal property.

402.   Jeremy and Marianna Miller had to move themselves, their two young children, four dogs and two cats out of the home and into Leonard and Theresa Miller's two-bedroom apartment because of the glass fiber contamination.

403.   As a result of the contamination, Jeremy and Marianna Miller were forced to remediate their home, discard their personal property and pay for replacements which depleted their savings at the onset of the pandemic.

404.   The economic impact of cleaning the home and replacing their belongings forced Jeremy, Marianna, their two children, four dogs and two cats to live with Leonard and Theresa Miller until the remediation of the home was complete.

405.   The contamination caused by the Zinus mattress disrupted the lives of Jeremy, Marianna, their children, Leonard and Theresa Miller and diminished their quality of life.

*Plaintiffs Ashley Mills*

406.   In or around September 2019, Plaintiff Ashley Mills, who is a resident of Texas, purchased one twin-size and one full-size Zinus mattresses.

407.  Plaintiff Ashley Mills removed her Affected Mattresses' Outer Covers to wash them by unzipping the easily accessible zippers.

408.  Glass fibers from the Affected Zinus mattresses released causing them to suffer personal injuries and damage to their personal property.

409.  In or around February 2020, Ashley and Joshua discovered that the Zinus mattresses were the source of the glass fiber contamination.

410.  As a result of the contamination, Ashley Mills was forced to discard her family's personal property and pay for replacements.

*Plaintiff Erica D. Moore*

411.  In or around January 2018, Plaintiff Erica D. Moore, who is a resident of Florida, purchased SPA-STR-800T Zinus mattresses.

412.  Erica D. Moore did not remove the outer mattress cover.

413.  Glass fibers from the Zinus mattress released causing Erica D. Moore to suffer acute personal injuries and damage to her personal property.

414.  In or around June 2, 2018, Erica D. Moore discovered that the Zinus mattress was the source of the glass fiber contamination.

415.  As a result of the contamination, Erica D. Moore required medical attention, was forced to discard her personal property and had to pay for replacements.

*Plaintiff David Morse*

416.  In or around August 2017, Plaintiff David Morse, who is a resident of New York, purchased a Zinus Green Tea, memory foam mattresses.

417.  David Morse removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

418.    Glass fibers from the Zinus mattress released causing David Morse to suffer personal injuries and damage to his personal property.

419.    As a result of the contamination, David Morse suffered physical injuries and was forced to discard his personal property and had to pay for replacements.

*Plaintiff Douglas Noblitt*

420.    On or around October 1, 2020, Plaintiff Douglas Noblitt, who is a resident of New Mexico, purchased a Zinus mattresses.

421.    Douglas Noblitt noticed glass fibers on and around his Zinus mattress, so he removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

422.    Glass fibers from the Zinus mattress released causing Douglas Noblitt to suffer personal injuries and damage to his personal property.

423.    As a result of the contamination, Douglas Noblitt suffered physical injuries and was forced to discard his personal property and had to pay for replacements.

*Plaintiff John Orrill*

424.    On or around October 1, 2020, Plaintiff John *Orrill*, who is a resident of Louisiana, purchased a Zinus Cooling Gel mattress.

425.    Plaintiff John *Orrill* removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

426.    Glass fibers from the Zinus mattress released causing John *Orrill* to suffer personal injuries and damage to his personal property.

427.    Plaintiff John *Orrill* had to hire a professional cleaning service to remediate the damage caused by the fibers from his Zinus mattress

428.     As a result of the contamination, John *Orrill* suffered physical injuries and was forced to discard his personal property and had to pay for replacements.

*Plaintiffs Matthew Porter and Aidan Coyle*

429.     In or around September 2019, Plaintiffs Matthew Porter and Aidan Coyle of Washington, purchased a Zinus Green Tea, queen-size mattress.

430.     Plaintiffs Matthew Porter and Aidan Coyle did not remove their Affected Mattress's Outer Cover.

431.     Nonetheless, glass fibers from the Affected Zinus mattress released any time Plaintiffs laid down on the bed.

432.     The glass fiber contamination from the Affected Zinus mattress caused Plaintiffs Matthew Porter and Aidan Coyle to suffer personal injuries, and it damaged their personal property.

433.     As a result of the contamination, Plaintiffs Matthew Porter and Aidan Coyle were forced to discard their personal property and pay for replacements.

*Plaintiff Wilson Riendeau*

434.     On June 3, 2020, Claire Riendeau, who resides in North Carolina, purchased a Zinus Ultima mattress from Amazon.com for her son Plaintiff Wilson Riendeau to use while he attends the University of North Carolina.

435.     In August 2020, Mr. Riendeau removed his bedding to launder it, though he did not remove the Affected Mattress's Outer Cover.

436.     For two nights Mr. Riendeau slept on the Affected Mattress without bed sheets. When he awoke after the second night his skin was very irritated and rashes had developed.

437.   Mr. Riendeau soon discovered glass fibers had seeped through the Affected Mattress's Outer Cover and contaminated his entire bedroom.

438.   As a result of the glass fiber contamination, Mr. Riendeau had to discard many of his personal belongings.

439.   Wilson Riendeau had to pay to replace the discarded belongings.

*Plaintiffs Brittany Rodriguez, on behalf of herself and her children, CH.R, CA.R, CAR.R, and CAM.R; Maria Astolfo; and Noah Astolfo*

440.   On or around December 1, 2015, Plaintiff Maria Astolfo purchased a Zinus Spa Sensations Black Label Mattress from Walmart.com for her daughter, Plaintiff Brittany Rodriguez; both reside in Texas. This Affected Mattress came with a removable Outer Cover equipped with a zipper, no warning labels, and care instructions inviting the user to remove the Outer Cover and wash it. (Exhibit G).

441.   In February 2020, Ms. Rodriguez removed the Outer Cover to wash it.

442.   Once she removed the Outer Cover, glass fibers from the Affected Mattress coated her entire apartment forcing her and her four minor children to evacuate their home during a global pandemic from February 2020 until March 2020.[44]

443.   The glass fibers injured Ms. Rodriguez and her children by cutting their skin, irritating their eyes, causing severe coughing and other respiratory issues.[45]

444.   The glass fibers destroyed Ms. Rodriguez's property including her furniture, bedding, her and her children's clothes, her brother Plaintiff Noah Astolfo's clothes, her furniture, appliances, and carpet.

---

[44] Darian Trotter, *'I just don't know what to do.' Why it'll cost $4300 to clean her home*, NEWS4SA (February 18, 2020), https://news4sanantonio.com/news/local/i-just-dont-know-what-to-do-why-itll-cost-4300-to-clean-her-home-02-19-2020 (last visited on September 23, 2020).
[45] *Id.*

445.   A professional remediation company estimated it would cost Ms. Rodriguez $4345.00 to decontaminate fiberglass from her home. (Exhibit I).

446.   Brittney Rodriguez, Maria Astolfo and Noah Astolfo suffered economic damages in replacing their contaminated personal property.

*Plaintiff Ryan Fitzroy Roberts ("Roberts")*

447.   In or around February 2, 2019 Plaintiff Ryan Fitzroy Roberts, who is a resident of Missouri, purchased Zinus Green Tea 12-inch mattresses.

448.   Roberts removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

449.   Glass fibers from the Zinus mattress released causing Roberts to suffer personal injuries and damage to his personal property.

450.   Roberts later discovered that the Zinus mattress was the source of the glass fiber contamination.

451.   As a result of the contamination, Ryan Roberts was forced to discard his personal property and to pay for replacements.

*Plaintiffs Edward Rockenstyer, Jennifer Walsh, J.Sa. and J.Si., minors*

452.   In or around September 2017 plaintiffs Edward Rockenstyer and Jennifer Walsh, residents of Georgia, purchased two Zinus 10-inch pressure memory foam mattresses.

453.   Plaintiffs Edward Rockenstyer and Jennifer Walsh's Zinus mattresses had removeable outer covers with zippers.

454.   Edward Rockenstyer and Jennifer Walsh removed their Affected Mattresses' Outer Covers to wash them by unzipping easily accessible zippers.

455.     Glass fibers from the Zinus mattresses released causing Edward Rockenstyer, Jennifer Walsh, J.Sa. and J.Si. to suffer personal injuries and damage to their personal property.

456.     Edward Rockenstyer, Jennifer Walsh, J.Sa. and J.Si. later discovered that the Zinus mattress was the source of the glass fiber contamination.

457.     As a result of the contamination, Edward Rockenstyer, Jennifer Walsh, J.Sa. and J.Si. were forced to discard their personal property and pay for replacements.

*Plaintiffs Mariah Roiz, Ryan Boyett, on behalf of themselves and their children, E.B., L.B., E.F., and J.B*

458.     On January 12, 2018, Plaintiffs Mariah Roiz and Ryan Boyett, who reside in California, purchased a Zinus Green Tea mattress from Amazon.com.

459.     On or around September 13, 2020, Ms. Roiz, and her fiancé, Mr. Boyett, discovered glass fibers had seeped through their Affected Mattress and covered their entire home which forced them from their home.

460.     Months prior to discovering her Affected Mattress was releasing glass fibers, Ms. Roiz experienced on going respiratory issues which caused her to seek medical attention multiple times. On September 2, 2020, a CT Scan of Ms. Roiz's lungs showed her lungs had "minimal biapical pleural parenchymal scarring." (Exhibit M). Fibrous glass can cause scarring in lungs.[46]

---

[46] The Hartford, Loss Control Department Technical Information Paper Series, *Working Safely With Fiberglass*, https://www.noao.edu/safety/itt_hartford_risk_management_resources/working_safely_with_fiberglass.pdf ("[R]esearchers did conduct a study in which they surgically implanted fibrous glass with diameters less than 1.5 microns into the chest, and injected fibers directly into the tracheas, of laboratory animals. The results showed scarring of the animals' lungs.").

461.     Ms. Roiz, Mr. Boyett, and their four minor children all experienced injuries because of being exposed to the glass fibers from an Affected Mattress, including their children suffering rashes and nose bleeds. (Exhibit L).

462.     As a result of the glass fiber contamination, Ms. Roiz had to discard many of the families' personal items including clothes, bedding, couches, rugs, and other items equipped with fabric. The loss of the items forced her to spend a significant amount of money to replace some of the items.

463.     Ms, Roiz will have to pay a professional cleaning service to remediate their home before her family of six can safely move back in.

*Plaintiff Tiara Sampson*

464.     On or around March 30, 2019 plaintiff Tiara Sampson who is a resident of Arizona, purchased a Zinus Ultima Comfort Memory Foam, 10-inch, short, queen mattress.

