IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMANDA CHANDLER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:20-cv-265-DWD |
| | ) | |
| ZINUS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiffs bring this putative class action on behalf of individuals who have purchased and used mattresses containing fiberglass that were manufactured by Defendant Zinus, Inc. ("Zinus"). Now before the Court are Zinus's Motion to Dismiss (Doc. 78) and Motion to Strike Class Action Allegations. (Doc. 80). The motions are fully briefed and ripe for decision. (Docs. 79, 81, 88–91). For the following reasons, both motions are due to be granted in part and denied in part.

## I.  FACTUAL BACKGROUND

Zinus manufactures "bed-in-a-box mattresses" which it sells on online marketplaces, such as Amazon, and through "big box" retailers, such as Walmart and Target. (Doc. 75 at 7). The company is incorporated and has its principal place of business in California. (Doc. 75 at 25). Zinus's mattresses have a fire-retardant sleeve made of fiberglass. (Doc. 75 at 7). The mattresses also include an outer cover that is equipped with a zipper and can be removed from the mattress. (Doc. 75 at 7–8). Central to Plaintiffs' case is the claim that glass fibers routinely break off the fiberglass sleeve, penetrate the outer

cover, and spread into the surrounding environment. (Doc. 75 at 7). These fibers have caused skin and eye irritation, breathing issues, and property damage. (Doc. 75 at 7). Breakage of the fibers also makes the fiberglass sleeve less fire-retardant. (Doc. 75 at 8).

On its website, Zinus provides a ten-year "Worry Free" Limited Warranty which provides that "Zinus warrants your mattress against defects in workmanship and materials." (Doc. 75 at 9). The Warranty also provides that Zinus will replace or refund defective mattresses. (Doc. 75 at 9). At least some of Zinus's mattresses contained a tag instructing the user to clean the outer cover by placing it in a washing machine and drying it on a gentle air cycle. (Doc. 75 at 11). Other Zinus mattresses included warnings that say, "DO NOT REMOVE COVER." (Doc. 75 at 27). In the summer of 2019, Zinus posted a statement on the FAQ page of its website warning users not to remove the outer cover. (Doc. 75 at 75). Reviews of Zinus mattresses on Amazon from as early as 2017 also complained of Zinus mattresses releasing glass fibers which injured consumers. (Doc. 75 at 75).

## II.  MOTION TO DISMISS

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing

2

*Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. Proc. 8(a)(2)). The court will accept all well-pleaded allegations as true. *Iqbal*, 556 U.S. at 678. However, the court will not accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677–78). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Arnett*, 658 F.3d at 751–52 (internal quotations and citation omitted).

Plaintiffs bring breach-of-warranty claims, a claim based on 15 U.S.C. § 2073, strict liability and negligence claims, claims based on state consumer fraud laws, and common law fraud claims. (Doc. 75 at 83–171). Zinus seeks dismissal of all these claims under Rule 12(b)(6). But before addressing Zinus's claim-specific arguments, the Court will begin with Zinus's arguments concerning jurisdiction under Rule 12(b)(2).

## A.    Personal Jurisdiction

Zinus first argues that this Court lacks personal jurisdiction over all non-Illinois plaintiffs' claims against Zinus. (Doc. 79 at 12–15). When personal jurisdiction is challenged pursuant to Rule 12(b)(2), plaintiffs bear the burden of establishing personal jurisdiction over defendants. *See N. Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). If the issue is raised by motion to dismiss and decided on written material, rather than an evidentiary hearing, a plaintiff need only make a *prima facie* showing of jurisdictional facts. *Id.* The Court accepts as true all well-pleaded facts and resolves all

3

factual disputes in favor of the plaintiff. *Id.* A court's exercise of personal jurisdiction may be limited by the applicable state statute or the Constitution. The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 Ill. Comp. Stat. 5/2-209(c).

The nature of Zinus's contacts with Illinois determines whether it is appropriate to exercise personal jurisdiction and also the scope of that jurisdiction, *i.e.*, whether it is general or specific to the claims in this case. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). Only a limited set of affiliations with a forum state render a corporate defendant subject to general, or all-purpose, jurisdiction there. A "court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citations omitted). A corporation, however, is not subject to general jurisdiction *only* in those paradigmatic forums. *Daimler AG*, 134 S. Ct. at 760. The Supreme Court allows that "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that state.'" *BNSF Ry. Co.*, 137 S. Ct. at 1558. (quoting *Daimler AG*, 134 S. Ct. at 761 n.19). It is undisputed that Zinus is incorporated and has its principal place of business in California, not Illinois. And Plaintiffs have made no argument that

4

Zinus should be considered at home in Illinois for any other reason. Therefore, Zinus is not subject to general personal jurisdiction in Illinois.