465.     Plaintiff Tiara Sampson's Zinus mattress has a removeable outer cover with a zipper.

466.     Plaintiff Tiara Sampson removed her Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

467.     Glass fibers from the Zinus mattresses released causing damage to plaintiff Tiara Sampson's personal property.

468.     Tiara Sampson later discovered that the Zinus mattress was the source of the glass fiber contamination.

469.     As a result of the contamination, Tiara Sampson was forced to discard her personal property and pay for replacements.

*Plaintiff Romeo Nero, A.N., and E.N. ("Nero Family")*

470.   On or around November 4, 2019, the Nero Family Plaintiffs who are residents of Texas, purchased a Zinus Spa Sensation Memory Foam 5-inch twin mattress.

471.   The Nero Family Plaintiffs' Zinus mattress has a removeable outer cover with a zipper.

472.   The Nero Family Plaintiffs removed their Affected Mattress' Outer Cover to wash it by unzipping an easily accessible zipper.

473.   The Nero Family Plaintiffs' Zinus mattress released glass fibers causing them to suffer from dermatitis and respiratory ailments.

474.   The contamination from the Sanders-Nero Family's Affected Zinus mattress damaged to their property.

475.   The Nero Family Plaintiffs later discovered that the Zinus mattress was the source of the glass fiber contamination.

476.   As a result of the glass fiber contamination, the Nero Family Plaintiffs were forced to discard their personal property and pay for replacements.

*Plaintiff Francis Santana*

477.   On or around May 13, 2017 plaintiff Francis Santana who is a resident of New York, purchased a Zinus OLB-GTFM-12/queen mattress.

478.   Plaintiff Francis Santana's Zinus mattress has a removeable outer cover with a zipper.

479.   Plaintiff Francis Santana removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

480.   Glass fibers from the Zinus mattress released causing plaintiff Francis Santana to suffer physical injuries and damage to plaintiff's personal property.

481.     Plaintiff Francis Santana later discovered that the Zinus mattress was the source of the glass fiber contamination.

*Plaintiff Jennifer Schmaltz*

482.     Plaintiff Jennifer Schmaltz who is a resident of North Dakota, purchased a Zinus mattress.

483.     Plaintiff Jennifer Schmaltz's Zinus mattress has a removeable outer cover with a zipper.

484.     Plaintiff Jennifer Schmaltz removed her Affected Mattress's Outer Cover by unzipping an easily accessible zipper.

485.     Glass fibers from the Zinus mattress released causing Plaintiff Jennifer Schmaltz to suffer physical injuries and damage to plaintiff's personal property.

486.     Plaintiff Jennifer Schmaltz later discovered that the Zinus mattress was the source of the glass fiber contamination.

487.     As a result of the contamination, Plaintiff Jennifer Schmaltz was forced to discard all her personal property on the main floor of her home, pay for replacements, refurbish the flooring and have the ventilation system cleaned.

*Plaintiffs Elker and Jordan Sensibaugh, I.S. and L.S. ("Sensibaugh Family")*

488.     A few years ago, the Sensibaugh Family Plaintiffs who are residents of Oregon, purchased a Zinus mattress.

489.     The Sensibaugh Family Plaintiffs' Zinus mattress has a removeable outer cover with a zipper.

490.     The Sensibaugh Family Plaintiffs removed their Affected Mattress' Outer Cover to wash it by unzipping an easily accessible zipper.

491.     The Sensibaugh Family Plaintiffs' Zinus mattress released glass fibers causing damage to their personal property.

492.     The Sensibaugh Family Plaintiffs immediately discovered that the Zinus mattress had contaminated their home with glass fibers.

493.     As a result of the contamination, the Sensibaugh Family Plaintiffs were forced to discard their personal property and pay for replacements.

*Plaintiff Rickie Shelton*

494.     In or around June 2020 plaintiff Rickie Shelton who is a resident of Michigan, purchased a Zinus 12-inch cloud memory foam queen-size mattress.

495.     Plaintiff Rickie Shelton's Zinus mattress has a removeable outer cover with a zipper.

496.     Plaintiff Rickie Shelton did not remove the outer cover of the Affected Mattress.

497.     Plaintiff Rickie Shelton's Zinus mattress does not have any warning labels concerning the glass fibers it contains.

498.     Plaintiff Rickie Shelton first discovered the Affected Mattress was releasing glass fibers while loading it into a vehicle to move it to his new residence.

499.     Plaintiff Rickie Shelton suffered physical injuries from the glass fibers and would not have purchase his Zinus mattress had he been warned the mattress contains glass fibers.

*Plaintiff Timothy K. Spies*

500.     In January 2020, Plaintiff Timothy Spies, who resides in Maryland, purchased a Zinus Green Tea mattress from Amazon.com.

501.    Around two months after purchasing his Affected Mattress, he began experiencing skin irritation every time he laid on it. He soon discovered glass fibers from the mattress were seeping out of the mattress.

502.    The glass fibers embedded into his skin, hair, and contaminated his house and personal belongings. (Exhibit N). As a result, Mr. Spies had to discard his personal belongings including pillows, bedding, and clothing and pay for replacements.

*Plaintiffs Brian Stammler, Brittany Salcieo, M.T.S. and A.R.S. ("Stammler/Salcieo Family")*

503.    On or around April 23, 2017 the Stammler/Salcieo Family Plaintiffs who are residents of California, purchased one Zinus Memory Foam, 12-inch, Green Tea, queen-size mattress and one Zinus ultra comfortable, memory foam, full-size mattress.

504.    The Stammler/Salcieo Family Plaintiffs' Zinus mattresses have removeable outer covers with zippers.

505.    The Stammler/Salcieo Family Plaintiffs removed their Affected Mattresses' Outer Covers to wash them by unzipping an easily accessible zipper.

506.    The Stammler/Salcieo Family Plaintiffs' Zinus mattresses released glass fibers causing damage to their personal property.

507.    The Stammler/Salcieo Family Plaintiffs later discovered that the Zinus mattresses were the source of the glass fiber contamination.

508.    As a result of the contamination, the Stammler/Salcieo Family Plaintiffs were forced to discard their personal property and pay for replacements.

*Plaintiffs Robert Stevens, Ann Martinec, Louise Barkley; Asia Ausburn, Ryan Ausburn, Susan Money and Steven McCallie ("Stevens/Martinec Family")*

509.    In or around 2018 the Stevens/Martinec Family Plaintiffs who are residents of Florida, purchased a Zinus queen-size, 12-inch, Green Tea Memory Foam mattress; two

Zinus King-size, 12-inch Green Tea Memory Foam mattresses, and a Zinus full-size, 12-inch, Green Tea Memory Foam mattress.

510.    The Stevens/Martinec Family Plaintiffs' Zinus mattresses have removeable outer covers with zippers.

511.    The Stevens/Martinec Family Plaintiffs removed two of their Affected Mattresses' Outer Covers to wash them by unzipping an easily accessible zipper.

512.    The Stevens/Martinec Family Plaintiffs' Zinus mattresses released glass fibers causing damage to their personal property.

513.    The Stevens/Martinec Family Plaintiffs later discovered that the Zinus mattresses were the source of the glass fiber contamination.

514.    As a result of the contamination, the Stevens/Martinec Family Plaintiffs were forced to discard their personal property and pay for replacements.

*Plaintiff Logan Summerhays*

515.    On or around April 5, 2016 Plaintiff Logan Summerhays who is a resident of California purchased a model number 412646 Zinus queen-size mattress.

516.    Plaintiff Summerhays' Zinus mattress has a removeable outer cover.

517.    Plaintiff Summerhays removed his Affected Mattress' Outer Cover to wash it by unzipping its easily accessible zipper.

518.    Plaintiff Summerhays' Zinus mattress released glass fibers causing damage to his personal property.

519.    Plaintiff Summerhays later discovered that the Zinus mattress was the source of the glass fiber contamination.

520.   As a result of the contamination, Plaintiff Summerhays was forced to discard his personal property and pay for replacements.

*Ronald Szeve, on behalf of himself and his child, R.S.*

521.   On March 13, 2017, Plaintiff Ronald Szeve, who lives in Michigan, purchased two Zinus Green Tea mattresses. Within months of purchasing the two Affected Mattresses glass fibers began to seep through the Outer Cover without Mr. Szeve's knowledge because the fibers are extremely hard to see.

522.   The glass fibers began to injure Mr. Szeve and his young son which include rashes, coughing, and cuts. For months he was not aware glass fibers from the two Affected Mattresses were causing the injuries and assumed they were related to his work environment or allergic reactions to an unknown substance.

523.   Around April 2018, Mr. Szeve discovered the two Affected Mattresses were releasing glass fibers and soon after realized the fibers covered his home. (Exhibit J).

524.   A doctor confirmed slivers of glass fibers were causing injuries to Mr. Szeve and his son.

525.   The contamination of glass fibers from the Affected Mattress forced him to remove his son from his home for over a month while he attempted to rid his home of the fibers

526.   The glass fibers also contaminated most of his and his son's personal belongings forcing him to discard thousands of dollars of items (Exhibit J).

527.   In late April 2018, Mr. Szeve contacted Zinus customer service to report the issues caused by the two Affected Mattresses (Exhibit J).

528.   Ultimately, Zinus offered to pay Mr. Szeve $869.00 if he signed a release of liability which Mr. Szeve declined. (Exhibit K).

*Plaintiff Sarah Torella*

529.    On or around December 9, 2017 plaintiff Sarah Torella who is a resident of Oregon, purchased a Zinus queen-size, 12-inch, Green Tea Memory Foam mattress.

530.    Plaintiff Sarah Torella's Zinus mattress has a removeable outer cover with a zipper.

531.    Plaintiff Sarah Torella removed her Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

532.    Plaintiff Sarah Torella's Zinus mattress released glass fibers causing damage to her personal property.

533.    Plaintiff Sarah Torella later discovered that the Zinus mattress was the source of the glass fiber contamination.

534.    As a result of the contamination, Sarah Torella was forced to discard her personal property and pay for replacements.

*Plaintiffs Abuzar Turab, Vanesa Quiroz-Turab, N.T. and I.T.*

535.    In or around February 2020, plaintiffs Abuzar Turab and Vanesa Quiroz-Turab who are a resident of Georgia, purchased a Zinus Spa Sensation queen-size mattress.

536.    Plaintiffs Abuzar Turab and Vanesa Quiroz-Turab's mattress has a removeable outer cover with a zipper.

537.    Plaintiffs Abuzar Turab and Vanesa Quiroz-Turab removed their Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

538.    Glass fibers from the Zinus mattress released causing plaintiffs Abuzar Turab, Vanesa Quiroz-Turab, N.T. and I.T. to suffer physical injuries and damage to their personal property.

539.   Abuzar Turab and Vanesa Quiroz-Turab later discovered that the Zinus mattress was the source of the glass fiber contamination.

540.   As a result of the contamination, Vanesa Quiroz-Turab, N.T. and I.T. were forced to discard their personal property and pay for replacements.