To support the exercise of specific personal jurisdiction, a defendant's contacts with the forum state must directly relate to the conduct underlying the claims in a lawsuit. *Id.* at 702 (citing *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009)). Specific jurisdiction can be properly exercised where (1) the defendant purposefully directed its activities at the forum state or purposefully availed itself of the privilege of doing business in the state and (2) the alleged injury arises out of the defendant's forum-related activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In addition, the exercise of specific jurisdiction must comport with traditional notions of fair play and substantial justice, as required by the Due Process Clause of the Fourteenth Amendment. *Int'l Shoe Co. v. State of Wash. Off. of Unemp. Compensation & Placement*, 326 U.S. 310, 316 (1945).

The inquiry here focuses on the relationship between Zinus, Illinois, and the non-Illinois plaintiffs' claims. *See Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing references omitted). A defendant's relationship with a plaintiff is "not sufficient to create the necessary 'minimum contacts.'" *Id.* (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014)). That "relationship must arise out of contacts that the defendant [it]self creates with the forum State," and "the defendant's contacts with the forum State itself." *Walden*, 134 S. Ct. at 1122.

Plaintiffs do not attempt to argue that the non-Illinois Plaintiffs' claims arise out of Zinus's contacts with Illinois. The non-Illinois Plaintiffs' claims clearly have no

relationship to Illinois. Instead, Plaintiffs argue that Zinus waived its objections to personal jurisdiction by giving "Plaintiffs a reasonable expectation that it will defend this suit on the merits and caus[ing] the Court some effort that would be wasted if personal jurisdiction is later found lacking." (Doc. 89 at 6). Defenses such as lack of jurisdiction "may be waived by formal submission in a cause, or by submission through conduct." *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (internal quotation marks and citations omitted). In *Continental Bank*, the defendants pled lack of personal jurisdiction in their answer but then "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction." *Id.* However, this case is a far cry from *Continental Bank*. The non-Illinois plaintiffs did not join the action until the second amended complaint was filed on April 7, 2021. (Doc. 75) The motion to dismiss under consideration today was Zinus's first substantive response to the second amended complaint and was filed just a few weeks after the second amended complaint. Under these circumstances, the Court finds that Zinus has not waived the defense of lack of personal jurisdiction against the non-Illinois plaintiffs. And because the claims of the non-Illinois plaintiffs have no connection to Zinus's activity in Illinois, this Court has no jurisdiction over those claims. Therefore, Zinus's motion to dismiss is due to be granted as it relates to the non-Illinois plaintiffs.

**B.    Failure to State a Claim**

       *1.    Warranties (Counts One & Forty-One)*

Zinus argues that Plaintiffs have failed to adequately allege breach of implied and express warranties. Plaintiffs have brought a state-law claim for breach of implied

6

warranty (County Forty-One). Such a claim requires a showing that "(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 741 (N.D. Ill. 2015) (internal citations omitted). Privity of contract is not required if the plaintiffs are bringing tort claims to recover for injuries to their person or property. *Cameron v. Battery Handling Sys., Inc.*, No. 4:20-cv-4079-SLD-JEH, 2021 WL 918060, at *3 (C.D. Ill. Mar. 10, 2021) (citing *Berry v. G. D. Searle & Co.*, 309 N.E.2d 550, 558 (Ill. 1974)); *Tamura, Inc. v. Sanyo Elec., Inc.*, 636 F. Supp. 1065, 1070–71 (N.D. Ill. 1986) (recognizing that privity is required only for "intangible economic injury, rather than injury to other property or to their persons").

Plaintiffs have adequately alleged that the mattresses were not merchantable at the time of sale due to the outer cover being removable (Doc. 75 at 26–27), tags on some of the mattresses instructing users to wash the outer cover (Doc. 75 at 26), and the overall quality of the fiberglass sleeve such that glass fibers easily break off and through the outer cover (Doc. 75 at 26). But Zinus argues that Plaintiffs' claim fails because they did not provide adequate pre-suit notice of the defects to Zinus. (Doc. 79 at 21). Plaintiffs concede that they did not provide formal, pre-suit notice and instead argue that they have met the two exceptions to the notice requirement. (Doc. 49 at 21).

The first exception applies when the seller has actual knowledge of a defect in a particular product purchased by a particular buyer. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589–90 (Ill. 1996). While Plaintiffs allege that Zinus had actual notice of similar issues with mattresses purchased by other consumers, they do not allege that

Zinus had actual knowledge of the alleged defects in their own mattresses. The second exception applies when the complaint also states a claim for personal injuries. *Id.* Plaintiffs allege personal injuries resulting from the defects in the mattresses that also constitute the basis of their breach of warranty claims. Accordingly, the Court finds that Plaintiffs' claims satisfy the second exception to the notice requirement. Therefore, the lack of notice is not fatal to their state law breach of implied warranty claim.