*Plaintiffs Jesus Munoz, Dinora Verdugo Ledezma, G.V., L.L., and S.L.*

541.   In or around February 2020, Plaintiff Dinora Verdugo Ledezma, who is a resident of Washington, purchased a Zinus 8-inch mattress.

542.   Plaintiff Dinora Verdugo Ledezma's mattress has a removeable outer cover with a zipper.

543.   Plaintiff Dinora Verdugo Ledezma removed her Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

544.   Glass fibers from the Zinus mattress released causing plaintiffs Jesus Munoz, Dinora Verdugo Ledezma, G.V., L.L. and S.L. to suffer physical injuries and damage to their personal property.

545.   Plaintiffs Jesus Munoz, Dinora Verdugo Ledezma, G.V., L.L. and S.L. later discovered that the Zinus mattress was the source of the glass fiber contamination.

546.   As a result of the contamination, Plaintiffs Jesus Munoz, Dinora Verdugo Ledezma, G.V., L.L. and S.L. were forced to discard their personal property and pay for replacements.

*Plaintiff Daniel Vidmar*

547.   On or around July 22, 2017 plaintiff Daniel Vidmar who is a resident of California, purchased a Zinus Sleep Master Ultima Queen 10" mattress.

548. Plaintiff Daniel Vidmar's Zinus mattress has a removeable outer cover with a zipper.

549. Plaintiff Daniel Vidmar removed the outer mattress cover by using the easily accessible zipper.

550. Glass fibers from the Zinus mattress released causing plaintiff Daniel Vidmar to suffer from sinus congestion, COPD and Blepharitis/Dry Eye.

551. The glass fibers from the Affected Zinus Mattress damaged his personal property.

552. Plaintiff Daniel Vidmar later discovered that the Zinus Mattress was the source of the glass fiber contamination.

553. As a result of the contamination, Daniel Vidmar was forced to discard his personal property and pay for replacements.

*Plaintiff Brandon Wagner*

554. In or around October 2019 plaintiff Brandon Wagner who is a resident of Illinois, purchased a Zinus Spa Sensation SPA-STR 800F mattress.

555. Plaintiff Brandon Wagner's Zinus mattress has a removeable outer cover with a zipper.

556. Plaintiff Brandon Wagner's Zinus mattress did not have any warning labels.

557. Plaintiff Brandon Wagner did not remove the outer mattress cover.

558. Glass fibers from the Zinus mattress released causing plaintiff Brandon Wagner to suffer physical injuries and damage to his personal property.

559. Plaintiff Brandon Wagner later discovered that the Zinus mattress was the source of the glass fiber contamination.

560.    As a result of the contamination, Brandon Wagner was forced to discard his personal property and pay for replacements.

*Plaintiff Garrett Williams, Lindsey Williams, E.W., M.W., and K.W. ("Williams")*

561.    In or around August 2020 plaintiffs Garrett Williams and Lindsey Williams who are residents of Arkansas, purchased a 10-inch Green Tea Memory Foam Zinus Mattress.

562.    The Williams Plaintiffs' Zinus mattress has a removeable outer cover with a zipper.

563.    The Williams Plaintiffs' Zinus mattress did not have any warning labels.

564.    The Williams Plaintiffs removed the outer mattress cover.

565.    Glass fibers from the Zinus mattress released causing the Williams Plaintiffs to suffer physical injuries and damage to Williams' personal property.

566.    The Williams Plaintiffs later discovered that the Zinus mattress was the source of the glass fiber contamination.

567.    As a result of the contamination, the Williams Plaintiffs were forced to move out of their home so that the carpets could be removed, the walls washed, and the HVAC system and ductwork cleaned.  They rented a dumpster to discard their contaminated personal property and must pay to replace those items.

*Plaintiff Jun Xiang*

568.    In or around 2018, plaintiff Jun Xiang who is a resident of California, purchased a queen-size Zinus mattress.

569.    Plaintiff Jun Xiang's Zinus mattress has a removeable outer cover with a zipper.

570.    Plaintiff Jun Xiang's Zinus mattress did not have any warning labels.

571.    Plaintiff Jun Xiang removed his Affected Mattress's Outer Cover to wash it by unzipping an easily accessible zipper.

572.   <u>Glass fibers from the Zinus mattress released causing plaintiff Jun Xiang to suffer physical injuries and damage to his personal property.</u>

573.   <u>Plaintiff Jun Xiang later discovered that the Zinus mattress was the source of the glass fiber contamination.</u>

574.   <u>As a result of the contamination, Jun Xiang was forced to discard his personal property and pay for replacements.</u>

## C. Personal Injuries

575.   The glass fibers from the Affected Mattresses caused Plaintiffs and their families to experience extreme pain and suffering. Some of Plaintiffs' and their families' injuries include dermatitis, rashes, soreness to nose, throat, and eyes, embedded fibers, and stomach irritation. Currently, the severity of Plaintiffs' their families' injuries is unknown because it is likely each individual inhaled significant amounts of glass fibers.

## D. Property Damage

576.   The glass fibers from the Affected Mattresses caused significant and potentially irreversible damage to the Plaintiffs' homes and personal property. These glass fibers contaminated Plaintiffs' homes including Plaintiffs' HVAC systems, washing machines, dryers, clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, miscellaneous furniture, and cars.

## E. Zinus Knew or Should Have Known of the Defects Since as Early as 2015

577.   <u>On June 17, 2015, a consumer filed an incident report with the CPSC concerning a Zinus Spa Sensations mattress that allegedly leaked glass fibers which caused a family to suffer personal injuries and property damage.[47]</u>

---

[47] Incident Report, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1491420 (last visited October 26, 2020).

578.   The CPSC then sent the incident report to Zinus on July 22, 2015.

579.   Amazon reviews concerning Zinus' mattresses releasing dangerous glass fibers date back to 2017.[48]

580.   In the Summer of 2019, a consumer posted a direct message entitled, "Can I wash my Zinus mattress cover?" to Zinus's website.[49] Zinus responded by stating the following: "Our mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[50]

581.   The above statement fails to mention terms like fiberglass, glass fibers, or contains glass. The above statement fails to mention the potential consequences which may occur if the removable outer cover is removed. The above statement fails to explain that "removing [the cover] could inhibit the fire safety barrier" which then may cause thousands of glass fibers to release from the mattress potentially resulting in serious injuries and/or property damage. The above statement fails to mention why Zinus continued to equip the Affected Mattresses with Outer Covers with zippers when users were not to remove said covers.

## DAMAGES

582.   The Defects and Zinus' conduct to misrepresent and conceal them caused damage to Plaintiffs and the Class in at least three ways, as alleged in detail below. First, members of the Class would not have purchased the Affected Mattresses at all, or would have paid less for them, had the Defects been disclosed to them. Each of these injuries has already occurred. None of the injuries requires any Class members' mattresses to release glass

---

[48] *See* Exhibit A.
[49] Zinus, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-wash-my-Zinus-mattress-cover- (last visited March 8, 2020).
[50] *Id.*

fibers. Second, members of the class personally injured by the glass fibers contained within the Affected Mattresses. And third, members of the class who suffered property and/or real estate damage from the glass fibers contained within the Affected Mattresses. <u>Members who suffered property and/or real estate damage from glass fibers contained within the Affected Mattresses seek the costs of remediation and/or costs to replace contaminated property.</u>

## CLASS ACTION ALLEGATIONS

583.    The Classes' claims all derive directly from a single course of conduct by Zinus. Zinus has engaged in uniform conduct toward the class members. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes. Additionally, the state law claims share the same legal standards and elements of proof across states, thus facilitating the certification of a National Class.

584.    Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

**A. The Nationwide Consumer Classes**

585.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All persons who purchased an Affected Mattress in the United States, which was manufactured and/or sold by Zinus and contained glass fibers.

## B. The Nationwide Adult Personal Injury Class

586.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All adults in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

## C. The Nationwide Minor Personal Injury Class

587.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All minors in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

## D. The Nationwide Personal Property Damage Class

588.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

All persons in the United States who suffered personal property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

## E. The Nationwide Real Estate Property Damage Class

589.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a **Nationwide Class** defined as follows:

> All persons in the United States who suffered real estate property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

## F. Statewide/District Classes

590.    In the alternative, if the Court does not certify the Nationwide Classes, Plaintiffs allege statewide class action claims on behalf of the following States and District: Arizona, Arkansas, California, Colorado, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Washington, and Wyoming.

**Consumer Class** – All persons within an applicable state or district who purchased an Affected Mattress which was manufactured and/or sold by Zinus.

**Adult Personal Injury Class** – All adults within an applicable state or district who were injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**Minor Personal Injury Class** – All minors within an applicable state or district who were injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**Personal Property Damage Class** – All persons within an applicable state or district who suffered personal property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.

**<u>Real Estate Property Damage Class</u>** <u>– All persons within an applicable state or district who suffered real estate property damage from glass fibers from an Affected Mattress, which was manufactured and/or sold by Zinus and contained glass fibers.</u>

591.    The Nationwide Classes, <u>the Statewide/District Classes</u>, and their members are sometimes referred to herein as the "Class" or "Classes."

592.    Excluded from the Classes are Zinus; any affiliate, parent, or subsidiary of Zinus; any entity in which Zinus has a controlling interest; any officer, director, or employee of Zinus;  any successor or assign of Zinus; counsel for the Plaintiffs or anyone employed by counsel for Plaintiffs in this action and their immediate families; any Judge to whom this case is assigned and his or her immediate family and staff.

593.    This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

594.    **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). <u>Based on the almost two hundred Plaintiffs from thirty-two (32) States and the District of Columbia, the 95,000 plus Amazon Reviews concerning Zinus' Green Mattress (which is only one model of the Affected Mattresses)</u>, there are thousands of Affected Mattresses nationwide. Individual joinder of all Class members is impracticable.