Zinus also argues that Plaintiffs' claims based on the Magnuson-Moss Warranty Act ("MMWA") fail because the MMWA has a separate pre-suit notice requirement that Plaintiffs did not satisfy. (Doc. 79 at 21–22). Under the MMWA, plaintiffs must provide the seller "a reasonable opportunity to cure" its failure to comply with a warranty. 15 U.S.C. § 2310(e). However, this requirement does not apply to class actions, at least not until the Court has established the named plaintiffs' representative capacity. 15 U.S.C. § 2310(e); *In re Sears, Roebuck & Co. Tools Marketing & Sales Practice Litigation*, No. MDL-1703, 2012 WL 1015806, at *5 (N.D. Ill. Mar. 22, 2012). As discussed below, the Court will not strike all of Plaintiffs' class action allegations, so the MMWA's pre-suit notice requirement does not apply until the Court establishes the named plaintiffs' representative capacity.

Plaintiffs have also brought a claim for breach of express warranties under the MMWA. To establish a breach of express warranty, a "plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis for the bargain. Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Hasek v.*

8

*DaimlerChrysler Corp.*, 745 N.E.2d 627, 634 (Ill. App. Ct. 2001). The MMWA similarly provides a cause of action for "the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty." 15 U.S.C. § 2310(d)(1). Plaintiffs have alleged that Zinus made two express warranties. First, Zinus's website provides a 10-year "Worry Free" Limited Warranty which provides that "your mattress will be replaced or you will receive a prorated refund, at our option, should your mattress be found defective because of faulty workmanship or structural defects." (Doc. 75 at 9). Second, a tag attached to the mattresses warranted that the mattresses meet the requirements of the Open Flame Resistance Standards in 16 C.F.R. § 1633. (Doc. 75 at 9).

Plaintiffs have failed to adequately allege a breach of the 10-year Limited Warranty. The written terms of the warranty obligate Zinus to replace or refund defective mattresses. Plaintiffs have not alleged that they sought and were refused a replacement or refund from Zinus for defective mattresses. Such an omission is fatal to the MMWA claim under this warranty because the warranty itself dictates Zinus's obligations. Because Plaintiffs have not alleged that Zinus failed to comply with the terms of the warranty, their claim for breach of the 10-year Limited Warranty is due to be dismissed.

Zinus also argues that the tag does not provide a written warranty. The MMWA defines "written warranty" as

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and *affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of

a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6) (emphasis added). Zinus argues that the tag's assertion that the mattress is in compliance with 16 C.F.R. § 1633 is not an assertion that the mattress is "defect free" and also does not indicate a "specified period of time." Plaintiffs argue that the mattresses are required to comply with § 1633 for the life of the mattress, thus supplying a specified period of time. However, the Court is not persuaded by Plaintiffs' argument. The tag itself does not indicate any time period at all, much less a specific one. And § 1633 requires that mattresses meet certain flammability requirements "before sale or introduction into commerce," 16 C.F.R. § 1633.1(a); it does not promise that mattresses will meet a specified level of performance over a specified period of time. Therefore, the tag does not provide an express warranty under the MMWA, and Plaintiffs' claim for breach of warranty based on the tag is due to be dismissed.

**2.    *15 U.S.C. § 2073 (Count Two)***

Plaintiffs seek to enforce the Open Flame Resistance Standards by bringing a claim under 15 U.S.C. § 2073(a), which provides a private right of action to enforce a consumer product safety rule or an order under 15 U.S.C. § 2064. Plaintiffs argue that the Open Flame Resistance Standards are a consumer product safety rule. However, "consumer product safety rule" is defined as "a consumer products safety standard described in section 2056(a) of this title, or a rule under this chapter declaring a consumer product a

10

banned hazardous product." 15 U.S.C. § 2052(a)(6). Section 2056(a) provides rulemaking authority for the Consumer Product Safety Commission to issue consumer product safety standards. But the Open Flame Resistance Standards are rules issued under 15 U.S.C. §§ 1193 & 1194, which are provisions of the Flammable Fabrics Act, a statute that provides no private right of action. *Chitsey v. Blair LLC*, No. A-11-cv-309, 2012 WL 12850275, at *5 (W.D. Tex. Aug. 16, 2012). Therefore, Plaintiffs' claim under 15 U.S.C. § 2073 is due to be dismissed.