595.    Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Defendant or third parties in the usual course of business and within their custody or control. Plaintiffs anticipate providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

596.    **Existence of common questions.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2). These common questions include:

a.      <u>Whether Zinus violated the Magnuson Moss Warranty Act.</u>

b.      <u>Whether the Affected Mattresses are "substantial product hazards" as defined in 15 U.S.C. § 2064.</u>

c.      <u>Whether Zinus violated 15 U.S.C. § 2064.</u>

d.      <u>Whether under 15 U.S.C. § 2064 this Court may issue a preliminary injunction restraining Zinus from distributing in commerce within the United States mattresses containing glass fibers pending the completion of this action.</u>

e.      Whether the Affected Mattresses comply with 16 C.F.R. § 1633 over the life of the mattress.

f.      Whether the Affected Mattresses comply with 16 C.F.R. § 1633 if the continuous glass fibers break.

g.      Whether the Outer Cover on the Affected Mattresses constitutes a defect.

h.      Whether the Outer Cover on the Affected Mattresses constitutes a safety-related defect.

i.      Whether the zipper on the Outer Cover of the Affected Mattresses constitutes a defect.

j.      Whether the zipper on the Outer Cover of the Affected Mattresses constitutes a safety-related defect

k.      Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a defect in the mattress system.

l.      Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a safety-related defect in the mattress system.

m.      Whether the Affected Mattresses' attached tags are inadequate to sufficiently warn the user of associated dangers.

n.      Whether the Defects constitutes material facts that consumers might consider in making their purchasing decisions.

o.      Whether Zinus fraudulently concealed these Defects.

p.      Whether Zinus fraudulently concealed other defects.

q.      Whether Zinus misrepresented that the Affected Mattresses were safe.

r.      Whether Zinus engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose the Defects.

s.      Whether Zinus violated consumer protection statutes, and if so, what remedies are available.

t.      Whether Zinus be declared responsible for notifying all Class members of the Defects.

u.      Whether Zinus is liable under various theories of state liability.

v.      Whether Zinus is liable to the Class for damages and/or penalties because of their knowledge, conduct, action, or inaction; and,

w.      Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or preliminary and/ or permanent injunction.

597.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs' Affected Mattress contained the same Defects found in all other Affected Mattresses.

598.    **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent and are capable and willing to participate in this litigation. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel. As such, they meet the requirements of Fed. R. Civ. P. 23(a)(4).

599. **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

600. **Predominance and Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The common questions listed in paragraph 393 are the central legal and factual issues in the litigation. The injuries suffered by each Class member, while meaningful on an individual basis, are not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Defects, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

601. In the alternative, the Class may be certified because:

a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant; and/or

b. The prosecution of separate actions by individual Class members would create a risk of adjudications which would, as a practical matter, be dispositive of

the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## CLAIMS FOR RELIEF APPLICABLE TO THE NATIONWIDE CLASSES, OR ALTERNATIVELY, THE STATEWIDE/DISTRICT CLASSES

## COUNT ONE – VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

602.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

603.    The Class Plaintiffs bring this Count against Defendant on behalf of members of the Nationwide Class, or alternatively, the Statewide/District Classes.

604.    The Affected Mattresses are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

605.    Plaintiffs and the Class are the buyers of the Affected Mattresses and/or the Affected Mattresses caused Plaintiffs and the Class to suffer consequential property damage. They are therefore "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

606.    Defendant is a "supplier" and/or "warrantor" within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(4)-(5). Defendant is engaged in the business of making consumer products directly or indirectly available to consumers and are obligated under an implied warranty to the Plaintiffs and Class members.

607.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a supplier or warrantor to comply with a written or implied warranty.

608.    Defendant owes the Plaintiffs and other Class members an implied warranty of merchantability in connection with the purchase of their mattresses. As part of the implied

warranty of merchantability, Defendant warrants that the Affected Mattresses are fit for their ordinary purpose as mattresses in safe condition and substantially free from defects.

609.     As described in more detail above Defendant breached those implied warranties and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Affected Mattresses share the Defects. These design defects make the Affected Mattresses unsafe by potentially exposing the user to dangerous glass fibers.

610.     Any efforts by Defendant to limit the implied warranties in a manner that would exclude coverage of the Affected Mattresses is unconscionable, and any such effort to disclaim or otherwise limit liability for the Affected Mattresses is null and void.

611.     Defendant owes Plaintiffs and the Class expressed warranties as provided in its Warranty and in its express warranty on mattress tags attached to the Affected Mattresses that affirms the mattresses meet the requirements of § 1633.

612.     As described in more detail above Defendant breached those express warranties and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Affected Mattresses share the Defects. These design defects make the Affected Mattresses unsafe by potentially exposing the user to dangerous glass fibers.

613.     Any efforts by Defendant to limit the express warranties in a manner that would exclude coverage of the Affected Mattresses is unconscionable, and any such effort to disclaim or otherwise limit liability for the Affected Mattresses is null and void.

614.     Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants, on one hand, and Plaintiffs and the other Class members, on the other.

615.    Plaintiffs and each the other Class member have had sufficient direct dealings with Defendant or its agents to establish privity of contract.

616.    Plaintiffs and each of the Class members are intended third-party beneficiaries of contracts between Zinus.

617.    Plaintiffs and the Class members were not required to give notice to Defendant or to afford Defendant an opportunity to cure their breaches of the implied warranties. Defendant had actual knowledge, or should have known, or were reckless in not knowing, of the Defects, but Defendant nonetheless failed to correct the Defects prior to the filing of Plaintiffs' Class Action Complaint, thus making formal pre-suit notice unnecessary and futile. Even if notice were deemed to be required, Plaintiffs may proceed prior to affording Defendant a reasonable opportunity to cure its breaches because class plaintiffs would not be obligated to provide notice and opportunity to cure until the Court determines their representative capacity pursuant to Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 2310(e).

618.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.

619.    Plaintiffs and the Class members seek all damages permitted by law, in an amount to be proven at trial.

620.    Plaintiffs and the Class members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Defendant had actual knowledge, or should have known, or were reckless in not knowing, steps taken by Defendant were inadequate to render the Affected Mattresses safe and merchantable. Plaintiffs thus request payment of all fees and costs necessary to

repair the Defects. Plaintiffs and other Class members further request re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Defects.

621.    The rights of the Plaintiffs and other Class members to recover these expenses as an equitable manner, to put them in the place that they would have been but for Defendants' conduct, presents a common question of law. Equity and fairness require the establishment by Court decree and administration under Court supervision of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

622.    Further, based on the Defendants' continuing failures to fix the known dangerous Defects, Plaintiffs and the other Class members seek as equitable relief under 15 U.S.C. § 2310(d)(1): (a) a declaration that Defendant has not remedied the Defects; and (b) injunctive relief in the form of judicial supervision of a process requiring Defendant to fully repair the Defects or to refund to Class members the purchase prices of their Affected Mattresses.

**COUNT TWO – ADDITIONAL ENFORCEMENT OF PRODUCT SAFETY RULES**

623.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

624.    The Class Plaintiffs bring this Count against Defendant on behalf of members of the Nationwide Class, or alternatively, the Statewide/District Classes.

625.    15 U.S.C. § 2073 allows any interested person to enforce a consumer product safety rule and to obtain appropriate injunctive relief.

626.   16 C.F.R. § 1633 is a consumer product safety rule that establishes "flammability requirements that all mattress sets must meet before sale or introduction into commerce.[51]

627.   Under § 1633, Zinus has a duty to cease production and distribution in commerce of the Affected Mattresses if:

Any test performed for quality assurance yields results which indicate that any mattress set of a production lot does not meet the criteria of § 1633(b), **or if the manufacturer obtains tests results or other evidence that a component or material or construction/assembly process used could negatively affect the test performance of the mattress set as set forth in § 1633(b),** the manufacturer **shall cease production and distribution in commerce** of such mattress sets until corrective action is taken.[52]

628.   In violation of § 1633.6, Zinus continues to produce and distribute in commerce the Affected Mattresses after receiving significant evidence that the continuous glass fiber filaments contained within its Affected Mattresses' FR Sleeves were breaking, which negatively affects the Affected Mattresses' test performance as set forth in § 1633(b).

629.   As such, pursuant to § 2073, Plaintiffs request the Court enjoin Zinus from distributing in commerce within the United States the Affected Mattresses until Zinus takes corrective action.

630.   Pursuant to § 2073, Plaintiffs also request the Court award Plaintiff the costs of this suit, including reasonably attorneys' fees, and reasonable expert witnesses' fees.

**COUNT THREE – STRICT LIABILITY (FAILURE TO WARN)**

631.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Statewide/District Classes, and under the common law of strict

---

[51] 16 C.F.R. § 1633.1
[52] 16 C.F.R. § 1633.6 (emphasis added).

liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

632.     Zinus engaged in the design, manufacturing, marketing, and sales of the Affected Mattresses and knew or should have known, the Affected Mattresses could release glass fibers resulting in contamination of the surrounding environment, thereby causing injuries and property damage to Plaintiffs.

633.     Zinus knew or should have known of the adverse impacts exposure to its glass fibers would have on people and property.

634.     Zinus knew or should have known of the persistence and high mobility of glass fibers once released into an environment, and the foreseeable risk that its glass fiber-containing mattresses could discharged or released said fibers into an environment.

635.     Zinus failed to provide warnings or instructions sufficient to notify the users and/or public and/or Plaintiffs of the dangers inherent in Zinus' glass fiber-containing mattresses.

636.     Zinus failed to provide proper and adequate notice or instruction regarding the dangers of their Affected Mattresses to human health and property rendering Zinus' glass fiber-containing mattresses unreasonably dangerous for the purposes intended and promoted by Zinus.

637.     Zinus' duty to warn is and was a non-delegable duty.

638.     Zinus also intentionally, recklessly, and without regard for human life and property covered up, suppressed, withheld, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to its glass fiber-containing mattresses as such relate to the persistence and high mobility of glass fibers in an environment.

639.   This failure to warn or adequately instruct regarding the dangers associated with use of Zinus' Affected Mattresses directly and proximately caused harm and damages to Plaintiffs.

640.   By causing glass fiber contamination and the resulting impact to Plaintiffs' health and property, Zinus is strictly liable.

641.   The failure to warn and deceptive conduct of Zinus, as to the public, and retailers of the Affected Mattresses, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Zinus for failure to warn.

### COUNT FOUR – STRICT LIABILITY (DESIGN DEFECT)

642.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Statewide/District Classes, and under the common law of strict liability, as there are no material conflicts among various states' causes of action for strict liability as they apply to this case.

643.   Zinus, herein, at all times relevant, was in the business of the design, manufacture, sale, and distribution of glass fiber-containing mattresses, and/or the foregoing use of which created a risk of exposure of glass fibers to the public as part of the foreseeable use of the Affected Mattresses.

644.   Zinus designed, manufactured, marketed, and sold defective products that were unreasonably dangerous for their intended use. Zinus either knew of the dangers contained in the Affected Mattresses and chose to ignore such dangers or should have known such dangerous existed.

645.    When Zinus placed its glass fiber-containing mattresses into the stream of commerce, the mattresses were defective, unreasonably dangerous, and not fit, suitable, or safe for the intended, foreseeable, and ordinary uses.

646.    The three Design Defects are: <u>(1) the FR Sleeve's design allows the continuous filament fibers to break. Once the continuous fibers of the FR Sleeve break then the FR Sleeves lose their fire-retardant capabilities required by 16 C.F.R. § 1633. Also, the broken fibers easily disperse from the FR Sleeves into the surrounding environment causing personal injuries and/or property damage; (2) the inexpensive, porous Outer Cover allows the broken fibers to migrate through the Outer Cover releasing into the surrounding environment causing personal injuries and/or property damage; and, (3) the Outer Cover is equipped with a zipper inviting the user to remove it which allows the broken fibers to release into the surrounding environment causing personal injuries and/or property damage.</u>

647.    After Zinus designed, manufactured, sold, and distributed the Affected Mattresses, they reached consumers and users without substantial change to the condition and nature of the products. Zinus made the Affected Mattresses pursuant to their own formulas, research, design specifications, and testing.