### 3.   *Strict Liability and Negligence (Counts Three, Four & Five)*

Plaintiffs bring claims for strict liability under two theories: failure to warn and design defect. "Under a failure to warn theory, a plaintiff must demonstrate that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware." *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 109 (Ill. App. Ct. 2010). Plaintiffs allege that the fiberglass in the mattresses presented a danger to users and that Zinus failed to provide adequate warning to users regarding that danger. Zinus argues that Plaintiffs also allege that many of the mattresses contained warnings about the fiberglass and instructions not to remove the outer cover. (Doc. 75 at 27–28, 75). While it is true that Plaintiffs acknowledge the presence of various warnings and notices, they assert that these warning were insufficient because they did not explain the nature of the danger posed by the fiberglass or how removing the outer cover might expose users to that danger. The Court finds that Plaintiffs have adequately alleged a failure-to-warn theory of strict liability.

11

The elements of a strict liability claim alleging a design defect are "(1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition." *Benson v. Unilever U.S., Inc.*, 884 F. Supp. 2d 708, 715 (S.D. Ill. 2012) (citing *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008)). Plaintiffs allege specific design defects in the mattresses: (1) the fiberglass sleeve's design allowed the fiberglass to break, (2) the outer cover's design allowed the broken fibers to penetrate the cover and enter the surrounding environment, and (3) the outer cover's design includes a zipper which invites users to remove it which in turn increases the risk of fibers breaking off and causing injuries. (Doc. 75 at 90). Zinus argues that these allegations fail to explain specifically how the alleged design defects contributed to these problems. However, the third defect provides adequate detail by asserting that the zipper invites and permits removal of the outer cover. And it is unlikely that Plaintiffs will be able to explain exactly how the design of the fiberglass sleeve and outer cover creates an increased risk of fiberglass breaking off and entering the surrounding environment without the benefit of discovery and expert analysis. For pleading purposes, it is enough that they have alleged specific details regarding the problems caused by specific components of the mattress. The Court finds that Plaintiffs have adequately alleged a strict liability claim based on a design defect.

Plaintiffs also allege a common law negligence claim. "A products liability action based on negligent design falls within the framework of common law negligence. 'Thus,

a plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damages' resulting therefrom." *Salerno*, 932 N.E.2d at 111 (quoting *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 270 (Ill. 2007)). Plaintiffs have alleged that Zinus owed them a duty to exercise reasonable care in manufacturing and distributing the mattresses, that Zinus breached that duty by manufacturing faulty mattresses and failing to adequately warn Plaintiffs of the dangers associated with the fiberglass, and that Zinus's breach caused Plaintiffs' injuries from the fiberglass. As discussed above, Zinus has provided adequately specific details regarding the alleged defects in the mattresses and the warnings (or lack thereof) attached to the mattresses. Therefore, the Court finds that Plaintiffs have adequately alleged negligence.

### 4.    *Fraud (Counts Fourteen, Thirty-nine & Forty)*

Counts Six through Thirty-eight constitute Plaintiffs' claims under the consumer fraud statutes of the various states represented by Plaintiffs. Because the non-Illinois plaintiffs are due to be dismissed for jurisdictional reasons, the claims brought under the consumer fraud statutes of states other than Illinois are also due to be dismissed. Therefore, the Court will only consider Count Fourteen, which is a claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). ICFA prohibits "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce." 815 Ill. Comp. Stat. 505/2. As with any fraud claim, Plaintiffs' ICFA claim must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

Plaintiffs allege that Zinus made affirmative misrepresentations regarding the safety of its mattresses, specifically that tags on the mattresses indicated they were in compliance with 16 C.F.R. § 1633. (Doc. 75 at 115). They claim that this statement was a misrepresentation because the mattress only remains in compliance with § 1633 if the fiberglass sleeve remains whole and intact over the life of the mattress.

The Open Flame Flammability Standard described in § 1633 requires mattresses to meet certain requirements while undergoing a specific open-flame test "before sale or introduction into commerce." Nowhere in § 1633 can the Court find any requirement that mattresses maintain certain standards during their lifetimes or at any point after the open-flame test is conducted. Plaintiffs have not alleged that any mattresses failed to meet the requirements of the open-flame test required by § 1633. Therefore, this regulation does not provide a basis for a claim under ICFA.

Plaintiffs also claim that Zinus violated ICFA by omitting and suppressing material facts. ICFA prohibits the omission or concealment of material facts in the conduct of trade and does not require a duty to disclose when a claim is based on omission or concealment. *Connick*, 675 N.E.2d at 595. Plaintiffs allege that Zinus was aware of the defects in the mattresses but concealed those facts when selling the mattresses to Plaintiffs. Plaintiffs allege they were deceived by the concealment and omission of these facts and that their injuries were a proximate result of this deception. Therefore, the Court finds that Plaintiffs have stated a claim against Zinus under ICFA for concealment, suppression, or omission of material facts.