648.    Zinus, with knowledge of the risks associated with glass fibers, failed to use reasonable care in the design of the Affected Mattresses.

649.    The Defects in the Affected Mattresses existed at the time they left Zinus' control and were known to Zinus.

650.    Reasonable safer alternatives exist and were available to Zinus at all relevant times. Thus, the risks of the Affected Mattresses outweighed the benefits.

651.     By causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Zinus is strictly liable.

652.     The Defects in the Affected Mattresses proximately caused and have directly resulted in the damages of which Plaintiffs complain.

## COUNT FIVE – NEGLIGENCE

653.     Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Nationwide Class, or alternatively on behalf of members of the Statewide/District Classes, and under the common law of negligence, as there are no material conflicts among various states' causes of action for negligence as they apply to this case.

654.     Zinus had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its glass fiber-containing mattresses to avoid harm to those who would be foreseeably injured by glass fiber contamination.

655.     Zinus knew or should have known that there was a serious risk that the Affected Mattresses could release or discharge glass fibers into an environment that would lead to contamination likely causing injures and/or property damage.

656.     By failing to exercise due care in the design, manufacturing, marketing, testing, promotion of its glass fiber-containing mattresses, Zinus breached its duty to avoid harm to Plaintiffs.

657.     Zinus failed to share, publish, or otherwise expose their internal testing and knowledge of the adverse effects of glass fiber exposure to humans and property. Zinus also intentionally, recklessly, and without regard for human safety and property,

suppressed, obfuscated, minimized, and otherwise misrepresented the facts they had with regard to its glass fiber-containing mattresses and the high mobility glass fibers pose once released into an environment. Zinus not only negligently failed to inform the public and Plaintiffs of same, but, at various times, failed to warn retailers of the Affected Mattresses. The failure to warn and deceptive conduct of Zinus, as to the public, Plaintiffs, and retailers, constitutes reprehensible, outrageous, and fraudulent conduct, justifying an award of punitive damages as against Zinus for failure to warn.

658.    By negligently causing glass fiber contamination and the resulting impact to Plaintiffs' health and/or property, Zinus is liable to Plaintiffs.

659.    As a result of Zinus' negligence, Plaintiffs have incurred, and will continue to incur, investigation, cleanup, remediation, abatement, and removal costs and damages related to glass fiber contamination.

660.    Zinus' acts were willful, wanton, or reckless and conducted with a reckless indifference to Plaintiffs' rights.

661.    As a direct and proximate result of Zinus' actions and omissions, Plaintiffs have suffered and continue to suffer damages.

## CLAIMS FOR RELIEF APPLICABLE TO THE ALTERNATIVE STATEWIDE/DISTRICT CLASSES

## VIOLATION OF CONSUMER FRAUD ACTS AMONG THE VARIOUS STATES AND DISTRICT (COUNTS SIX THROUGH THIRTY-EIGHT)

662.    Plaintiffs and the Statewide/District Classes are consumers who purchased Affected Mattresses, not for resale in the ordinary course of their trade or business, but for their use or for use by a member of their households.

663.    Zinus is a "person" as that term is defined in the various laws

664.     During its businesses, trades, and commerce, Zinus knowingly and intentionally took misleading, false, or deceptive acts in violation of the various States/District's consumer fraud and deceptive practice laws. Zinus misrepresented, willfully failed to disclose, and actively concealed the dangerous Defects in the Affected Mattresses as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Zinus also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material facts with intent that consumers rely upon such misrepresentations, concealment, suppression, or omission, in connection with the sale of Affected Mattresses. Zinus is liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of said laws.

665.     Zinus knew of Affected Mattresses' Defects since at least early 2015. Zinus concealed and suppressed material facts regarding the Affected Mattresses and made affirmative misrepresentations regarding the Affected Mattresses. As set out above, the concealed and suppressed material facts include all aspects of the nature of, and threat posed by, Defects, which were well known to Zinus since at least early 2015. The affirmative misrepresentations include, but are not limited to:

a.     Zinus' representation that "All of our mattresses have been tested and meet the requirements of the Cigarette Smoldering Test (16 CFR Part 1632) and the Open Flame Test (1633-Federal flammability)."[53]

---

[53]Amazon, *How do I know a Zinus mattress is safe? Is your foam CertiPUR-US® certified*, https://support.zinus.com/hc/en-us/articles/360000223172-How-do-I-know-a-Zinus-mattress-is-safe-Is-your-foam-CertiPUR-US-certified- (last visited June 3, 2020).

b.      Zinus placed a tag on all the Affected Mattresses stating the mattress complied with 16 C.F.R. § 1633 when it did not because the continuous fibers of the FR Sleeve break.

c.      Zinus' representations that it is "impossible" for glass fibers to release from the Affected Mattresses without removing the Outer Cover.

d.      Zinus' misrepresentation that "[o]ur mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[54]

e.      Zinus' misrepresentation that "[w]e know there are so many chemicals in fire retardants, so we've created a chemical-free fire barrier in every mattress. So you can sleep without nightmares of fires or weird fire-stopping chemicals."[55]

666.    Further, for example, as early as 2015 and through the present, Zinus concealed, suppressed, and failed to disclose material facts related to the Defects in public statements and communications that were designed and intended by Zinus to reach Plaintiffs and the Class members. Zinus made, and continues to make, public statements touting the safety and quality of the Affected Mattresses but omitting any mention of the existence of the Defects, or their nature, extent, or severity.

667.    Zinus made these material omissions and misrepresentations with the intention of reaching Plaintiffs and the Statewide/District Class members, influencing Plaintiffs' and

---

[54] Amazon, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-wash-my-Zinus-mattress-cover- (last visited June 3, 2020).
[55] Amazon, *Do Zinus mattresses contain fire retardants?*, https://support.zinus.com/hc/en-us/articles/360000235651-Do-Zinus-mattresses-contain-fire-retardants- (last visited June 3, 2020).

the Statewide/District Class members' actions, and with the intent that Plaintiffs and Statewide/District Class members rely on Zinus' deception.

668.    These affirmative misrepresentations were false at the time that Zinus made them.

669.    At the time Zinus made these material misrepresentations Zinus knew their representations were false; and/or Zinus knew that they did not have a reasonable basis for their representations; and/or Zinus acted recklessly without knowledge of their truth. At the time Zinus concealed and suppressed these material facts, Zinus knew of these material facts and/or upon reasonable inquiry, Zinus would have come to know of these material facts.

670.    These misrepresentations and omissions involved facts that were material because: (1) they are facts that would be relied on by a reasonable person purchasing a mattress; (2) they concern the type of information on which consumers would be expected to rely and would likely consider to be important in making a decision to purchase a mattress; and (3) they are of the type that a seller knows would be likely to induce a reasonable consumer to act, respond, or substantially change his or her behavior. Whether a manufacturer's products are safe and reliable, whether those products contain defects, and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiffs and the Statewide/District Class members trusted Zinus not to sell mattresses that were defective or that violated federal law governing safety.

671.    Zinus made these misrepresentations, and concealed and suppressed these material facts, to falsely assure purchasers and consumers that their mattresses could perform safely, as reasonably expected by consumers.

672.    Zinus actively concealed and/or suppressed and misrepresented these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' images and cost Zinus money. They did so at the expense of Plaintiffs and the Statewide/District Class members.

673.    Plaintiffs and the Statewide/District Class members were unaware of these material omissions and unaware of the falsity of Zinus' material misrepresentations. Plaintiffs and the Statewide/District Class members were deceived by Zinus' misrepresentations and omissions. Had they been aware of the Defects in the Affected Mattresses, and Zinus' disregard for safety, Plaintiffs and the Statewide/District Class members would not have purchased, would not have paid as much, or would not have retained their mattresses. Plaintiffs did not receive the benefit of their bargain because of Zinus' fraudulent concealment.

674.    Plaintiffs relied on and were deceived by Zinus' representations in purchasing or retaining their Affected Mattresses.

675.    Zinus had a duty to disclose the Defects because: a. Zinus had exclusive and/or far superior knowledge and access to the facts related to the Defects, and these facts were not: (1) known to Plaintiffs and the Statewide/District Class members; (2) reasonably discoverable by Plaintiffs and the Statewide/District Class members through ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiffs and the Statewide/District Class members; b. Plaintiffs and Statewide/District Class members trusted and placed confidence in Zinus to inform them of safety issues related to the Affected Mattresses; c. Zinus was in a position of influence and superiority over Plaintiffs and the Statewide/District Class members because Zinus designed and manufactured the

Affected Mattress, and Zinus possessed technical expertise and information that Plaintiffs and the Statewide/District Class members lacked; and d. Zinus made incomplete representations about the safety and reliability of the Affected Mattresses, while purposefully withholding material facts from Plaintiffs and the Statewide/District Class members that contradicted these representations.

676.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained ascertainable damages including overpaying for the Affected Mattresses.

677.    Plaintiffs and the Statewide/District Class members risk irreparable injury as a result of the Zinus' acts and omissions in violation of said laws, and these violations present a continuing risk to Plaintiffs and the Statewide/District Class members as well as to the general public. Zinus' unlawful acts and practices complained of herein affect the public interest.

678.    Accordingly, Zinus is liable to Plaintiffs and the Statewide/District Class members for their damages in an amount to be proven at trial.

679.    Zinus' acts were done wantonly, willfully, maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Statewide/District Classes' rights and well-being, and with the aim of enriching Zinus. Zinus' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk injury, and affecting public safety, warrants punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT SIX – VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT

680.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

681.    Plaintiff Tiara Sampson brings a claim on her own behalf and on behalf of a class of consumers in Arizona under Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. Ann. §§ 44-1521 through 44-1534. Sampson is a consumer as defined under Arizona's Act.

682.    Section 44-1522 of the Act provides:

The act, use or employment oby any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been mislead, deceived or damaged thereby.

See A.R.S. §44-1522.

683.    Zinus is a "person" within the meaning of the ACFA, and, at all pertinent times, were subject to the requirements and proscriptions of the ACFA with respect to all of their business and trade practices described herein. See A.R.S. §44-1521(6).

684.    Zinus' Affected Mattresses are "merchandise" within the meaning of the ACFA. See A.R.S. §44-1521(5).

685.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

686.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ACFA. See A.R.S. §44-1522.

687.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Arizona customers is an unfair and deceptive act or practice prohibited by the ACFA. See A.R.S. §44-1522.