14

The Court will also consider whether Plaintiffs' ICFA claim meets Rule 9(b)'s requirements, although Zinus raises the issue only cursorily. Rule 9(b) requires plaintiffs to plead fraud with particularity, that is, they must include "the who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). However, courts in this circuit have recognized that Rule 9(b) is more relaxed and fluid when applied to claims of fraudulent omission than to a typical fraud claim. *Fed. Deposit Ins. Corp. v. Patel*, No. 19-cv-6917, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020) (citing cases). Plaintiffs have plead the "what" by alleging that Zinus should have disclosed the defects which they elsewhere plead with specificity. (Doc. 75 at 90). The remaining elements are less relevant to the fraudulent omission claim because Plaintiffs purchased the mattresses online or at "big box" retailers such as Walmart and Target. Under those circumstances, Zinus could have satisfied its obligation to disclose material facts regarding the alleged defects in a myriad of ways, including by providing information on its website, on the websites of online retailers, and on tags or labels attached to the mattresses themselves. Therefore, the Court finds that Plaintiffs have plead their ICFA claim for fraudulent concealment, suppression, or omission of material facts with sufficient particularity to satisfy Rule 9(b).

Plaintiffs also assert common law fraudulent concealment claims for Zinus's alleged failure to disclose the risks presented by the mattresses. However, to make out such a claim, Plaintiffs must allege that Zinus had a duty to disclose such information. *Connick*, 675 N.E.2d at 593. Such a duty arises "if plaintiff and defendant are in a fiduciary or confidential relationship [or in] a situation where plaintiff places trust and confidence

in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* "The special relationship threshold is a high one: the defendant must be clearly dominant, either because of superior knowledge of the matter derived from overmastering influence on one side, or from weakness, dependence, or trust justifiably reposed on the other side." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 572 (7th Cir. 2012) (internal quotation marks and citations omitted). Plaintiffs do not appear to allege that they had a confidential or fiduciary relationship with Zinus, nor does there appear to be any basis for such a claim. But Plaintiffs do claim that Zinus was in a position of influence and superiority over Plaintiffs because Zinus had complete knowledge of the mattresses' defects and Plaintiffs did not. (Doc. 75 at 168). However, simply purchasing a product from a retailer does not create a special trust relationship. *See Connick*, 675 N.E.2d at 500–01 (holding that no special relationship existed between purchaser of vehicle and dealership); *Go For It, Inc. v. Aircraft Sales Corp.*, No. 02 C 6158, 2003 WL 21504600, at *2 (N.D. Ill. June 27, 2003) (finding no special relationship created by purchase of airplane). Because Plaintiffs have not adequately alleged the existence of a special relationship, there is no duty to disclose. Therefore, Plaintiffs' common law fraudulent concealment claim is due to be dismissed.

Finally, Plaintiffs assert a claim for unjust enrichment. "To prevail on a claim for unjust enrichment, a plaintiff must prove that the defendant 'retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1043 (Ill. App. Ct. 2015) (quoting *HPI Health Care Servs., Inc.*

*v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Plaintiffs allege that they conferred a benefit on Zinus by overpaying for defective mattresses. (Doc. 75 at 169). Zinus argues that Plaintiffs' unjust enrichment theory should be dismissed because it relies on the same allegations of fraud that should also be dismissed. (Doc. 79 at 17) (quoting *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007)). However, Plaintiffs assert that their unjust enrichment claim is based on Zinus's "tortious and fraudulent conduct." (Doc. 75 at 169) The Court has found that Plaintiffs have adequately alleged some tort and fraud claims. Thus, Zinus's argument is misplaced, and Plaintiffs' unjust enrichment claim may proceed.

## C.     The Johnson Plaintiffs

Zinus argues that Illinois Plaintiffs Kristy and Christopher Johnson have failed to allege damages or injuries of any kind. In the portion of the second amended complaint specific to the Johnsons, Plaintiffs allege only that the Johnsons purchased a mattress from Zinus, unzipped and removed the outer cover, and found no warning tags on the mattress. (Doc. 75 at 50). However, Plaintiffs refer throughout the complaint to the damages suffered by "Plaintiffs," which the Court reads as referring to all Plaintiffs. Given the consistent details offered by Plaintiffs, the Court can make the reasonable inference that the Plaintiffs are alleging that the Johnsons overpaid for a defective mattress that caused personal injuries and property damage. Therefore, the Court finds that the Johnsons have alleged damages, and Zinus's motion to dismiss is due to be denied on these grounds.