688.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

689.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

690.    Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

691.    Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

692.    Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

693.    Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

694.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

695.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

696.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

697.   To recover punitive damages, the plaintiff must "show 'something more' than the conduct necessary to establish the tort" of bad faith. Thompson v. Better-Bilt Aluminum Prods. Co., 171 Ariz. 550, 556 (1992) (internal citation omitted). Arizona courts have developed a shorthand reference for this "something more," requiring the plaintiff to " prove that defendant's evil hand was guided by an evil mind." *Rawlings*, 151 Ariz. at 161. The requisite "evil mind" may be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.*

698.   Zinus' conduct warrants the imposition of punitive damages under Arizona law.

## COUNT SEVEN – VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

699.   Plaintiffs hereby incorporate by reference all the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

700.   Plaintiff Garrett Williams brings this claim on his own behalf and on behalf of a class of consumers in Arkansas under the Arkansas Deceptive Trade Practices Act ("ADTP"), A.C.A. § 4-88-101 et seq. Williams is a consumer under the ADTP.

701.   Zinus has engaged in the unfair and deceptive practices and acts described above in violation of the ADTP including but not limited to:

(1) Knowingly making false representations as to the benefits of good of goods or services. A.C.A. § 4-88-107(a)(i); and

(2) Any other unconscionable, false or deceptive act or practice in business, commerce or trade. A.C.A. § 4-88-107(a)(10).

702.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

703.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ADTP.

704.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Arkansas customers is an unfair and deceptive act or practice prohibited by the ADTP.

705.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

706.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

707. Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

708. Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

709. Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

710. Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

711. The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

712. The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

713. As a direct and proximate result of Zinus' breaches of the ADTP, Williams and Class members have been damaged in an amount to be determined at trial.

## COUNT EIGHT – VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDY ACT

714. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

715.    Plaintiff Mariah Roiz brings a claim on her own behalf and on behalf of a class of consumers in California under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 through 1785. Roiz is a consumer as defined under the CLRA.

716.    The CLRA prohibits "unfair or deceptive acts or practices" in transactions involving the sale of goods or services to any consumer. Including prohibiting "[r]epresenting that goods … are of a particular standard, quality or grade … if they are of another." § 1770(a)(9).

717.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

718.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the CLRA.

719.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to California customers is an unfair and deceptive act or practice prohibited by the CLRA.

720.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

721.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

722. Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

723. Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

724. Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

725. Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

726. The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

727. The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

728. As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

**COUNT NINE – VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**

729. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

730. Plaintiff Marie Hicks brings this claim on her own behalf and on behalf of a class of consumers in Colorado under Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101 through 6-1-115. Hicks is a consumer as defined under the CCPA.

731. The CCPA provides that a "person engages in a deceptive trade practice when, in the person's business, vocation, or occupation, the person:

b. Either knowingly or recklessly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;

c. Represents that goods, food, services or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know they are of another;

u. Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

Colo. Rev. Stat. Ann. § 6-1-105 (West).

732. Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

733. Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the CCPA.

734. Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Colorado customers is an unfair and deceptive act or practice prohibited by the CCPA.

735.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

736.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

737.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

738.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

739.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

740.   Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

741.    The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

742.    The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

743.    As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TEN – VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT

744.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

745.    Plaintiff Patrick Green brings a claim on his own behalf and on behalf of a class of consumers in the District of Columbia under the District of Columbia Consumer Protection Procedures Act ("CPA"), D.C. Code §§ 28-3901.

746.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

747.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the CPA.

748.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to District of Columbia customers is an unfair and deceptive act or practice prohibited by the CPA.

749.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

750.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

751.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

752.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

753.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

754.   Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

755.     The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

756.     The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

757.     As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT ELEVEN – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

758.     Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

759.     Plaintiffs Amie and Robert Maddox bring a claim on their own behalf and on behalf of a class of consumers in Florida under the Florida Deceptive and Unfair Trade Practices Act ("FDA"), Fla. Stat. §§ 501.201 through 501.213.

760.     Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

761.     Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the FDA.

762.     Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Florida customers is an unfair and deceptive act or practice prohibited by the FDA.

763.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

764.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

765.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

766.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

767.   Zinus intended that Plaintiffs and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

768.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

769.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

770.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWELVE – VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

771.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

772.   Plaintiffs Edward Rockenstyer and Jennifer Walsh bring a claim on their own behalf and on behalf of a class of consumers in Georgia under Georgia Fair Business Practices Act ("GFBA"), Ga. Code Ann. §§ 10-1-390 through 10-1-407.

773.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

774.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the GFBA.

775.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Arizona customers is an unfair and deceptive act or practice prohibited by the GFBA

776.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

777.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint

with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

778.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

779.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

780.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

781.   Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

782.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

783.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

784.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT THIRTEEN – VIOLATION OF THE HAWAII DECEPTIVE PRACTICES ACT

785.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

786.    Plaintiffs Quentin Miyamoto and Tawny Miyamoto on their own behalf and on behalf of a class of consumers in Hawaii under Hawaii's Uniform Deceptive Trade Practice Act ("DTPA"), Haw. Rev. Stat. Ann. § 481A-1.

787.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

788.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the DTPA.

789.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Hawaii customers is an unfair and deceptive act or practice prohibited by the DTPA.

790.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

791.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

792.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

793.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

794.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

795.   Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

796.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

797.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

798.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT FOURTEEN – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

799.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

800.   Plaintiffs Amanda Chandler and Robert Durham bring this claim on their own behalf and on behalf of a class of consumers in Illinois under Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 through 505/12.

801.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

802.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ICFA.

803.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Illinois customers is an unfair and deceptive act or practice prohibited by the ICFA.

804.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiffs and Class members, to their detriment.

805.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

806.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiffs and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the

overall impression that consumers were purchasing safe and federally compliant mattresses.

807.    Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

808.    Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

809.    The safety and compliance of the Affected Mattresses were material to Plaintiffs and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

810.    The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

811.    As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT FIFTEEN – VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

812.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

813.    Plaintiffs Kayla and Steven Curtis bring a claim on their own behalf and on behalf of a class of consumers in Indiana under Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code Ann. § 24-5-0.5-1 et seq.

814.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

815.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the IDCSA.

816.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Indiana customers is an unfair and deceptive act or practice prohibited by the IDCSA.

817.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

818.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

819.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

820.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

821.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

822.   Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

823.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

824.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

825.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

### COUNT SIXTEEN – VIOLATION OF THE IOWA CONSUMER FRAUD ACT

826.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

827.   Plaintiff Shaunticia Davis brings a claim on her own behalf and on behalf of a class of consumers in Iowa under Iowa Consumer Fraud Act ("ICFA"), Iowa Code §§ 714.16 through 714.16A.

828.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

829.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ICFA.

830.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Iowa customers is an unfair and deceptive act or practice prohibited by the ICFA.

831.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

832.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

833.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

834.    Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

835.    Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

836.    Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

837.    The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

838.    The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

839.    As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT SEVENTEEN – VIOLATION OF THE KENTUCKY DECEPTIVE TRADE PRACTICES ACT

840.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

841.    Plaintiff Jeffrey Gobel brings a claim on his own behalf and on behalf of a class of consumers in Kentucky under Kentucky Consumer Protection Act ("KCPA"), Kentucky Code §§ 367.110 through 367.360.

842.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

843.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ICFA.

844.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Kentucky customers is an unfair and deceptive act or practice prohibited by the KCPA.

845.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

846.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

847.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

848.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

849.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

850.   Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

851.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

852.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

853.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT EIGHTEEN – VIOLATION OF THE LOUISIANA CONSUMER PROTECTION LAW

854.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

855.   Plaintiff John Orrill brings a claim on his own behalf and on behalf of a class of consumers in Louisiana under Louisiana Consumer Protection Act ("LCPA"), Louisiana Code, §§ 1401 et seq.

856.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

857.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ICFA.

858.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Louisiana customers is an unfair and deceptive act or practice prohibited by the LCPA.

859.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

860.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

861.    Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

862.    Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

863.    Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

864.    Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

865.    The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

866.    The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

867.    As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT NINTEEN – VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT

868.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

869.    Plaintiff Timothy Spies brings a claim on his own behalf and on behalf of a class of consumers in Maryland under Maryland Consumer Protect Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 through 13-501.

870. Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

871. Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ICFA.

872. Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Maryland customers is an unfair and deceptive act or practice prohibited by the MCPA.

873. Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

874. Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

875. Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

876.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

877.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

878.   Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

879.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

880.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

881.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY – VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT

882.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

883.   Plaintiffs Nicole and Peter Cookinham bring a claim on his own behalf and on behalf of a class of consumers in Massachusetts under Massachusetts Consumer Protect Act ("MCPA"), Mass. Gen. Laws Ann. ch. 93A, §§ 1 through 11.

884.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

885.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ICFA.

886.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Massachusetts customers is an unfair and deceptive act or practice prohibited by the MCPA.

887.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

888.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

889.    Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

890.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

891.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

892.  Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

893.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

894.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

895.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-ONE – VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

896.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

897.  Plaintiffs Ronald Szeve brings a claim on his own behalf and on behalf of a class of consumers in Michigan under Michigan Consumer Protect Act ("MCPA"), Mich. Comp. Laws §§ 445.901 through 445.922.

898.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

899.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the ICFA.

900.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Michigan customers is an unfair and deceptive act or practice prohibited by the MCPA.

901.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

902.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

903.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

904. Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

905. Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

906. Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

907. The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

908. The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

909. As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-TWO – VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACTS

910. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

911. Plaintiffs Melissa Concepcion brings a claim on her own behalf and on behalf of a class of consumers in Minnesota under Minnesota Consumer Fraud Acts ("MCFA"), Minn. Stat. § 8.31, Minn. Stat. § 325F.67, Minn. Stat. §§ 325F.68 through 325F.70.

912.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

913.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the Act.

914.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Minnesota customers is an unfair and deceptive act or practice prohibited by the MCFA.

915.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

916.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

917.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

918.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

919.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

920.   Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

921.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

922.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

923.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-THREE – VIOLATION OF THE MISSOURI CONSUMER FRAUD ACT

924.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

925.   Plaintiffs Pamela Colyott brings a claim on her own behalf and on behalf of a class of consumers in Missouri under Missouri Merchandising Practicing Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 through 407.307.

926.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

927.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the Act.

928.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Missouri customers is an unfair and deceptive act or practice prohibited by the MMPA.

929.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

930.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

931.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

932.    Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

933.    Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

934.    Plaintiff and members of the Class relied on Zinus' false promises, misrepresentations, and omission to their detriment by purchasing an Affected Mattress.

935.    The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

936.    The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

937.    As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

**COUNT TWENTY-FOUR – VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT**

938.    Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

939.    Plaintiff Uquallia Coleman brings a claim on his own behalf and on behalf of a class of consumers in Nebraska under Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat. Ann. § 59-16.