## III.  MOTION TO STRIKE

Also before the Court is Zinus's motion to strike Plaintiffs' class action allegations. (Doc. 80). The Court must determine whether to certify this action as a class action at "an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Normally, the question of certification would be resolved by motion after the parties have had an opportunity to engage in discovery. However, if the class action allegations are facially defective or inherently deficient, the Court may strike the class action allegations. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). "If, on the other hand, the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Id.* (internal quotation marks and citation omitted). Generally, a motion to strike class action allegations is disfavored, and the burden lies with the defendant "to definitively establish that a class action cannot be maintained consistent with the class allegations." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020).

A class action must satisfy the requirements of Federal Rule of Civil Procedure 23. First, the class must satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Then, a class action must satisfy one of the three requirements of Rule 23(b). Here, Plaintiffs primarily argue that they have met the requirements of Rule 23(b)(3).[1] Under that rule, "questions of law or

---

[1] In their second amended complaint, Plaintiffs also indicate they seek certification under Rule 23(b)(1) and/or (b)(2). However, Plaintiffs make no more than passing references to Rule 23(b)(1) in their second amended complaint and response to Zinus's motion to strike. As to Rule 23(b)(2), Plaintiffs have provided only two statutory bases for injunctive relief: the MMWA and 15 U.S.C. § 2073. Under the MMWA,

fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Zinus argues that Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3) because its claims are rife with individualized issues and because the nationwide classes would require application of the laws of all 50 states and the District of Columbia. The Court begins with Zinus's first argument.

"[P]roducts liability suits are rarely sustainable as class actions" because they raise individualized, fact-intensive issues involving causation, affirmative defenses, injuries, and damages. *In re Yasmin and Yaz (Drospirenone) Marketing*, 275 F.R.D. 270, 276 (S.D. Ill. 2011). As Zinus argues, "affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (7th Cir. 1996) (quoting *In re N. Dist. of Calif., Dalkon Shield IUD Prods. Liability Litigation*, 693 F.2d 847, 853 (7th Cir. 1982)). For example, the plaintiffs claim they were aware of different types of warnings about not removing the outer cover. Some of the plaintiffs claim that their mattresses included a warning tag that said, "DO NOT REMOVE COVER," but which they ignored by unzipping the cover. (Doc. 75 at 27–29). The second amended complaint also acknowledges public online reviews warning

---

injunctive relief may only be sought by the federal government. 15 U.S.C. § 2310(c)(1). And the Court has found that Plaintiffs' claims under 15 U.S.C. § 2073 are due to be dismissed. *See supra*. In any case, Plaintiffs need only meet the requirements of one of the Rule 23(b) class types, and the Court finds that Plaintiffs have sufficiently alleged predominance and superiority under Rule 23(b)(3) to survive Zinus's motion to strike. *See infra*. The parties have focused their arguments on Rule 23(b)(3), so the Court will do the same with its analysis.

purchasers not to unzip the cover. (Doc. 75 at 12–13). And in the summer of 2019, Zinus posted a warning on its website instructing users not to remove the outer cover. (Doc. 75 at 75).

The plaintiffs also vary in their descriptions of the covers and how easy they were to remove. Some plaintiffs claim that their mattress included a zipper that invited users to remove the cover. Yet, they acknowledge that for some of the mattresses' outer covers, the zippers' pull tabs had been removed and the slider bodies had been stitched over. (Doc. 75 at 27). Still other plaintiffs describe the zipper as "easily accessible." (Doc. 75 at 31–73).

Despite these varied types and degrees of warnings and zipper-concealment, many plaintiffs removed the cover. One plaintiff removed it regularly by inserting her finger at the end of the zipper and gently pulling, presumably to overcome the lack of a pull tab. (Doc. 75 at 39). One plaintiff removed the cover and never put it back on, opting instead to use a couple of sheets to cover the mattress. (Doc. 75 at 48). But some plaintiffs claim that their mattresses did not have zippers or covers or that they never removed the covers for whatever reason, although in two instances they admit dogs ripped holes in the covers. (Doc. 75 at 30, 32, 35–36, 38, 43, 47, 51–53, 57, 72). These allegations suggest that the affirmative defenses available to Zinus may vary widely from one individual plaintiff to another, posing a significant roadblock to class wide adjudication of claims and defenses.