940.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

941.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the NCPA

942.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Nebraska customers is an unfair and deceptive act or practice prohibited by the NCPA.

943.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

944.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

945.    Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

946. Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

947. Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

948. Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

949. The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

950. The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

951. As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-FIVE – VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

952. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

953. Plaintiff Douglas Noblitt brings a claim on his own behalf and on behalf of a class of consumers in New Mexico under New Mexico Unfair Trade Practices Act ("NMUPA"), N.M. Stat. Ann. § 57-12 et seq.

954.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

955.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the NMUPA.

956.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to New Mexico customers is an unfair and deceptive act or practice prohibited by the NMUPA.

957.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

958.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

959.    Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

960. Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

961. Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

962. Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

963. The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

964. The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

965. As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-SIX – VIOLATION OF THE NEW YORK CONSUMER FRAUD ACTS

966. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

967. Plaintiff Francis Santana brings a claim on his own behalf and on behalf of a class of consumers in New York under New York Consumer Fraud Acts ("NYCFA"), N.Y. Exec. Law § 63(12), N.Y. Gen. Bus. Law §§ 349 and 350.

968.    Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

969.    Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the NYCFA.

970.    Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to New York customers is an unfair and deceptive act or practice prohibited by the NYCFA.

971.    Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

972.    Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are compliant with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

973.    Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

974.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

975.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

976.  Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

977.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

978.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

979.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-SEVEN – VIOLATION OF THE NORTH CAROLINA CONSUMER FRAUD ACT

980.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

Plaintiff Wilson Riendeau brings a claim on his own behalf and on behalf of a class of consumers in North Carolina under North Carolina Consumer Fraud Act ("NCCFA"), N.C. Gen. Stat. §§ 75-1.1 through 75-35.

981.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

982.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the NCCFA.

983.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to North Carolina customers is an unfair and deceptive act or practice prohibited by the NCCFA.

984.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

985.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

986.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

987. Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

988. Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

989. Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

990. The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

991. The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

992. As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-EIGHT – VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT

993. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

994. Plaintiff Jennifer Schmaltz brings a claim on her own behalf and on behalf of a class of consumers in North Dakota under North Dakotas Unlawful Sales or Advertising Practices Act ("NDCFA"), N.D. Cent. Code Ann. § 51-15-01 et seq.

995.	Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

996.	Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the NDCFA.

997.	Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to North Dakota customers is an unfair and deceptive act or practice prohibited by the NDCFA.

998.	Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

999.	Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1000.	Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1001.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1002.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1003.  Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1004.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1005.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1006.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWENTY-NINE – VIOLATION OF THE OHIO CONSUMER PROTECTION ACT

1007.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1008.  Plaintiff Jason McCarron, Jr. brings a claim on his own behalf and on behalf of a class of consumers in Ohio under Ohio Unfair, Deceptive, or Unconscionable Acts or Practices ("OUDA"), Ohio Rev. Code Ann. § 1345 et seq.

1009.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1010.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the OUDA.

1011.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Ohio customers is an unfair and deceptive act or practice prohibited by the OUDA.

1012.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1013.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1014.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1015.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1016.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1017.  Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1018.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1019.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1020.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT THIRTY – VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT

1021.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1022.  Plaintiff Ginny Goodson brings a claim on her own behalf and on behalf of a class of consumers in Oklahoma under Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15, §§ 751 through 763.

1023.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1024.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the OCPA.

1025.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Oklahoma customers is an unfair and deceptive act or practice prohibited by the OCPA.

1026.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1027.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1028.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1029.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1030.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1031.  Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1032.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1033.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1034.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT THIRTY-ONE – VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES LAW

1035.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1036.  Plaintiff Sarah Torella brings a claim on her own behalf and on behalf of a class of consumers in Oregon under Oregon Unlawful Trade Practices Law ("OUTPL"), Or. Rev. Stat. §§ 646.605 through 646.656.

1037.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1038.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the OUTPL.

1039.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Oregon customers is an unfair and deceptive act or practice prohibited by the OUTPL.

1040.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1041.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1042.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1043.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1044.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1045.   Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1046.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1047.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1048.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT THIRTY-TWO – VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

1049.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1050.   Plaintiffs Tim and Leza Hepler bring a claim on their own behalf and on behalf of a class of consumers in Pennsylvania under Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 through 201-9.3;

1051. Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1052. Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the PUTPCPL.

1053. Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Pennsylvania customers is an unfair and deceptive act or practice prohibited by the PUTPCPL.

1054. Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1055. Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1056. Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1057.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1058.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1059.   Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1060.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1061.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1062.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT THIRTY-THREE – VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

1063.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1064.   Plaintiffs Alina and Tim Cubow bring a claim on their own behalf and on behalf of a class of consumers in South Carolina under the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 through 39-5-160.

1065.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1066.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the SCUTPA.

1067.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to South Carolina customers is an unfair and deceptive act or practice prohibited by the SCUTPA.

1068.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1069.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1070.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1071.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1072.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1073.  Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1074.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1075.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1076.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

### COUNT THIRTY-FOUR – VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

1077.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1078.  Plaintiffs Trevor and Haleigh McClain bring a claim on their own behalf and on behalf of a class of consumers in Tennessee under Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 through 47-18-125.

1079.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1080.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the TCPA.

1081.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Tennessee customers is an unfair and deceptive act or practice prohibited by the TCPA.

1082.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1083.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1084.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1085. Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1086. Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1087. Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1088. The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1089. The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1090. As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT THIRTY-FIVE – VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT

1091. Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1092. Plaintiff Brittney Rodriguez brings a claim on her own behalf and on behalf of a class of consumers in Texas under Texas Deceptive Trade Practices – Consumer Protection Act ("TDTP-CPA") Texas Code Ann. §§ 17.41 through 17.63.

1093.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1094.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the TDTP-CPA.

1095.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Texas customers is an unfair and deceptive act or practice prohibited by the TDTP-CPA.

1096.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1097.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1098.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1099.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1100.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1101.   Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1102.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1103.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1104.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

**COUNT THIRTY-SIX – VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT**

1105.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1106.   Plaintiff Ryan Hasara brings a claim on his own behalf and on behalf of a class of consumers in Utah under Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. §§ 13-11-1 through 13-11-23.

1107.  Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1108.  Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the UCSPA.

1109.  Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Utah customers is an unfair and deceptive act or practice prohibited by the UCSPA.

1110.  Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1111.  Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1112.  Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1113.   Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1114.   Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1115.   Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1116.   The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1117.   The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1118.   As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

**COUNT THIRTY-SEVEN – VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**

1119.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1120.   Plaintiff David Aguilar brings a claim on his own behalf and on behalf of a class of consumers in Washington under Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code Ann. § 19.86 et seq.

1121. Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1122. Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the WCPA

1123. Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Washington customers is an unfair and deceptive act or practice prohibited by the WCPA.

1124. Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1125. Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1126. Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1127.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1128.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1129.  Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1130.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1131.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1132.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

1133.

## COUNT THIRTY-EIGHT– VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT

1134.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1135.  Plaintiffs Jeremy and Marianna Miller bring a claim on their own behalf and on behalf of a class of consumers in Wyoming under Wyoming Consumer Protection Act (WCPA), Wyo. Stat. Ann.§§ 40-12-101 through 40-12-114.

1136.   Zinus made false promises, misrepresentations, and omissions set forth above in connection with the sale, offers to sell, attempts to sell and advertisement of the Affected Mattresses.

1137.   Zinus' knowing and intentional false promises, misrepresentations, and omissions set forth above constitute unfair and deceptive acts or practices prohibited by the WCPA.

1138.   Zinus' provision of defective, federally non-compliant, and otherwise dangerous mattresses to Wyoming customers is an unfair and deceptive act or practice prohibited by the WCPA.

1139.   Zinus' false promises, misrepresentations, omissions and practices described herein were designed to, and did in fact, deceive and mislead members of the public including Plaintiff and Class members, to their detriment.

1140.   Zinus has engaged in deceptive and unfair acts or practices by, *inter alia*, knowingly misrepresenting the safety of its mattresses, misrepresenting its mattresses are complaint with applicable federal regulations including in 16 C.F.R. § 1633, failing to notify customers of the above safety and noncompliance issues with its mattresses, which was deceptive and misleading, and likely to deceive the public.

1141.   Zinus' misrepresentations and omissions detained herein was uniform to consumers, including Plaintiff and Class members. Through this these misrepresentations and omissions, Zinus conveyed a uniformly deceptive and misleading message to give the overall impression that consumers were purchasing safe and federally compliant mattresses.

1142.  Zinus intended to deceive and be unfair to Plaintiff and members of the putative Class by engaging in the practices described herein so that Zinus could obtain money from its customers.

1143.  Zinus intended that Plaintiff and members of the Class rely of their false promises, misrepresentations, and omissions concerning the safety and compliance of its Affected Mattresses.

1144.  Plaintiffs and members of the Class relied on Zinus' false promises, misrepresentations and omission to their detriment by purchasing an Affected Mattress.

1145.  The safety and compliance of the Affected Mattresses were material to Plaintiff and Class members purchasing the Affected Mattresses, and Zinus had a duty to accurately disclose the Affected Mattresses were unsafe and noncompliant with federal regulations.

1146.  The above-described deceptive and unfair acts and practices were part of a widespread and systemic pattern and/or practice.

1147.  As a direct and proximate result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

**COUNT THIRTY-NINE – FRAUDULENT CONCEALMENT**

1148.  Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Statewide/District Classes.

1149.  Plaintiffs bring this claim under the various Statewide/District laws of fraudulent concealment and/or fraudulent omission.

1150.  Zinus knew or should have known of the Affected Mattresses' Defects since at least early 2015. Zinus concealed and suppressed material facts regarding the Affected

Mattresses and made affirmative misrepresentations regarding the Affected Mattresses. As set out above, the concealed and suppressed material facts include all aspects of the nature of, and threat posed by, Defects, which were well known to Zinus since at least early 2015. The affirmative misrepresentations include, but are not limited to:

a.     Zinus' representation that "All of our mattresses have been tested and meet the requirements of the Cigarette Smoldering Test (16 CFR Part 1632) and the Open Flame Test (1633-Federal flammability)."[56]

b.     Zinus placed a tag on all the Affected Mattresses stating the mattress complied with 16 C.F.R. § 1633 when it did not because the continuous fibers of the FR Sleeve break.

c.     Zinus' representations that it is "impossible" for glass fibers to release from the Affected Mattresses without removing the Outer Cover.

d.     Zinus' misrepresentation that "[o]ur mattresses are self-contained wonder delivery systems! Removing the mattress cover could jeopardize that system. The mattress cover isn't washable, and removing it could inhibit the fire safety barrier, so please always leave the cover on."[57]

e.     Zinus' misrepresentation that "[w]e know there are so many chemicals in fire retardants, so we've created a chemical-free fire barrier in every mattress. So you can sleep without nightmares of fires or weird fire-stopping chemicals."[58]

---

[56]Amazon, *How do I know a Zinus mattress is safe? Is your foam CertiPUR-US® certified*, https://support.zinus.com/hc/en-us/articles/360000223172-How-do-I-know-a-Zinus-mattress-is-safe-Is-your-foam-CertiPUR-US-certified- (last visited June 3, 2020).