Zinus argues that Plaintiffs present another set of highly individualized issues when it comes to their injuries and damages. Plaintiffs have alleged injuries ranging from

eye, skin, stomach, and upper respiratory tract irritation to asthma to hearing loss and even vertigo. (Doc. 75 at 28, 49, 51). The alleged property damage is similarly varied. The second amended complaint claims that property damages from the released fiberglass includes damage to "HVAC systems, washer and dryers, clothes, towels, bedding, couches, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic." (Doc. 75 at 28). Plaintiffs have alleged remediation costs ranging from thousands to tens of thousands of dollars. (Doc. 75 at 28). A few other miscellaneous issues affecting damages are also alleged, including compensation for missed work, unusually high utility bills, a diminished quality of life, and costs for veterinarian care for injured pets. (Doc. 75 at 29, 33–34, 49, 52, 56). Finally, adding another wrinkle, at least some class members have also received refunds for their mattresses. (Doc. 75 at 13). Together, these individualized issues pose a significant risk that the plaintiffs' claims will not "prevail or fail in unison" as required by Rule 23. *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 460 (2013).

Plaintiffs' strongest case in response appears to be *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359 (7th Cir. 2012), *vacated*, 569 U.S. 1015 (2013), *judgment reinstated on remand*, 727 F.3d 796 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014). There, plaintiffs only brought warranty claims based on alleged defects in washing machines. The Seventh Circuit observed that damages in the case would likely be "capped at the cost of replacing a defective washing machine—there doesn't seem to be a claim that the odors caused an illness that might support a claim for products liability as distinct from one for breach of warranty." *Id.* at 362. The complaint in this case, however, presents products liability

21

claims for widely varying personal injuries, property damages, *and* breaches of warranty. Thus, *Butler* provides some support for the feasibility of class adjudication of Plaintiffs' warranty claims but less so for Plaintiffs' other claims.

Despite the problematic individualized issues presented by Plaintiffs' class allegations, the Court finds that Zinus has failed to carry its burden to definitively establish that Plaintiffs' class allegations are facially defective or inherently deficient. As discussed above, Plaintiffs' class allegations of breach of warranty appear more viable than their other claims. And the Court will not dissect class allegations on a motion to strike when the parties have not yet had the benefit of discovery. Therefore, the Court will not grant Zinus's motion to strike based on the individualized issues in the class allegations.

Now on to Zinus's second major argument. Zinus argues that Plaintiffs' nationwide classes would include purchasers from all fifty states and the District of Columbia, "each of whose claims is governed by materially different law." (Doc. 81 at 20). Plaintiffs dispute this claim by arguing that it is unclear at this point that Illinois law would not control all of the claims and that Zinus has not met its burden to show that there are material differences in the applicable laws of the states. Plaintiffs also suggest that a choice of law provision in a contract could designate a single jurisdiction's law as controlling. Yet, as defendant points out, the second amended complaint makes no reference to a contract between Plaintiffs and Zinus. But Plaintiffs do reference a contract to which they are third-party beneficiaries and there may be contracts involved in the purchase of the mattresses. The existence of any possible contracts containing a choice-

of-law provision requires further factual development and the opportunity for discovery.

Returning to Plaintiffs' argument that it is unclear whose law controls, Illinois follows the most significant relationship test. Under Illinois law, for personal injury cases, there is a presumption that the laws of the state where the injury occurred control. *Townsend v. Sears*, 879 N.E.2d 893, 903 (Ill. 2007). This presumption may be overcome if another state is shown to have a more significant relationship to the dispute. *Id.* at 904. A state's relationship to the dispute is analyzed according to four factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship between the parties is centered. *Id.* at 905–06. Illinois's test also calls for consideration of several general principles, including the relevant policies of the forum and other interested states, the relative interests of those states in the determination of the particular issue, and the basic policies underlying the particular field of law. *Id.* at 907 (emphasizing these specific principles when considering personal injury actions).

The allegations in the second amended complaint make it possible to assess some of these factors but not others. For instance, the facts in the second amended complaint make clear that the place of injury is the state of residence for each class member. However, the second amended complaint does not allege where any of the mattresses were designed or manufactured. The second amended complaint claims that some Plaintiffs purchased their mattresses online but alleges that others purchased them at Target and Walmart without specifying where those stores are located. Thus, given the

fact-intensive analysis demanded by Illinois's choice-of-law rules, the Court finds that Zinus has not met its burden to definitively establish that Plaintiffs' nationwide class allegations are facially defective or inherently deficient. *See Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 750 (7th Cir. 2006) ("[C]hoice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in litigation."). This issue stands to benefit greatly from fact discovery and further evidence.