[57] Amazon, *Can I wash my Zinus mattress cover?*, https://support.zinus.com/hc/en-us/articles/360000223232-Can-I-wash-my-Zinus-mattress-cover- (last visited June 3, 2020).

[58] Amazon, *Do Zinus mattresses contain fire retardants?*, https://support.zinus.com/hc/en-us/articles/360000235651-Do-Zinus-mattresses-contain-fire-retardants- (last visited June 3, 2020).

1151. <u>Further, for example, as early as 2015 and through the present, Zinus concealed,</u> <u>suppressed, and failed to disclose material facts related to the Defects in public statements</u> <u>and communications that were designed and intended by Zinus to reach Plaintiffs and the</u> <u>Class members. Zinus made, and continues to make, public statements touting the safety</u> <u>and quality of the Affected Mattresses but omitting any mention of the existence of the</u> <u>Defects, or their nature, extent, or severity.</u>

1152. For example, in 2017, some individuals who purchased Zinus' Green Tea mattress on Zinus' Amazon site began authoring negative reviews about the mattresses releasing large amounts glass fibers causing injuries and/or property damage. Additionally, in the summer of 2019 through the present, Zinus concealed, suppressed, and failed to disclose material facts related to the Defects in public statements and communications which were designed and intended by Zinus to reach Plaintiffs and the Class members. Zinus made public statements about their mattresses' outer covers but omitted any mention of the existence of the Defects, or their nature, extent, or severity.

1153. At the time that Zinus concealed and suppressed these material facts, Zinus knew of these material facts and/or upon reasonable inquiry, Zinus would have come to know of these material facts.

1154. Zinus made these material omissions with the intention of reaching Plaintiffs and the Class members and influencing Plaintiffs' and the Class members' actions and with the intent that Plaintiffs and Class members rely on Zinus' deception.

1155. These omissions involved facts that were material because: (1) they are facts that would be relied on by a reasonable person purchasing or retaining an Affected Mattress; (2) they concern the type of information on which consumers would be expected to rely

and would likely consider to be important in making a decision to purchase an Affected Mattress; and (3) they are of the type that a seller and/or manufacturer knows would be likely to induce a reasonable consumer to act, respond, or substantially change his or her behavior.

1156.   These facts are also material because they directly impact the value of the Affected Mattresses that were purchased by Plaintiffs and the Class members. Whether a manufacturer's products are safe and reliable, whether those products contain defects, and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiffs and Class members trusted Zinus not to sell them mattresses that were defective or that violated federal law governing safety.

1157.   Zinus concealed and suppressed these material facts to falsely assure purchasers and consumers that their Affected Mattresses were safe, as represented by Zinus and reasonably expected by consumers.

1158.   Zinus actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' images and cost Zinus money. They did so at the expense of Plaintiffs and the Class members.

1159.   Plaintiffs and the Class were unaware of these omitted material facts. Had they been aware of the Defects in the Affected Mattresses, and Zinus' disregard for safety, they would not have purchased, would not have paid as much, or would not have retained their Affected Mattresses for as long a period of time. Plaintiffs did not receive the benefit of their bargain because of Zinus' fraudulent concealment.

1160.   Plaintiffs and the Class members relied on and were deceived by Zinus' material omissions in purchasing or retaining their Affected Mattresses.

1161.   Zinus had a duty to disclose the Defects because:

a.      Zinus had exclusive and/or far superior knowledge and access to the facts related to the Defects, and these facts were not: (1) known to Plaintiffs and the Class members; (2) reasonably discoverable by Plaintiffs and the Class members through ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiffs and the Class members;

b.      Plaintiffs and Class members trusted and placed confidence in Zinus to inform them of technical and safety issues related to the Affected Mattresses, including issues related to glass fibers releasing from the Affected Mattresses;

c.      Zinus was in a position of influence and superiority over Plaintiffs and the Class members because Zinus designed, manufactured, and/or sold the Affected Mattresses, and Zinus possessed technical expertise and information that Plaintiffs and the Class members lacked; and,

d.      Zinus made incomplete representations about the safety and reliability of the Affected Mattresses, while purposefully withholding material facts from Plaintiffs and the Class members that contradicted these representations.

1162.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Class members sustained damages. Accordingly, Zinus is liable to the Class for their damages in an amount to be proven at trial.

1163.   Zinus' acts were done wantonly, willfully, maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Class's rights and well-being, and with the aim of enriching Zinus. Zinus' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and

injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT FORTY – UNJUST ENRICHMENT

1164.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein. The Class Plaintiffs bring this Count against Zinus on behalf of members of the Statewide/District Classes.

1165.   Plaintiffs and the Class members bring this claim to recover the amounts by which Zinus was unjustly enriched by virtue of their tortious or fraudulent conduct.

1166.   Plaintiffs bring this claim on behalf of the Statewide/District Classes against Zinus under the various States law of unjust enrichment.

1167.   Plaintiffs and the Class members conferred benefits on Zinus. Zinus received a benefit through their unjust conduct by selling the Affected Mattresses, which share the Defects. Plaintiffs and the Class members overpaid for the Affected Mattresses.

1168.   It is inequitable for Zinus to retain these benefits.

1169.   Plaintiffs and the Statewide/District Class Members do not have an adequate remedy at law.

1170.   As a result of Zinus' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

## COUNT FORTY-ONE – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

1171.   Plaintiffs hereby incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

1172.   The Class Plaintiffs bring this Count against Zinus on behalf of members of the Statewide/District Classes.

1173.   Zinus is and was at all relevant times a "merchant" with respect to the Affected Mattresses.

1174.   Zinus impliedly warranted that the Affected Mattresses were in merchantable condition when Plaintiffs and the Statewide/District Class members purchased their Affected Mattresses. As part of the implied warranty of merchantability, Zinus warranted that the Affected Mattresses were fit for their ordinary purposes as mattresses, in safe condition, and substantially free from defects.

1175.   The Affected Mattresses, when sold, and at all times, thereafter, were not merchantable and were unfit for the ordinary purposes for which mattresses are used. All Affected Mattresses suffer from Defects.

1176.   The design defects make the Affected Mattresses unsafe by, without limitation, allowing glass fibers to release from the Affected Mattresses potentially causing serious injuries and/or property damage.

1177.   These dangerous defects existed at the time the mattresses left Zinus' manufacturing facilities and at the time they were sold to the Plaintiffs and the Statewide/District Class members.

1178.   The defective Affected Mattresses caused injury and/or property damage to Plaintiffs and the Statewide/District Class members.

1179.   Plaintiffs and the Statewide/District Class members have had sufficient direct dealings with either Zinus or its agents to establish privity of contract.

1180.   Plaintiffs and the Statewide/District Class members were not required to provide direct notice of their allegations of breach of implied warranty to Zinus because Zinus had actual knowledge of the design defects and their breaches of the implied warranties. Moreover, Plaintiffs and the Statewide/District Class members were not required to give prior notice to Zinus because Zinus was reasonably notified by the filing of the Class Action Complaint.

1181.   As a direct and proximate result of Zinus' breach of the warranties of merchantability, Plaintiffs and other Statewide/District Class members have been damaged in an amount to be proven at trial.

1182.   Plaintiffs and the Statewide/District Class members also seek available equitable and/or injunctive relief.

1183.   Based on Zinus' continuing failures to fix the known dangerous Defects, Plaintiffs and the Statewide/District Class members seek: a declaration that Zinus has not remedied the Defects.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes as defined herein, respectfully request that this Court enter a judgment against Zinus and in favor of Plaintiffs and the Classes, and grant the following relief:

A.      Determine that this action may be maintained and certified as a class action on a nationwide or, alternatively, a statewide basis under Rule 23(b)(1), 23(b)(2) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under 23(c)(4); and that it designate and appoint Plaintiffs as Class Representatives, and appoint Class Counsel under Rule 23(g);

B.      Enter judgment finding Zinus liable for all costs and damages incurred by Plaintiffs, including but not limited to prior, interim and future capital as well as operation and maintenance costs related to glass fiber contamination; including the reasonable costs of investigations and remediation, and losses resulting from glass fiber contamination;

C.      A declaration that the Affected Mattresses are defective as described herein.

D.      Enter judgment finding Zinus liable for punitive damages;

E.      Enter judgment finding Zinus liable for consequential damages;

F.      Enter judgment requiring, via injunction, Zinus stop manufacturing and or selling the Affected Mattresses in the United States;

G.      Award Plaintiffs costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law;

H.      A declaration that these defects are safety-related;

I.      A declaration that Zinus be financially responsible for notifying all Class members of the Defects present in the Affected Mattresses;

J.      An order requiring Zinus to desist from further deceptive distribution and sales practices with respect to the Affected Mattresses;

K.      An order requiring Defendant to pay Plaintiffs statutory damages under the various state statutes pled above;

L.      An award of punitive damages and/or treble the amount of damages;

M.      Award Plaintiffs and Class members restitution and/or disgorgement of Zinus' ill-gotten gains for the conduct described in this Second Amended Complaint;

N.    An order enjoining Defendant from making any further false or misleading statements to Plaintiffs and members of the Class and or Subclasses, and other appropriate relief regarding the marketing of this product;

O.    Award Plaintiffs and Class members pre-judgment and post-judgment interest;

P.    Leave to amend this Amended Complaint to conform to the evidence produced at trial; and,

Q.    Award Plaintiffs and Class members such other relief as the case may require; or as determined to be just, equitable, and proper by this Court.

Dated: April 7, 2021                  Respectfully submitted,

*/s/ James Radcliffe*
James E. Radcliffe, IL #6330315
Christopher Cueto, IL #6192248
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
ccueto@cuetolaw.com
jradcliffe@cuetolaw.com

Lloyd M. Cueto, IL #6292629
Law Office of Lloyd M. Cueto, P.C.
7110 West Main Street
Belleville, IL 62223
cuetolm@cuetolaw.com

Gregory A. Cade
Kevin B. McKie
Gary Anderson
ENVIRONMENTAL
LITIGATION GROUP, P.C.
2160 Highland Ave. S.
Birmingham, AL 35205
T: (205) 328-9200
F: (205) 328-9456
GregC@elglaw.com
kmckie@elglaw.com
Gary@elglaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Rule 7.1 of the Local Rules of the Southern District of Illinois, I certify that on April 7, 2021 a true and correct copy of the foregoing has been properly served upon counsel of record as required by the Federal Rules of Civil Procedure via the ECF system.

*/s/ James Radcliffe*