It is worth mentioning that if Zinus can establish that the law of the place of injury controls, its argument will pose a problem for certification of the nationwide classes. There are significant differences in the laws of the states regarding products liability "as well as in the applicable theories of recovery and their subsidiary concepts." *In re Yasmin*, 275 F.R.D. at 275 (citing *Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300–01 (7th Cir. 1995)). For this reason, the Seventh Circuit has not permitted other warranty, fraud, or products-liability suits to proceed as nationwide classes. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). And the Court cannot solve this problem by imposing the law of a single state, as such a solution would violate principles of federalism. *See Rhone-Poulenc Rorer*, 51 F.3d at 1297–1302; *In re Bridgestone/Firestone*, 288 F.3d at 1017–20. In any case, the Court need not decide this question today as Zinus has not yet shown that the law of the place of injury controls.

Next, Zinus argues that Plaintiffs have utilized improper failsafe classes. A failsafe class is one that is improperly defined such that a person will only qualify as a member if they have a valid claim. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th

24

Cir. 2012). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* Zinus argues that some of the class definitions are improper failsafe classes because they are defined as persons who were "injured by glass fibers from an Affected Mattress," who "suffered personal property damage from glass fibers from an Affected Mattress," or who "suffered real estate property damage from glass fibers from an Affected Mattress." (Doc. 75 at 77–78). Plaintiffs respond by arguing that their class definitions leave out an essential element of their claims: Zinus's liability. Even their strict liability claims require proof of a design defect or failure to warn, neither of which is referenced in the class definitions. Plaintiffs' definitions perhaps toe the line between permissible and impermissible class definitions. But tailoring class definitions is a challenging task that would benefit from discovery and development of Plaintiffs' claims. Thus, the Court opts to permit Plaintiffs the opportunity to refine their class definitions as they prepare to seek class certification. *See Messner*, 669 F.3d at 825 (holding that problems with class definitions should be solved by refining the definitions instead of flatly denying certification).

Zinus also argues that Plaintiffs have failed to adequately allege numerosity for their nationwide and statewide personal injury and property damages classes. Regarding the nationwide classes, Zinus argues that Plaintiffs have already joined over 200 individuals and have offered no reason to believe that there are so many more members of the proposed class that joinder would be impracticable under Rule 23(a)(1). Regarding the statewide classes, Zinus argues that Plaintiffs have not alleged that there are nearly

enough potential class members in each state. And after the dismissal of the non-Illinois plaintiffs for lack of jurisdiction, see *supra*, there will remain only about 20 named plaintiffs, all Illinois residents. Zinus argues that most courts consider 40 plaintiffs to be the minimum number of class members needed to satisfy numerosity. (Doc. 81 at 26 (citing *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021)). However, Plaintiffs have alleged that joinder of all class members is impracticable and that thousands of defective mattresses have been sold nationwide. (Doc. 75 at 79). These allegations are not facially defective or inherently deficient, and the Court will not require more until Plaintiffs have had the opportunity to engage in discovery.

Finally, Zinus argues that if the Court dismisses the non-Illinois Plaintiffs for lack of jurisdiction, it should also strike the non-Illinois "Statewide/District Classes." As discussed above, the non-Illinois Plaintiffs are due to be dismissed for lack of personal jurisdiction. As such, the non-Illinois statewide classes would lack a named representative. The lack of a named representative makes it impossible for Plaintiffs to demonstrate typicality under Rule 23(a)(1)(3). *Orr v. Shicker*, 953 F.3d 490, 500 (7th Cir. 2020). For this reason, Plaintiffs' allegations as to statewide classes, other than the Illinois class, are due to be stricken.

## V.  CONCLUSION

For these reasons, the following are **ORDERED**:

1.      Zinus's motion to dismiss (Doc. 78) is **GRANTED in part** and **DENIED in part**.

2.      The claims of all non-Illinois plaintiffs are dismissed without prejudice.

26

3.      The following claims are dismissed without prejudice as to all Plaintiffs: Count One as it pertains to express warranties; Count Two; Counts Six through Thirteen; Count Fourteen as to affirmative misrepresentations; and Counts Fifteen through Thirty-nine.

4.      Plaintiffs have adequately alleged the following claims: Count One as it pertains to implied warranties; Counts Three through Five; Count Fourteen as it relates to concealment, suppression, or omission of material facts; Count Forty; and Count Forty-one.

5.      Defendant's motion to strike (Doc. 80) is **GRANTED in part** and **DENIED in part**. All allegations relating to the statewide classes, other than the Illinois class, are **STRICKEN**.

6.      If Plaintiffs wish to file a third amended complaint, they must do so within 21 days after the entry date of this Order. Defendant shall file its answer or otherwise respond to Plaintiffs' third amended complaint within 30 days after the complaint is filed.

**SO ORDERED.**

Dated: June 10, 2022

_____
DAVID W. DUGAN
United States District Judge